Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT   **FILED**

for the

Eastern District of Arkansas

U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR **1 3** 2021

_____ Division

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

| | |
|---|---|
| Richard Julius Donaldson<br>_____<br>*Plaintiff(s)*<br><br>*(Write the full name of each plaintiff who is filing this complaint.*<br>*If the names of all the plaintiffs cannot fit in the space above,*<br>*please write "see attached" in the space and attach an additional*<br>*page with the full list of names.)*<br><br>**-v-**<br><br>Atty. General William Barr, FBOP Director MD Carvajal,<br>Warden Dewayne Hendrix, Asst. Warden Rosalez,<br>Captain Antwan Frazier, HSA B. Hoy, Clinical Director<br>Sheila S. Woodard, Dr. Maharaj Alejandro Tomar, DDS<br>Walter Stewart, LT. Marrs<br><br>*(Write the full name of each defendant who is being sued. If the*<br>*names of all the defendants cannot fit in the space above, pleas*<br>*write "see attached" in the space and attach an additional page*<br>*with the full list of names. Do not include addresses here.)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.   <u>2:21-CV-34-LPR-PSH</u><br><br>*(to be filled in by the Clerk's Office)*<br><br><br><br>This case assigned to District Judge __Rudofsky__<br>and to Magistrate Judge ____Harris____ |

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
## (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access t
electronic court files.  Under this rule, papers filed with the court should *not* contain: an individual's full
social security number or full birth date; the full name of a person known to be a minor; or a complete
financial account number.  A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or
another materials to the Clerk's Office with this complaint.

---

List of Defendants:

1.)William Barr: attorney general: representative of the United States of America through the United States Department of Justice: 950 Pennsylvania Avenue. Northwest; Washington, DC 20530

2.) M.D. Carvajal: Director: An employee with the Federal Bureau of Prisons: 320 1st St. Northwest; Washington, D.C. 20534

3.) DeWayne Hendrix: Former Warden: An employee with the Federal Bureau of Prisons through FCC Forrest City: 1400 Dale Bumpers Rd.; Forrest City, Arkansas, 72336

4.) Rosales: Assistant Warden: An employee with the Federal Bureau of Prisons through FCI Forrest City-Medium: 1400 Dale Bumpers Road Forrest City, Arkansas, 72336

5.) Antwan Frazier: Captain: An employee with the Federal Bureau of Prisons through FCI Forrest City medium: 1400 Dale Bumpers Rd.; Forrest City, Arkansas, 72336

6.) Marrs: Operations Lieutenant: An employee with the Federal Bureau of Prisons through FCI Forrest City Medium: 1400 Dale Bumpers Rd.; Forrest City, Arkansas; 72336

7.) Sheila S. Woodard, M.D.: Clinical Director: An employee with the Federal Bureau of Prisons through FCI Forrest City-Medium: 1400 Dale Bumpers Rd.; Forrest City, Arkansas; 72336

8.) Maharaj Alejandro Tomar, M.D.: Licensed Physician: An employee with the Federal Bureau of Prisons through FCI Forrest City-Medium: 1400 Dale Bumpers Rd.; Forrest City, Arkansas; 72336

9.) B. Hoy: Health Services Administrator: An employee with the Federal Bureau of Prisons through FCI Forrest City medium: 1400 Dale Bumpers Rd.; Forrest City, Arkansas; 72336

10.) Walter Stewart, DDS: Dental Services Administrator: An employee with the Federal Bureau of Prisons through FCI Forrest City-Medium: 1400 Dale Bumpers Rd.; Forrest City Arkansas; 72336

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Richard Julius Donaldson |
| All other names by which you have been known: | |
| ID Number | 16787-040 |
| Current Institution | FCI Forrest City-Medium |
| Address | 1400 Dale Bumpers Road P.O. Box 3000 |
| | Forrest City     AR     72335 |
| | *City*     *State*     *Zip Code* |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | William Barr Attorney |
| Job or Title *(if known)* | General |
| Shield Number | |
| Employer | United States Department of Justice |
| Address | 950 Pennsylvania N.W. |
| | Washington     DC     20530 |
| | *City*     *State*     *Zip Code* |

☐ Individual capacity    ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | M.D. Carvajal |
| Job or Title *(if known)* | Director |
| Shield Number | |
| Employer | Federal Bureau of Prisons |
| Address | 320 First St. N.W. |
| | Washington     DC     20534 |
| | *City*     *State*     *Zip Code* |

☑ Individual capacity    ☐ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3

| | |
|---|---|
| Name | DeWayne Hendrix |
| Job or Title *(if known)* | Warden |
| Shield Number | |
| Employer | FCC Forrest City Complex |
| Address | 1400 Dale Bumpers Rd. |

| Forrest City | AR | 72335 |
|---|---|---|
| *City* | *State* | *Zip Code* |

☑ Individual capacity    ☐ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Rosalez Assistant |
| Job or Title *(if known)* | Warden |
| Shield Number | |
| Employer | FCI Forrest City-Medim |
| Address | 1400 Dale Bumpers Road |

| Forrest City | AR | 72335 |
|---|---|---|
| *City* | *State* | *Zip Code* |

☑ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, oimmunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

**A.**    Are you bringing suit against *(check all that apply)*: Federal officials (a *Bivens* claim)

☑ *apply)*: Federal officials (a *Bivens* claim)

☐ State or local officials (a § 1983 claim)

**B.**    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

**C.**    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Violation of 8th Amendment Constitutional Rights...

**D.**    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.    Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply:*

☐    Pretrial detainee

☐    Civilly committed detainee

☐    Immigration detainee

☐    Convicted and sentenced state prisoner

☑    Convicted and sentenced federal prisoner

☐    Other *(explain)* _____

## IV.    Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

**A.**    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

**B.**    If the events giving rise to your claim arose in an institution, describe where and when they arose.
FCI Forrest City-Medium... From April 1st to Present...

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**C.**    What date and approximate time did the events giving rise to your claim(s) occur?
April 1st to Present...

**D.**    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*
See attached documents...

## V.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.
Contraction of Covid-19... Mental & Physical Pain and Suffering...
See attached documents...

## VI.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.
Plaintiff is seeking compensatory and punitive damages...

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**VII.    Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

**A.**    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).
FCI Forrest City-Medium....

**B.**    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

**C.**    Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)?
All claimed issues...

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**D.**    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) aœconcerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, œother correctional facility?

☑ Yes

☐ No

**E.**    If you did file a grievance:

1.    Where did you file the grievance?
FCI Forrest City-Medium...

2.    What did you claim in your grievance?
All claims listed in complaint... See attached documents...

3.    What was the result, if any?
Administrative remedies were denied on all levels...

4.    What steps, if any, did you take to appeal that decision?  Is the grievance process completed? Ifnot, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*Administrative remedies were appealed on all levels... Grievance process is completed and exhausted...

**F.**     If you did not file a grievance:

1.  If there are any reasons why you did not file a grievance, state them here:
    Not applicable...

2.  If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:
    Not applicable

**G.**     Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.
    See attached documents... (Exhaustion of Administatiive Remedies)

    *(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.    Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.
Not applicable...

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**A.**    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

**B.**    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)    N/A

Defendant(s)    N/A

2.   Court *(if federal court, name the district; if state court, name the county and State)*

N/A

3.   Docket or index number

N/A

4.   Name of Judge assigned to your case

N/A

5.   Approximate date of filing lawsuit

N/A

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of          N/A
disposition.

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

N/A

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

**C.**    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

**D.**     If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.  Parties to the previous lawsuit

Plaintiff(s)      N/A

Defendant(s)     N/A

2.  Court *(if federal court, name the district; if state court, name the county and State)*

N/A

3.  Docket or index number

N/A

4.  Name of Judge assigned to your case

N/A

5.  Approximate date of filing lawsuit

N/A

6.  Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition                N/A

7.  What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

Not applicable...

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    3/23/2021

| | |
|---|---|
| Signature of Plaintiff | *Richard Donaldson* |
| Printed Name of Plaintiff | Richard Julius Donaldson |
| Prison Identification # | 16787-040 |
| Prison Address | FCI Forrest City-Medium 1400 Dale Bumpers Rd. P.O. Box 3000 |

| | | |
|---|---|---|
| Forrest City | AR | 72335 |
| *City* | *State* | *Zip Code* |

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|  |  |  |
|---|---|---|
| *City* | *State* | *Zip Code* |

Telephone Number

E-mail Address

Plaintiff **Richard Julius Donaldson,** representing himself

Pro se, representing himself as follows:

This is an emergency action being brought before this court for the violation of Plaintiffs constitutional rights, under the Eighth Amendment of the United States Constitution, for the unconstitutional treatment that he is being subjected to while in the custody of the Federal Bureau of Prisons, under the direct care of the federal correctional institution at FCI Forrest City-Medium. Plaintiff seeks compensatory and punitive damages in an amount to be determined and proven at trial.

**Parties**:

Plaintiff Richard Julius Donaldson (hereinafter "Plaintiff"), is and at all times relevant to this litigation... Is an incarcerated inmate at the Federal Correctional Institution - FCI Forrest City-Medium, located in Forrest City, Arkansas; where plaintiff has been incarcerated since July 22, 2019.

**Defendant William Barr**, is in at all times relevant to this litigation, was the Attorney General of the United States of America, and head of the Department of Justice to the United States of America, which maintained oversight of the Federal Bureau of Prisons, during the time relevant to this litigation.

**Defendant M. D. Carvajal**, is in at all times relevant to this litigation, is the director of the Federal Bureau of Prisons, under the guidance of the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions performed in his official capacity; that is, sin not providing the proper procedures for ensuring that Plaintiff's health and safety were not put at risk and that Plaintiff is not being subjected to undo or serious harm while incarcerated under the care of the Federal Bureau of Prisons.

Defendant Carvajal is also being sued for the Federal Bureau of Prisons' negligent management of a health crisis in relation to the Covid-19 pandemic.

1

**Defendant DeWayne Hendrix**, is and at all times relevant to this litigation, was the Warden of the Federal Correctional Complex Forrest City; located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity for actions performed in his official capacity; that is, in his negligent management of a health crisis in relation to the Covid-19 pandemic... and leading to the direct causation of Plaintiff becoming infected by the virus; and for not providing the proper procedures for ensuring that Plaintiff's health and safety were not being put at risk and that Plaintiff is not being subjected to undo or serious harm while incarcerated under his care and management at FCI Forrest City-Medium.

Defendant is also being sued for not providing the proper procedures for ensuring that Plaintiff receive adequate medical and dental care in accordance with the standards set forth by Arkansas law, and in accordance with Plaintiff's rights pursuant to the United States Constitution.

5.2) **Defendant Antwan Frazier** is and at all times relevant to this litigation, is the acting Captain for the Administration Department at FCI Forrest City-Medium; located in Forrest City Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity for actions performed in His official capacity; that is, For his negligent management of a Health crisis in relation to the covid-19 pandemic at FCI Forrest City.

5.4) **Defendant Rosalez** is in at all times relevant to this litigation, is an Assistant Warden of FCI Forrest City, located in Forrest City Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice of the United States of America.

Defendant is being sued in his individual capacity for actions performed in his official capacity; that is, in his participation in the negligent management of a Health crisis in relation to the covid-19 pandemic at FCI Forrest City.

**Defendant B. Hoy**, is in at all times relevant to this litigation, is the Health Services Administrator for the Health Services Department at Forrest City medium; located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

2

Defendant is being sued in her individual capacity for actions performed in her official capacity; in that, she failed to promulgate procedures whereby Plaintiff could continue receiving adequate medical treatment in accordance with the proper standard of care as provided pursuant to Arkansas law; and in accordance with Plaintiff's constitutional rights pursuant to the United States Federal Constitution... During and in relation to the Covid-19 pandemic.

Defendant is also being sued for her actions in the negligent management of the Coronavirus health crisis and Plaintiffs treatment after becoming infected by the virus while incarcerated at FCI Forrest City medium.

**Defendant Sheila S. Woodard M.D.,** is and at all times relevant to this litigation, is the Clinical Director for the health services department at FCI Forrest City-Medium; located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in her individual capacity for actions performed in her official capacity; in that, she failed to promulgate procedures whereby Plaintiff could continue receiving adequate medical treatment in accordance with the proper standard of care as provided pursuant to Arkansas law; and, in accordance with Plaintiff's constitutional rights pursuant to the United States Federal Constitution. This litigation is being brought against defendant for her actions in the negligent management of the coronavirus Health crisis and Plaintiffs treatment after becoming infected with the virus; as well as her negligent actions in the treatment of Plaintiff's serious shoulder injury while incarcerated at FCI Forrest City.

Defendant Sheila S. Woodard, M.D., is The Clinical Director of the Health Services Department and by virtue of this position, is responsible for the acts and omissions of the department's personnel.

**Defendant Dr. Maharaj Alejandro Tomar,** is an at all times relevant to this litigation is a licensed physician with the Health Services Department at FCI Forrest City-Medium; located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity for actions performed in His official capacity; in that, he failed to administer adequate medical care for treatment of Plaintiff's existing injury; failure to provide and or administer adequate care for treatment of Covid-19 infection and related symptoms; his actions in the negligent management of the Coronavirus health crisis, and Plaintiff's treatment while infected with the virus.

Defendant is also being sued for medical malpractice for all of the above.

3

**Defendant Walter Stewart, D.D.S,** is in at all times relevant to this litigation, is in charge of the Dental Services Department at FCI Forrest City-Medium, located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity for actions performed in His official capacity; in that, he failed to promulgate procedures whereby Plaintiff could continue receiving adequate Dental Care as provided in accordance with the proper standard of care for Dentistry pursuant to Arkansas law; and in accordance with Plaintiff's constitutional rights pursuant to the United States Federal Constitution.

Defendant is being sued for his actions during and in relation to the lack of provision of adequate care during the covid-19 pandemic; negligent management of services during a health crisis; medical malpractice for and in relation to all of the above.

**Defendant Lt. Marrs**, is in at all times relevant to this litigation, is an operations Lieutenant as part of the Prison Administration Dept. at FCI Forrest City-Medium, located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity for actions performed in his official capacity; in that, he failed to administer adequate procedures whereby Plaintiff would not be subjected to serious harm and/or unnecessary risk as a direct result of defendant's negligence in the mismanagement of the Coronavirus medical crisis.

Marrs is also being sued for the cruel and unusual treatment that Plaintiff is being subjected to after testing positive for Covid-19, and placed in quarantine unit as part of the Coronavirus management plan at Forrest City-Medium.

**Jurisdiction and Venue:**

This action arises under the Constitution and laws of the United States, including "Bivens vs. Six Unknown Named Narcotics Agents, 403 U.S. 388 (1971) and the Federal Tort Claims Act (FTCA) 28 U.S.C 2671-2680. Jurisdiction is conferred on this court pursuant to 28 U.S.C. 1331 and 1346 (B), respectively. Venue in this court is proper under 28 U.S.C. 1391 and 1402 (b), respectively.

**Factual Statement**:

4

The worst disaster in world history invaded and has been ravaging our country at an alarming rate. The death toll has now exceeded 315,000, with tens of thousands more testing positive every single day.

And extended part of our society that is also being directly affected by this deadly virus is the penal system; jails, state prisons, and Federal Bureau of Prisons facilities. The specific facility being referenced in this litigation is FCI Forrest City-Medium; located in Forrest City, Arkansas.

Beginning April 1, 2020, to October 13, 2020... The facility began an Institutional lockdown of the Forrest City-Medium facility. Plaintiff was locked in his cell in C-3 housing unit, cell 120, for 21-24 hours per day, seven days per week, for 180 + days. Plaintiff was told that this was due to CDC guidelines, as well as a Nationwide lockdown being implemented by the United States Government, and the Federal Bureau of Prisons. Plaintiff remained locked in his cell daily, for an extensive time period from April 1st until October 13th 2020. During this time, Plaintiff was denied and deprived of his right to fresh Air, sunlight, and exercise, which is covered under the 8th Amendment as a "basic life necessity".

During the implementation of the facility lockdown... Plaintiff remained locked in C-3 housing unit throughout the majority of this duration.

Plaintiff was not granted access to fresh air or sunlight, from April 1st until mid-July... At which time Plaintiff was granted one hour of recreation time.

Plaintiff was also not allowed to exercise during this time....

NOTE: Exercising indoors is strictly prohibited and prisoners are subjected to disciplinary infractions if caught doing so.

NOTE: from April 1st 2020 until October 13th 2020 plaintiff was granted less than 20 total hours of recreation time. fresh air. and sunlight.

Plaintiff was denied access to commissary; Plaintiff could not purchase soap, deodorant, toothpaste, etc., over the counter medications, nor General health items from April 1st until around mid-July.

Plaintiff was served inadequate, extremely unhealthy meals which consisted of very little protein, and items high in sugar; subjecting plaintiff to poor health due to lack of sufficient nutrition.

5

Plaintiff is being denied access to Dental Care... Plaintiff began having tooth pain in February 2020, for which he has been awaiting treatment. In April and May, Plaintiff sent an email to Dental in regards to severe tooth pain.

Plaintiff was told: "We have not had guidance from regional office on how to process due to Covid-19. As soon as we hear something we will put you on call out. In the meantime, you can purchase ibuprofen from Commissary for pain."

**NOTE: Plaintiff was not put on call out to evaluate tooth pain until October, at which time he still did not receive any treatment.**

Plaintiff is being denied access to Medical Care... Prior to pandemic, plaintiff was awaiting treatment of his serious shoulder injury (a torn rotator cuff) for which he is awaiting surgery.

When the pandemic began, Plaintiff was told by Forrest City medical staff that "procedures are on hold due to CDC restrictions and the non-emergent status of Plaintiffs injury."

**NOTE: Plaintiff has not received any form of treatment for his injury and is being subjected to ongoing pain and suffering as a result of this.**

Despite being on lockdown for up to 24 hours per day, 7 days per week since April 1st... Inmates began to test positive in high numbers in mid July 2020. From there, the spread of the virus became uncontrollable and there were a high number of infected inmates being reported from nine out of the ten units that were being used.

From July 1st to September 11th 2020, there were over 300 inmates who tested positive at FCI Forrest City medium; however, this number was not accurately reported to or by the Federal Bureau of Prisons.

Plaintiff is being housed in Charlie 3 unit here at the facility. From August 1st to September 11th 2020... 49 inmates out of 93 tested positive for covid-19, despite being on restricted movement / lockdown.

While other Federal Bureau of Prisons facilities have been back to normal operations for a few months, FCI Forrest City medium is currently experiencing the full brunt of the pandemic. This is largely due to lack of strict adherence to guidelines and inadequate protocols and procedures.

Staff members (some) do not wear face masks at all, as recommended per CDC guidelines.

Inmate mask-wearing has not been strictly enforced... If enforced at all.

6

Inmates who have tested positive are being assigned to positions where they're being allowed to pass out meals to other inmates.

27.5) CDC guidelines on social distancing are not being forced at all and are impossible to enforce in living areas.

On Friday September 4th 2020, there was such a drastic increase in the number of positive cases, the outbreak prompted a complete lockdown of the facility, ceasing all movement. This outbreak included essential inmate workers... Kitchen, laundry, commissary, Etc.

From August 1st to October 13th 2020... Plaintiff was locked in C-3 housing unit housing unit for 74 consecutive days without receiving sunlight, fresh air, or exercise.

From October 13th to November 27th 2020, the facility was on a modified movement schedule until inmates began to test positive on November 27th.

December 2nd 2020... Plaintiff was randomly tested for covid-19.

December 4th 2020... Facility was placed on complete lockdown due to high number of positive cases being reported.

December 5th 2020... Plaintiff was told to move to C-3 due to confirmed positive test results. Plaintiff was assigned to cell to 219 where he was housing alone in order to properly recover from covid-19.

**NOTE: The A-3 housing unit had been condemned for 2 + years due to a problem with black mold... Now this is where inmates are now being housed as a covid-19 quarantine unit.**

December 6th to December 11th 2020... Plaintiff was listed as "asymptomatic" when evaluated by nurses during daily checks.

December 11th 2020... Lieutenant Marrs informed Plaintiff that he had to move into a cell with someone else in a single cell, in order to make room for all the other inmates who were testing positive. Plaintiff questioned Lieutenant Marrs regarding the risk of forcing him into a cell with another inmate who was positive for covid-19. Lieutenant Marrs stated "all of you guys are asymptomatic so it won't matter and won't have an effect on you if you're in the cell together."

7

**Inmate L. Williams, Register #: 01237-104,** who was designated to move into Plaintiff's cell... informed plaintiff and Lieutenant Marrs that he was currently "symptomatic", and still experiencing severe symptoms. Plaintiff began to protest and Lieutenant Marrs threatened to send plaintiff to the SHU if he doesn't want to accept a cell move.

December 12th 2020 to December 28th 2020... Plaintiff has been experiencing severe symptoms such as fever, severe coughing (including blood and mucus), sinus and chest congestion, shortness of breath and pain when breathing, chest pains, loss of appetite, loss of taste and smell, cold shivers, body aches and joint pain, fatigue, nausea, dizziness, instant headaches, inability to use bathroom, back pain, yellowish eyes, depression, anxiety, stress, and anger.

December 5th to December 28th 2020... While housed in A-3 quarantine unit... Plaintiff has been locked in a Cell for a 22.5 to 24 hours per day.

**NOTE: Inmates are being locked in cells for 24 hours per day during the weekends; not being allowed to shower with no explanation nor justification.**

Plaintiff has not been allowed to receive ANY fresh air, sunlight, or exercise. Plaintiff is being served inadequate/insufficient meals, subjecting him to extremely low energy and a weakened immune system due to poor nutrition.

Plaintiff is being housed in a cell with freezing cold room temperatures 24 hours a day, seven days a week while fighting / dealing with severe symptoms of Coronavirus.

37.5) Plaintiff was not provided with clean linen and towels throughout his entire duration in quarantine unit. Also, plaintiff was not being provided with any cleaning supplies in order to maintain sanitary living area.

As of December 28th 2020... Plaintiffs symptoms were getting worse rather than better.

November 27th 2020 to December 14th 2020... Over 250 inmates tested positive for covid-19 and were sent to quarantine units.

Forrest City medium is reporting false numbers for the number of inmates who have and still are testing positive with covid-19. As of November 12th 2020... Forrest City medium had only reported that 103 inmates had tested positive and recovered from covid-19. This was reported on the BOP.GOV website. This is clearly false; as 55 inmates in one unit alone (C3) tested positive from August 1st to September 30th; not even counting the other units over the same

8

time period.... Or April 1st to August 1st and September 30th to November 12th in all the units combined. This false claim can be easily dispelled by verifying every single inmate who has tested positive.

The current conditions of confinement that currently exists here at FCI Forrest City; where plaintiff is being denied and deprived of "Basic Life Necessities"; being subjected to cruel and unusual punishment by being locked in a cell for a minimum of 22.5 hours per day, 7 days a week for seven out of eight months of the pandemic.

Plaintiff is also being denied his right to safety by subjecting him to conditions which are the direct causation of Plaintiff contracting coronavirus; subjecting him to cruel and unusual punishment while suffering from covid-19... and ongoing violations of Plaintiffs 8th Amendment constitutional rights. All constitutional violations are the direct result of prison administrators' inability to implement a feasible mitigation plan to curb, stop, or even slow down the spread of the virus.

Covid-19 is currently ripping through FCI Forrest City and there appears to be nothing to disrupt the continuing spread of the virus. Not even locking Plaintiff and other inmates in a cell for up to 24 hours a day 7 days a week for more than eight months has worked to stop Plaintiff from contracting covid-19. Therefore, Forrest City and the FBOP have violated Plaintiff's rights frivolously and have proven their inability to guarantee Plaintiffs health and safety in accordance with the United States Federal Constitution.

41.5) Plaintiff asserts that he has exhausted administrative remedy procedures within the Bureau of Prisons in an attempt to remedy this situation, as required by 28 USC 2675.

**BIVENS ACTION:**

**COUNT 1- NEGLIGENCE:**

Here Plaintiff is alleging that Defendant MD Carvajal is acting with negligence in his duty to promulgate procedures whereby the Federal Bureau of Prisons can adequately, properly, and consistently ensure the safety of Plaintiff and other prisoners whom are currently incarcerated under deteriorating and/or unconstitutional conditions of confinement.

9

As director of the Federal Bureau of Prisons, Defendant Carvajal has an obligation to ensure that all prisons operate in accordance with the policies and proper procedures set forth under the laws of the United States and the Federal Constitution. By virtue of this position, defendant also has an obligation to ensure that procedures are in place in order to prevent plaintiff and other prisoners from being subjected to unreasonable risk such as becoming infected with covid-19 or subsequent pain and suffering one endures while recovering from this virus.

Thousands of prisoners are being subjected to cruel and unusual punishment and various other constitutional violations as they are being held in institutional environments where they're being subjected to and contracting covid-19, for which they are then unable to receive adequate care and or treatment.

The mitigation plans that have been implemented thus far by the Federal Bureau of Prisons I have done nothing to stop the spread of the coronavirus. It is widely known that prisons are ripe for the spread of contagious diseases and covid-19 is proving to be exponentially worse than your average disease.

The steps being taken by the Federal Bureau of Prisons under the guidance and or direct instruction of Defendant Carvajal have been nothing more than a series of constitutional violation and cruel and unusual punishment, subjecting Plaintiff to an unmeasurable amount of pain, suffering, mental/emotional stress, physical pain, anxiety and depression, and the unknown long-term effects as a result of contracting covid-19.

As a result of Defendant Carvajal breach of duty, and negligent management of a Health crisis, Plaintiff is currently suffering the effects of being positive with covid-19, which was contracted while in the care of the Federal Bureau of Prisons under Defendants' guidance.

Here Plaintiff is alleging that Defendant Dewayne Hendrix was negligent in his duty to provide proper and effective procedures for management of the covid-19 Health crisis at the Forrest City Medium facility where Plaintiff contracted covid-19... is currently suffering the effects of covid-19... and will likely suffer long-term effects to his health from covid-19.

Defendant Hendrix was also negligent in his duty to promulgate procedures whereby Plaintiff could receive adequate medical treatment of his serious shoulder injury in accordance with the proper standard of care pursuant to Arkansas law, and in accordance with plaintiff's constitutional rights pursuant to the Federal Constitution and the laws of the United States.

Defendant Hendrix was the Warden for the Federal Correctional Institution Forrest City; located in Forrest City, Arkansas. By virtue of that position, he is responsible for ensuring the health and safety of the prisoners under his care of; as well as ensuring that all departments and personnel within the prison, perform their duties and obligations pursuant to the policies and procedures set forth in accordance with the laws of the United States and the Federal Constitution.

Defendant Hendrix has failed to ensure the safety of Plaintiff and protect him from unreasonable risk to his health, safety and/or serious harm.

While under the care of Defendant, Plaintiff has contracted and tested positive for covid-19 from which he is currently suffering severe symptoms and will likely suffer long-term effects to his health from contracting the virus. This is a direct result of Defendants' negligent management of the coronavirus Health crisis and Defendants failure to implement a feasible mitigation plan to stop the virus from entering the facility, or disrupt the vicious spread of the virus once it had been introduced.

As a direct result of Defendant Hendrix's breach of duty, as well as his negligent management of the coronavirus Health crisis, Plaintiff is currently suffering severe symptoms of covid-19, which he contracted under Defendants care at FCI Forrest City.

Here Plaintiff is alleging that Defendant B. Hoy is acting with negligence in her duty to promulgate procedures where by Plaintiff can continue receiving adequate medical treatment in accordance with the proper standard of care as provided for someone to Arkansas law.

As Health Services Administrator for the medical department at FCI Forrest City, Hoy has an obligation to ensure that the medical department operates in accordance with Arkansas, and the laws of the United States pursuant to the United States Constitution.

By virtue of this position Defendant Hoy has an obligation to establish and regulate the availability of medical procedures that would prevent Plaintiff from being subjected to unreasonable risk to his health, such as the pain and suffering he is now enduring due to the halting of medical procedures as a result of the covid-19 pandemic.

11

Plaintiff has been suffering 17 months at FCI Forrest City with a torn rotator cuff for which he is awaiting surgery. Plaintiff is being denied treatment and is being told that "all non-emergent medical procedures are on hold due to the covid-19 and CDC restrictions."

.This is a clear violation of Plaintiffs constitutional right to receive adequate Medical Care while in the care of the Federal Bureau of Prisons. This makes defendant Hoy negligent in her position as Health Services Administrator, where she has a duty to ensure that the Health Services Department is operating in accordance with the policies and procedures set forth and in accordance with the laws of the United States and the constitutional rights of Plaintiff.

As a direct result of defendant Hoy's breach of duty; as well as her actions in the negligent management of medical procedures during the coronavirus Health crisis, Plaintiff is enduring unnecessary and wanton pain and suffering due to the lack of treatment to his serious shoulder injury.

Here Plaintiff is alleging that Defendant Sheila Woodard MD, is acting with negligence/Medical Malpractice in her duty to promulgate procedures whereby Plaintiff can continue receiving adequate medical treatment in accordance with the proper standard of care as provided pursuant to Arkansas law, and the laws of the United States in accordance with the Federal Constitution.

As Clinical Director for the medical department at FCI Forrest City, Defendant Sheila Woodard, has an obligation as a medical professional to ensure that the medical department operates in accordance with policies and procedures set forth pursuant to the laws of the United States. By virtue of this position, Defendant is also responsible for the acts and omissions of all personnel of the Health Services Department.

Defendant is responsible for ensuring proper administering of Medical Care in order to prevent Plaintiff from being subjected to unreasonable risk to his health such as the ongoing pain and suffering being endured by Plaintiff as a result of the lack of treatment he has been subjected to for his serious shoulder injury, and from becoming infected with covid-19.

Defendant Woodard is directly responsible for promulgating adequate treatment procedures for plaintiff and other inmates testing positive for covid-19.

12

Plaintiff is currently suffering from severe symptoms after becoming infected with the coronavirus. Symptoms are being reported to medical staff and still Plaintiff has not received any form of treatment. Plaintiff complained of worsening symptoms and has been prescribed acetaminophen (aspirin).

As a direct result of Defendant Woodard's breach of duty, as well as her actions in the negligent management of the coronavirus Health crisis, Plaintiff is being subjected to an unmeasurable amount of pain and suffering, mental and emotional stress, anxiety and depression, weight loss, and the unknown long-term effects of contraction covid-19... In addition to the damage that he is sustaining from not receiving the proper treatment to his shoulder injury.   Ongoing pain and suffering are the direct result of Defendants negligence and inability to administer or facility adequate treatment plans.

45.5) Here Plaintiff is alleging that Defendant Tomar is acting with negligence/Medical by denying and or depriving Plaintiff one of the primary "minimal civilize measures of life's basic necessities" in the form of adequate Medical Care.

Defendant Tomar is a licensed physician with the Help Services Department, at FCI Forrest City Medium, and is the Primary Care Provider of the plaintiff.

Plaintiff asserts that Defendant Tomar is failing in his duty to provide adequate medical care for a treatment of Plaintiff's existing shoulder injury; failure to provide the necessary treatment for Plaintiff's dislipidemia diagnosis; and failure to provide and or administer adequate care and treatment for Plaintiff's symptoms related to his covid-19 infection.

Prior to the pandemic (January or February 2020)... Plaintiff was already awaiting treatment of his serious shoulder injury which Defendant Tomar was directly aware of.

Plaintiff initially saw Tomar in December of 2019, after plaintiff requested a second opinion of surgery consultation. Tomar informed the Plaintiff that he would not submit a request for a second opinion through consultation until after plaintiff agreed to and receive steroid injections. Defendant stated that "injections were the next step and we're required before he would submit a request." Defendant offered plaintiff drugs (NSAIDS),  A physical therapy pamphlet, and informed plaintiff that he would be schedule for steroid injections.

13

Plaintiff continued to endure pain and suffering for 10 more months and had not heard a word from anyone, nor had he received any form of treatment which includes the steroid injections that he was supposedly schedule for.

September 10th 2020... Plaintiff emailed Defendant Tomar inquiring in regards to the status of being scheduled for surgery consultation.

September 15th 2020... Defendant responded stating: "I forgot to ask if you wanted the steroid injection... Let me know if you want it so I can get you scheduled."

**NOTE: Plaintiff had already informed defendant 10 months prior during a face-to-face appointment, that he wanted the steroid injection in order to move forward in the process. Defendant Tomar failed to schedule injections and allow plaintiff to continue suffering.**

Plaintiff continued to email defendant Tomar requesting treatment of his injury. Defendant then informed plaintiff that his treatment would be on hold another two to three months due to Ortho clinics being closed for non emergent cases. Plaintiff was forced to continue enduring pain and suffering and has still not received any form of treatment.

In addition to defendant Tomar's negligence and deliberately indifferent actions regarding Plaintiff's treatment for shoulder injury... Defendant Tomar was also negligent in the treatment of Plaintiff's dyslipidemia diagnosis.

October 9th 2020... Plaintiff received a copy of medical record which showed a recent diagnosis for severe dyslipidemia.

Plaintiff immediately emailed defendant questioning why he wasn't informed of this?

**NOTE: Plaintiff had recently gone to Urgent Care a week prior to this because he was experiencing chest which could have been related to the severe dislipidemia diagnosis that he hadn't been informed of yet.**

October 9th 2020... Defendant responded: "You are not entitled to immediate updates of your clinical management under the current strains of the clinic. Please refrain from making excessive sick calls unless you have clearly worrisome symptoms."

**NOTE: Plaintiff has not received any form of follow-up from dyslipidemia diagnosis.**

14

As Plaintiff's Primary Care Provider... Defendant Tomar was also directly responsible for the care and treatment that plaintiff would receive after testing positive with covid-19.

When Defendant came to see plaintiff while in quarantine... Plaintiff informed defendant that he was experiencing severe symptoms such as coughing, shortness of breath, fever, chills, body aches, and dizziness... Defendant told plaintiff to "drink plenty of water, you're probably dehydrated."

Defendant Tomar failed to administer any form of treatment for Plaintiff's symptoms, allowing plaintiff to endure pain and suffering from covid-19.

Defendant Tomar has acted with negligence/Medical Malpractice by denying and depriving him of "necessary and adequate Medical Care" and preventing him from obtaining needed medical treatment and Care; Thereby endangering Plaintiff's health, safety, and will being in violation of plaintiffs constitutional rights.

Defendant Tomar is acting with a sufficiently culpable state of mind as he is aware of the imminent risk of danger to plaintiffs health and safety and has still failed to take the necessary steps to abate or resolve this matter.

Here Plaintiff is alleging that Defendant Walter Stewart DDS, is acting with negligence/Medical Malpractice in his duty to promulgate procedures whereby Plaintiff can continue receiving adequate dental care in accordance with the proper standard of care for Dentistry pursuant to Arkansas law, and in accordance with plaintiff's constitutional rights.

As Clinical Director for the Dentistry department at FCI Forrest City, Defendant Stewart, has an obligation as a dental professional to ensure that the Dental Services Department operates in accordance with the policies and procedures set forth pursuant to the laws of the United States. By virtue of this position, Defendant Stewart is also responsible for the acts and omissions of all personnel of the dental services department.

Defendant Stewart is directly responsible for ensuring the proper administering of dental care in order to prevent Plaintiff from being subjected to unreasonable risk to his health which are associated with dental treatment and procedures.

Plaintiff has been suffering severe tooth pain since February 2020. In April and May 2020, Plaintiff sent an email to Dental Services, following up on the status of receiving treatment for his tooth pain. Plaintiff was called to an

15

appointment in mid-May just to be told in person that he cannot receive treatment for his tooth pain, due to "CDC and BOP restrictions on providing treatment during the covid-19 pandemic. "

"We have to go by BOP recommendation at this time for the safety of the institution. "

Plaintiff's health was being completely disregarded for "the safety of the institution." This was the response Plaintiff received from the dental services department; the department which Defendant Stewart is responsible for overseeing.

On October 8th 2020, Plaintiff emailed Dental Services again regarding the tooth pain which he was still suffering from. This time Plaintiff received a response stating that:

"Tooth extraction was the only treatment available for relief of his tooth pain."

Plaintiff stated: "If I am not being left with any other option, I would like to get the tooth pulled please."

On October 11th 2020 Plaintiff received a response stating: "You will be on call out next week."

This is clear negligence from the Dental Services Department and a breach of their obligation to provide "adequate" dental care in accordance with the law. The law states that: "The dental professional is required to offer the necessary treatment for the patient's needs." Plaintiff was offered tooth extraction to relieve pain of a tooth that was previously documented for further repair. Furthermore, if extraction of a tooth can be performed during the pandemic, it is certainly reasonable to believe that a tooth can be repaired during the pandemic as well.

Plaintiff has endured excruciating pain for 7 months while being told his tooth could not be "repaired" duringcdi the pandemic. However, when plaintiff requested to have the tooth pulled, he was told by Dental Services that he would be on the call-out for the following week... ( Plaintiff was in fact placed on call-out to have his tooth pulled the following week.)

In October 2020, Plaintiff was called to dental to have the tooth pulled. However, after performing an x-ray, the dentist was uncertain of which tooth was the cause of the pain and informed Plaintiff that she did not want to extract the wrong tooth.  However, she then informed Plaintiff that she could not perform another x-ray to confirm which tooth was causing the pain. Plaintiff was told to submit another call out if tooth pain continued.

As a direct result of Defendant Stewart's breach of duty, as well as his actions in the negligent management of the Dental Services Department during the coronavirus Health crisis... Plaintiff is being subjected to extreme pain and

16

suffering from untreated tooth pain. Ongoing pain and suffering are the direct result of Stewart's negligence and inability to promulgate and adequate treatment plan.

Here Plaintiff is alleging that Defendant Marrs acted negligently with his actions in the failure to promulgate and or administer adequate procedures whereby Plaintiff would not be subjected to serious harm and or unnecessary risk.

As Operations Lieutenant for the Administration Department at FCI Forrest City, Defendant Marrs is responsible for management/oversight of facility operations. By virtue of this position, he is also directly responsible for organizing and carrying out of the coronavirus response and management plan.

On December 2nd 2020... Plaintiff was randomly tested for covid-19.

On December 5th 2020... Plaintiff was told to pack up all his belongings and move to A-3 housing unit after confirmation of positive test results for covid-19.

**NOTE: Prior to the pandemic... A 3 housing unit have been condemned for 2 years due to a problem with black mold... Now this unit was being used as a quarantine unit for inmates testing positive with Coronavirus.**

When plaintiff arrived in A-3 housing unit, he was assigned to cell #219 where he was housing alone in order to properly recover from covid-19.

From December 6th to December 11th... Plaintiff was listed as "asymptomatic" when evaluated by medical staff.

On December 11th at 1:15 PM... Defendant Marrs came into the A-3 building and began going from cell to cell to see which cells only had one inmate in it. Inmates who were housing alone were told they were moving to "double up" in order to make room for other inmates testing positive who would be coming in. Lieutenant Marrs came to Plaintiff's cell and said "you're getting a cellie". Plaintiff questioned Defendant Marrs regarding the immediate risk of forcing him into a cell with another inmate who had tested positive for covid-19. Defendant Marrs stated: "All of you guys are asymptomatic so it won't matter and won't affect you if you're in the cell together."

Inmate **L. Williams;** Register #: 01237-104; who had been chosen to move into the cell with plaintiff... spoke up and informed Plaintiff and Defendant Marrs that he was in fact "symptomatic" and still experiencing severe symptoms from covid-19. Plaintiff began to protest being forced to house with someone who clearly had symptoms... when

17

Plaintiff was clearly asymptomatic and had none. Defendant Marrs responded by threatening to send Plaintiff to the SHU if he did not want to accept a cell move.

**NOTE: Forcing Plaintiff to accept a cellmate while both had tested positive for was a blatant disregard for CDC guidelines for social distancing.**

December 12th... Plaintiff began to feel the initial onset and gradual worsening of covid-19 symptoms... Fever, severe coughing, sinus and chest congestion, shortness of breath, difficulty breathing when laying down, chest pains, cold shivers, loss of appetite, loss of taste and smell, body aches and joint pain, fatigue, nausea, dizziness, instant headaches, inability to use bathroom, yellowish eyes, depression, anxiety, and stress.

As of December 28th 2020 Plaintiffs symptoms were getting worse.

As a direct result of Defendant Marrs' negligence and breach of duty; Specifically his negligent management of the coronavirus Health crisis... Placing Plaintiff In harm's way by forcing him into a cell with an inmate who directly informed Marrs that he was in fact symptomatic; Plaintiff is now enduring extreme pain and suffering as a direct result of the actions of the Defendant.

**BIVENS ACTION:**

**COUNT 2- DELIBERATE INDIFFERENCE-**

Here Plaintiff is alleging that Defendant Sheila Woodard, is acting with the Deliberate Indifference to his serious medical needs by failing to promulgate procedures whereby Plaintiff could receive adequate treatment to his serious shoulder injury in a timely manner and receive adequate treatment for symptoms after becoming infected with covid-19.

As Clinical Director for the Medical Department at Forrest City, defendant Woodard has a professional obligation to ensure that the medical department operates in accordance with policies and procedures set forth pursuant to the laws of the United States. By virtue of this position, Woodard is also responsible for all personnel within the Health Services Department.

18

Defendant is responsible for ensuring proper administering of Medical Care in order to prevent Plaintiff from being subjected to unreasonable risk to his health.

Plaintiff arrived at Forrest City-Medium, in July of 2019. Plaintiff immediately informed medical staff of the serious injury to his shoulder for which he was awaiting surgery.

Plaintiff has now been incarcerated at Forrest City for 17 months without receiving any form of treatment of his serious injury.

Plaintiff was denied surgery in November of 2019 through surgery consultation. Plaintiff immediately requested a second opinion which was then denied by doctor Tomar in December of 2019.

Plaintiff was offered NSAIDS (drugs), a Physical Therapy pamphlet, and steroid injections  which he was "supposedly" scheduled for but never received.

Plaintiff's treatment has been continually denied and or prolonged and now plaintiff is being further denied treatment as a result of the covid-19 pandemic.

Defendant Woodard was directly aware of Plaintiff's injury as it is her responsibility to be aware of the status of a patient's treatment. Defendant was also directly responsible for administering of steroid injections which plaintiff never received.

Defendant was directly aware of the extensive time for which Plaintiff was awaiting treatment of his serious shoulder injury, the substantial risk of harm of leaving injury untreated, and the pain and suffering Plaintiff is enduring as a result of his injury.

Plaintiff has now been enduring this pain and suffering for 17 months under the care of the Forrest City Medical Department.

Defendant Woodard is also directly responsible for the care and treatment of plaintiff since becoming infected with covid-19. Plaintiff is in enduring extreme pain and suffering as a result of contracting covid-19 and has been offered nothing more than aspirin for treatment of his symptoms.

Defendant Woodard has chosen to disregard the obvious risks to Plaintiff's health by allowing his shoulder injury to go untreated for 17 months... As well as the risk to his health from becoming infected with covid-19.

19

Defendant Woodard has acted with Deliberate Indifference to Plaintiff's medical needs by depriving him of "necessary and adequate Medical Care" and preventing him from obtaining needed medical treatment and care,... Thereby endangering Plaintiff's health and well-being in violation of Plaintiff's constitutional rights.

Defendant Woodard is acting with a sufficiently culpable state of mind as she is aware of the imminent risk and has still failed to take the necessary steps to abate or resolve this matter.

Here Plaintiff is alleging that Defendant Stewart acted with Deliberate Indifference to Plaintiff's Health with his failure to promulgate or implement "necessary and adequate Dental Care" and or administer adequate medical procedures whereby plaintiff would not be subjected to a substantial risk of serious harm and or be subjected to unnecessary risk to his safety and well-being.

As Clinical Director for the Dentistry Department at FCI Forrest City, Defendant Stewart, has an obligation as a dental professional to ensure that the Dental Services Department operates in accordance with the policies and procedures set forth pursuant to the laws of the United States.

By virtue of this position, Defendant Stewart is also responsible for the acts and omissions of all personnel of the dental services department.

Defendant Stewart is directly responsible for ensuring the proper administering of dental care in order to prevent plaintiff from being subjected to unreasonable risk to his health which are associated with gentle treatment and procedures.

Plaintiff has been suffering severe tooth pain since February 2020. In April and May 2020, plaintiff sent an email to dental services following up on the status of receiving treatment for his tooth pain.

Plaintiff was called to an appointment in mid-May just to be told in person that he cannot receive treatment for his tooth pain, due to CDC and FBOP restrictions on providing treatment during the covid-19 pandemic.

On October 8th 2020, plaintiff emailed Dental Services again regarding the tooth pain which he was still suffering from. This time plaintiff received a response stating that "tooth extraction was the only treatment available for relief of his tooth pain".

Plaintiff stated: "If I am not being left with any other option, I would like to get the tooth pulled please."

20

On October 11th 2020 Plaintiff received a response stating: "You will be on call out next week."

This is clear negligence and deliberate indifference to plaintiffs medical needs and a breach of their obligation to provide "adequate" dental care in accordance with the law. The law states that "the dental professional is required to offer the necessary treatment for the patient's needs." Plaintiff was offered tooth extraction to relieve pain of a tooth that was previously documented for further repair. Furthermore, if extraction of a tooth can be performed during the pandemic, it is certainly reasonable to believe that a tooth can be repaired during the same pandemic.

Plaintiff has endured excruciating pain for 7 months while being told his tooth could not be "repaired" during the pandemic.

As a direct result of Defendant Stewart's breach of duty, as well as his deliberately indifferent actions in the negligent management of the Dental Services Department during the coronavirus pandemic... Plaintiff is being subjected to extreme pain and suffering from untreated tooth pain.

Defendant Stewart acted with deliberate indifference to Plaintiffs health, safety, and well-being  and ignore the obvious risk to Plaintiff's health by allowing his tooth pain to be untreated for an extensive period of time.

Defendant Stewart is acting with a sufficiently culpable state of mind as he is aware of the imminent risk and has still failed to take the necessary steps to abate or resolve this matter.

Here Plaintiff is alleging that Defendant Maharaj Alejandro Tomar acted with Deliberate Indifference to his serious medical needs by failing to administer procedures whereby Plaintiff could receive adequate treatment to his serious shoulder injury in a timely manner and receive adequate treatment for symptoms after becoming infected with covid-19.

Prior to the pandemic... Plaintiff was already awaiting treatment of his serious shoulder injury which Defendants Tomar was directly aware of. Plaintiff initially saw Tomar in December of 2019, at which time Defendant informed Plaintiff that he would not submit a request for second opinion of surgery consultation until after Plaintiff agreed to and received steroid injections. Defendant stated that the injections were the next step and were "required before he could submit a request."

10 months later... Plaintiff had not heard a word from anyone nor had he received any form of treatment.

21

September 10th 2020... Plaintiff emailed Defendant Tomar in regards to the status of being scheduled for surgery consultation.

September 15th 2020... Defendants response stated: "I forgot to ask if you wanted the steroid injection." Plaintiff had already informed Defendant 10 months prior during a face-to-face appointment that he wanted the steroid injections in order to move forward. Defendant Tomar failed to schedule the steroid injections.

Several months into the pandemic, Plaintiff continued to email Defendant Tomar regarding treatment of his injury. Defendant then stated that Plaintiffs treatment would be on hold two to three months due to Ortho clinics being closed for non-emergent cases.

Defendant Tomar has chosen to disregard the obvious risk to Plaintiff's health by allowing his shoulder to go untreated for 17 months now as well as the risk to his health from becoming infected with covid-19.

Defendant Tomar has acted with Deliberate Indifference to Plaintiff's medical needs by depriving him of "necessary and adequate medical care" and preventing him from obtaining needed medical treatment and care,... Thereby endangering Plaintiff's health and well-being in violation of Plaintiff's constitutional rights.

Defendant Tomar acted with a sufficiently culpable state of mind as he is aware of the imminent risk and has still failed to take the necessary steps to abate or resolve this matter.

Here Plaintiff is alleging that Defendant Marrs acted with Deliberate Indifference to Plaintiff's health and safety with his failure to promulgate, implement, and or administer adequate procedures whereby plaintiff would not be subjected to a substantial risk of serious harm and or be subjected to unnecessary risk to his safety and well-being.

As an Operations Lieutenant for the Administration Department at FCI Forrest City, Defendant Marrs is responsible for a management oversight of facility operations. By virtue of this position, he is also directly responsible for organizing and carrying out of the coronavirus response and management plan. On December 2nd 2020... Plaintiff was randomly tested for covid-19.

On December 5th 2020... Plaintiff was told to pack up all his belongings and move to A3 housing unit after confirmation of positive test results for covid-19.

22

**NOTE: Prior to the pandemic... A3 housing unit had been condemned for 2 years due to a problem with black-mold. Now the A3 unit is being used as a quarantine unit for inmates testing positive for Coronavirus.**

When plaintiff arrived, he was assigned to cell number 219 where he was housing alone in order to properly recover from covid-19.

From December 6th to December 11th... Plaintiff was listed as "asymptomatic" when evaluated by medical staff.

On December 11th at 1:15 PM... Defendant Marrs came into the A3 building and begin going from cell to cell to see which cells only had one inmate in it. Inmates who were housing alone were told they were moving to "double up" in order to make room for other inmates testing positive who would be coming in. Lieutenant Marrs came to Plaintiff's cell and said: "you're getting a cellie." Plaintiff questioned Defendant Marrs regarding the immediate risk of forcing him into a cell with another inmate who had tested for covid-19. Defendant Marrs stated: "all of you guys are asymptomatic so it won't matter and won't affect you if you're in the cell together." Inmate L Williams; Reg # 01237-104; who had been designated to move into the cell with Plaintiff... Spoke up and informed Plaintiff and Defendant Marrs that he was in fact "symptomatic" and still experiencing severe symptoms from covid-19. Plaintiff immediately began to protest being forced to house with someone who clearly had symptoms, when plaintiff was clearly asymptomatic and had none. Defended Marrs responded by threatening to send Plaintiff to the SHU if he did not want to accept a cell move.

As a direct result of Defendant Marrs' deliberately indifferent actions and breach of duty; specifically his negligent management of the coronavirus Health crisis by placing plaintiff in harm's way by forcing him into a cell with an inmate who directly in informed Marrs that he was in fact symptomatic; Plaintiff is now enduring extreme pain and suffering as a direct result of the actions of the Defendant.

Defendant acted with a sufficiently culpable state of mind as he was aware of the imminent risk to Plaintiffs health and safety and still failed to take the necessary steps to abate this matter.

**BIVENS ACTION:**

**COUNT 3: CRUEL & UNUSUAL PUNISHMENT-**

23

56.) Here Plaintiff is alleging that Defendant MD Carvajal subjected him to Cruel and Unusual Punishment by denying and or depriving Plaintiff of the "minimal civilized measure of Basic Life Necessities."   In addition, Defendant failed to prevent harm by keeping Plaintiff incarcerated under conditions of confinement which pose a substantial risk to his health, safety, and well-being.

Defendant Carvajal is the Director for the Federal Bureau of Prisons. By virtue of this position he is directly responsible for all decisions made in reference to the incarceration of the inmates in its facilities.

Defendant Carvajal has allowed Plaintiff to be incarcerated in an environment where he is being subjected Cruel and Unusual punishment by denying and depriving him the minimal civilized measure of basic life necessities." Specifically, adequate Medical Care, adequate meals, fresh air, sunlight, exercise, cleaning supplies

or living areas, clean laundry and linen, soap and hygiene supplies.

Defendant Carvajal is acting with a sufficiently culpable state of mind as he is directly informed of the entirety of the scenario; therefore he was also aware of the imminent risk to Plaintiff and other inmates and has still failed to implement and adequate plan to abate it and or provide adequate protection.

57.) Here Plaintiff is alleging that Defendant Hendrix has subjected him to a cruel and unusual punishment in his denial and or deprivation of the "minimal civilized measure of basic life necessities",  in accordance with the United States Constitution and Plaintiff's Eighth Amendment rights.

Defendant Hendrix has directly subjected Plaintiff to cruel and unusual punishment by denying and depriving him of the "minimal civilized measure of basic life necessities." Specifically: The denial of adequate Medical Care, adequate meals, fresh air, sunlight, exercise, cleaning supplies for living areas, clean laundry and linen, soap and hygiene supplies.

In addition to denial and deprivation of these basic life necessities... Defendant also failed to protect Plaintiff from harm by keeping him incarcerated in an environment where he contracted a deadly virus from which she is currently suffering severe symptoms.

24

Defendant Hendrix acted with a sufficiently culpable state of mind as he was directly informed of the entirety of the scenario; therefore, he was also aware of the imminent risk to Plaintiff and other inmates and still failed to implement an adequate plan to abate it and or provide adequate protection.

58.) Here Plaintiff is alleging that Defendant Rosalez participated in subjecting him to cruel and unusual punishment by denying and or depriving Plaintiff of the "minimal civilized measure of basic life necessities."

In addition, Defendant failed to prevent harm by participating in keeping Plaintiff incarcerated under conditions of confinement which posed a risk to his health, safety, and well-being.

Defendant Rosalez acted with a sufficiently culpable state of mind as he was directly informed of the entirety of the scenario; therefore, he was also aware of the imminent risk to Plaintiff and other inmates and still failed to implement and adequate plan to abate it or provide adequate protection.

59.) Here Plaintiff is alleging that Defendant Frazier participated in subjecting him too cruel and unusual punishment by denying and or depriving Plaintiff of the "minimal civilized measure of basic life necessities" in accordance with the United States Constitution and Plaintiff's 8th Amendment rights.

In addition, Defendant failed to prevent harm by participating in allowing plaintiff to be incarcerated under conditions of confinement which posed a substantial risk to his health, safety, and well-being.

Defendant Frazier is acting with a sufficiently culpable state of mind as he is directly informed of the entirety of the scenario; therefore, he is also aware of the imminent risk to Plaintiff and other inmates and is still failing to implement and adequate plan to abate it and or provide adequate protection.

60.) Here Plaintiff is alleging that Defendant Marrs intentionally subjected him to cruel and unusual punishment by forcing him into a cell move where he knew that Plaintiffs Health would be at risk by forcing him to house with another inmate who was positive for covid-19 and suffering from severe symptoms... Thereby endangering Plaintiff's health, safety, and well-being in violation of his 8th Amendment Constitutional rights.

As an Operations Lieutenant for the Administration Department at FCI Forrest City, Defendant Marrs was/is directly responsible for management of the coronavirus response and management plan.

On December 2nd 2020... Plaintiff was randomly tested for covid-19.

25

On December 5th 2020... Plaintiff was told to pack up all his belongings and move to A3 housing unit after confirmation of positive test results for covid-19.

**NOTE: Prior to the pandemic... A3 housing unit has been condemned for 2 years due to a problem with black-mold. Now, the A3 unit is being used as a quarantine unit for inmates testing positive with Coronavirus.**

When Plaintiff arrived, he was assigned to cell #219 where he was housing alone in order to properly recover from covid-19.

From December 6th to December 11th 2020... Plaintiff was listed as "asymptomatic" when evaluated by medical staff.

On December 11th at 1:15 PM... Defendant Marrs came into the A3 building and began going from cell to cell to see which cells only have one inmate in it. Inmates who were housing alone were told they were moving to "double up" in order to make room for other inmates testing positive who would be coming in. Defendant came to Plaintiff's cell and said: "you're getting a cellie". Plaintiff questioned Defendant Marrs regarding the immediate risk of forcing him into a cell with another inmate who tested positive for covid 19.Defendant Marrs stated: "all of you guys are asymptomatic so it won't matter and won't affect you if you're in the cell together".

Inmate **L. Williams** Register#:01230-104; who had been designated to move into the cell with Plaintiff... Spoke up and informed Plaintiff and Defendant Marrs that he was in fact "symptomatic" and still experiencing severe symptoms from covid-19. Plaintiff immediately began to protest being forced to house with someone who clearly had symptoms, when plaintiff was clearly asymptomatic. Defendant Mars responded by threatening to send Plaintiff to the SHU if he did not want to accept a cell move.

Forcing Plaintiff to accept a cellmate while both were positive for covid-19 was blatant disregard for CDC guidelines and recommendations for practicing social distancing in order to prevent and while positive with Coronavirus.

Defendant Marrs acted with a sufficiently culpable state of mind as he was directly informed of the entirety of the scenario; therefore, he was also aware of the imminent risk of danger that he was putting Plaintiff in and still failed to implement and adequate plan to abate or resolve this matter.

26

61.) Here plaintiff is alleging that Defendant Woodard has subjected him to cruel and unusual punishment in violation of his Eighth Amendment Constitution of constitutional rights.sAs Clinical Director for the Medical Department at Forrest City, Defendant Woodard has a professional obligation to ensure that the Medical Department operates in accordance with policies and procedures set forth pursuant to the laws of the United States. By virtue of this position, defendant is also responsible for the acts and omissions of all personnel within the Health Services Department.

Defendant is responsible for ensuring proper administering of Medical Care in order to prevent Plaintiff from being subjected to unreasonable risk to his health and well-being.

Plaintiff has now been incarcerated at Forrest City for 17 months without receiving any form of treatment of his serious shoulder injury.

Plaintiff was denied surgery in November of 2019 through surgery consultation. Plaintiff immediately requested a second opinion which was then denied by doctor tomorrow in December 2019.

Plaintiff was offered "NSAIDS", a physical therapy pamphlet, and steroid injections which he was "supposedly" schedule for but never received.

Plaintiff's treatment has been continually denied and prolonged and now Plaintiff is being further denied treatment as a result of the covid-19 pandemic.

Defendant Woodard was directly aware of Plaintiff's injury; as it is her responsibility to be aware of the status of a patient's treatment. Defendant was also directly responsible for the administering of steroid injections which Plaintiff never received.

Defendant Woodard was directly aware of the extensive time period for which Plaintiff has been waiting treatment of his serious shoulder injury, the substantial risk of harm of leaving his shoulder injury untreated, and the pain and suffering Plaintiff is enduring as a result of his injury. Plaintiff has not been enduring the pain and suffering for 17 months under the care of the Forrest City Medical Department.

27

Defendant Woodard is also directly responsible for the care and treatment of Plaintiff since becoming infected with covid-19. Plaintiff is enduring extreme pain and suffering as a result of contracting covid-19 and was offered nothing more than aspirin for treatment of his symptoms.

Defendant Woodard has chosen to disregard the obvious risk to Plaintiff's health by allowing his shoulder injury to go untreated for 17 months, as well as the risk to his health from becoming infected with covid-19.

Defendant Woodard has subjected Plaintiff to cruel and unusual punishment by denying him of "necessary and adequate Medical Care" and preventing him from obtaining needed medical treatment and care... Thereby endangering Plaintiff's health and well-being in violation of his 8th Amendment Constitution of Rights.

Defendant Woodard is acting with a sufficiently culpable state of mind as she is aware of the imminent risk of danger to Plaintiff's health, safety, and well-being, and has still failed to take necessary steps to ensure that Plaintiff receives the Medical Care and treatment that he is in need of.

61.5) Here plaintiff is alleging that Defendant Tomar is subjecting him to cruel and unusual punishment by denying and or depriving Plaintiff one of the primary "minimal civilize measures of life's basic necessities" in the form of adequate Medical Care.

Defendant Tomar is a licensed physician with the Help Services Department, at FCl Forrest City Medium, and is the Primary Care Provider of the plaintiff.

Plaintiff asserts that Defendant Tomar is failing in his duty to provide adequate medical care for a treatment of Plaintiff's existing shoulder injury; failure to provide the necessary treatment for Plaintiff's dyslipidemia diagnosis; and failure to provide and or administer adequate care and treatment for Plaintiff's symptoms related to his covid-19 infection.

Prior to the pandemic (January or February 2020)... Plaintiff was already awaiting treatment of his serious shoulder injury which Defendant Tomar was directly aware of.

Plaintiff initially saw Tomar in December of 2019, after plaintiff requested a second opinion of surgery consultation. Tomar informed the Plaintiff that he would not submit a request for a second opinion through consultation until after plaintiff agreed to and receive steroid injections. Defendant stated that "injections were

28

the next step and we're required before he would submit a request." Defendant offered plaintiff drugs (NSAIDS), A physical therapy pamphlet, and informed plaintiff that he would be schedule for steroid injections.

Plaintiff continue to endure pain and suffering for 10 more months and had not heard a word from anyone, nor had he received any form of treatment which includes the steroid injections that he was supposedly schedule for.

September 10th 2020... Plaintiff emailed Defendant Tomar inquiring in regards to the status of being scheduled for surgery consultation.

September 15th 2020... Defendant responded stating: "I forgot to ask if you wanted the steroid injection... Let me know if you want it so I can get you scheduled. "

**NOTE: Plaintiff had already informed defendant 10 months prior during a face-to-face appointment, that he wanted the steroid injection in order to move forward in the process. Defendant Tomar failed to schedule injections and allow plaintiff to continue suffering.**

Plaintiff continued to email defendant Tomar requesting treatment of his injury. Defendant then informed plaintiff that his treatment would be on hold another two to three months due to Ortho clinics being closed for non emergent cases. Plaintiff was forced to continue enduring pain and suffering and has still not received any form of treatment.

As Plaintiff's Primary Care Provider... Defendant Tomar was also directly responsible for the care and treatment that plaintiff would receive after testing positive with covid-19.

When Defendant came to see plaintiff while in quarantine... Plaintiff informed defendant that he was experiencing severe symptoms such as coughing, shortness of breath, fever, chills, body aches, and dizziness... Defendant told plaintiff to "drink plenty of water, you're probably dehydrated."

Defendant Tomar failed to administer any form of treatment for Plaintiff's symptoms, allowing plaintiff to endure pain and suffering from covid-19.

Defendant Tomar has subjected plaintiff to cruel and unusual punishment by denying and depriving him of "necessary and adequate Medical Care" and preventing him from obtaining needed medical treatment and Care; Thereby endangering Plaintiff's health, safety, and will being in violation of plaintiffs constitutional rights.

29

Defendant Tomar is acting with a sufficiently culpable state of mind as he is aware of the imminent risk of danger to Plaintiff's health and safety and has still failed to take the necessary steps to abate or resolve this matter.

62.) Here Plaintiff is alleging that Defendant Stewart is subjecting him to cruel and unusual punishment by denying his right to adequate Dental Care, and by failing in his duty to promulgate procedures whereby Plaintiff can continue receiving adequate dental care in accordance with the proper standard of care for Dentistry pursuant to Arkansas law, and in accordance with plaintiff's constitutional rights.

As Clinical Director for the Dentistry department at FCI Forrest City, Defendant Stewart, has an obligation as a dental professional to ensure that the Dental Services Department operates in accordance with the policies and procedures set forth pursuant to the laws of the United States. By virtue of this position, Defendant Stewart is also responsible for the acts and omissions of all personnel of the dental services department.

Defendant Stewart is directly responsible for ensuring the proper administering of dental care in order to prevent Plaintiff from being subjected to unreasonable risk to his health which are associated with dental treatment and procedures.

Plaintiff has been suffering severe tooth pain since February 2020. In April and May 2020, Plaintiff sent an email to Dental Services, following up on the status of receiving treatment for his tooth pain. Plaintiff was called to an appointment in mid-May just to be told in person that he cannot receive treatment for his tooth pain, due to "CDC and BOP restrictions on providing treatment during the covid-19 pandemic."

"We have to go by BOP recommendation at this time for the safety of the institution. "

Plaintiff's health was being completely disregarded for "the safety of the institution." This was the response Plaintiff received from the dental services department; the department which Defendant Stewart is

responsible for   overseeing.

On October 8th 2020, Plaintiff emailed Dental Services again regarding the tooth pain which he was still suffering from. This time Plaintiff received a response stating that:

"Tooth extraction was the only treatment available for relief of his tooth pain."

Plaintiff stated: "If I am not being left with any other option, I would like to get the tooth pulled please."

30

On October 11th 2020 Plaintiff received a response stating: "You will be on call out next week."

This is clear negligence from the Dental Services Department and a breach of their obligation to provide "adequate" dental care in accordance with the law. The law states that: "The dental professional is required to offer the necessary treatment for the patient's needs." Plaintiff was offered tooth extraction to relieve pain of a tooth that was previously documented for further repair. Furthermore, if extraction of a tooth can be performed during the pandemic, it is certainly reasonable to believe that a tooth can be repaired during the pandemic as well.

Plaintiff has endured excruciating pain for 7 months while being told his tooth could not be "repaired" during the pandemic. However, when plaintiff requested to have the tooth pulled, he was told by Dental Services that he would be on the call-out for the following week... ( Plaintiff was in fact placed on call-out to have his tooth pulled the following week.)

In October 2020, Plaintiff was called to dental to have the tooth pulled. However, after performing an x-ray, the dentist was uncertain of which tooth was the cause of the pain and informed Plaintiff that she did not want to extract the wrong tooth. However, she then informed Plaintiff that she could not perform another x-ray to confirm which tooth was causing the pain. Plaintiff was told to submit another call out if tooth pain continued.

As a direct result of Defendant Stewart's breach of duty, as well as his actions in the negligent management of the Dental Services Department during the coronavirus Health crisis... Plaintiff is being subjected to extreme pain and suffering from untreated tooth pain. Ongoing pain and suffering are the direct result of Stewart's negligence and inability to promulgate and adequate treatment plan.

**FTCA CLAIM:**

**COUNT 1- NEGLIGENCE-**

60.) Here Plaintiff is alleging that the United States of America is negligent in their duty to promulgate and or regulate procedures whereby the Federal Bureau of Prisons is being held accountable in their duties and obligations to operate in accordance with the policies and laws of the United States and the Federal Constitution.

31

Plaintiff asserts that the Federal Bureau of Prisons is failing in their duties to ensure that Plaintiff and other inmates are not being subjected to unnecessary or undue risk to their health, safety, and well-being while incarcerated under the care of the Federal Bureau of Prisons.

**Plaintiff alleges as follows:**

61.) From April 1st to October 13th... Plaintiff was locked in a cell for 21 to 24 hours per day, 7 days per week for a period of six months. During this time, Plaintiff was denied and or deprived of sunlight, fresh air, exercise, Medical Care, Dental Care, and adequate meals; all of which are considered "Basic Life Necessities" covered under the 8th Amendment of the United States Constitution, and a prison officials' duty to provide "human conditions of confinement."

From April 1st to mid-July... (A period of 12 to 14 weeks)... plaintiff was confined to C3 housing unit where he did not receive any sunlight, fresh air, or exercise **at all** during this time; subjecting him to extreme cruel and unusual punishment.

In mid-July... Plaintiff began to receive one hour of recreation time per week until August 1st, when his entire housing unit was placed under quarantine.

From August 1st to October 13th (A period of 10 weeks)... Plaintiff was confined to C3 housing unit where he was again denied and deprived of sunlight, fresh air, and exercise; again subjecting him to extreme cruel and unusual punishment.

Plaintiff was denied access to commissary; Plaintiff could not purchase soap, deodorant, toothpaste, Etc., over the counter medications, nor general health items, from April 1st to mid-July.

Plaintiff is incarcerated under conditions posing a substantial risk of serious harm to his safety and well-being... Plaintiff is being incarcerated in an Institutional environment where CDC guidelines (such as social distance) are impossible to enforce.

Some staff members do not wear masks **at all** and inmate mask-wearing is not strictly enforced.

Inmates are not being provided adequate cleaning supplies in order to maintain cleanliness of living areas.

32

The meals that inmates are being served are well under the prescribed daily caloric intake for an adult male and are extremely lacking in nutritional value.

Plaintiff has literally been trapped in an environment where Contracting covid-19 was inevitable and appeared to be part of the plan in order to achieve "herd immunity".

Plaintiff was confirmed covid-19 positive on December 5th 2020 and was moved to A3 housing unit.

**NOTE: Prior to the pandemic, A3 had been condemned for almost two years due to a problem with black mold. Now A3 is being used as a quarantine unit for inmates testing positive with Coronavirus.**

62.) Here Plaintiff is alleging that Defendant Stewart is subjecting him to cruel and unusual punishment by denying his right to adequate Dental Care, and by failing in his duty to promulgate procedures whereby Plaintiff can continue receiving adequate dental care in accordance with the proper standard of care for Dentistry pursuant to Arkansas law, and in accordance with plaintiff's constitutional rights.

As Clinical Director for the Dentistry department at FCI Forrest City, Defendant Stewart, has an obligation as a dental professional to ensure that the Dental Services Department operates in accordance with the policies and procedures set forth pursuant to the laws of the United States. By virtue of this position, Defendant Stewart is also responsible for the acts and omissions of all personnel of the dental services department.

Defendant Stewart is directly responsible for ensuring the proper administering of dental care in order to prevent Plaintiff from being subjected to unreasonable risk to his health which are associated with dental treatment and procedures.

Plaintiff has been suffering severe tooth pain since February 2020. In April and May 2020, Plaintiff sent an email to Dental Services, following up on the status of receiving treatment for his tooth pain. Plaintiff was called to an appointment in mid-May just to be told in person that he cannot receive treatment for his tooth pain, due to "CDC and BOP restrictions on providing treatment during the covid-19 pandemic."

"We have to go by BOP recommendation at this time for the safety of the institution. "

33

Plaintiff's health was being completely disregarded for "the safety of the institution." This was the response Plaintiff received from the dental services department; the department which Defendant Stewart is responsible for overseeing.

On October 8th 2020, Plaintiff emailed Dental Services again regarding the tooth pain which he was still suffering from. This time Plaintiff received a response stating that:

"Tooth extraction was the only treatment available for relief of his tooth pain."

Plaintiff stated: "If I am not being left with any other option, I would like to get the tooth pulled please."

On October 11th 2020 Plaintiff received a response stating: "You will be on call out next week."

This is clear negligence from the Dental Services Department and a breach of their obligation to provide "adequate" dental care in accordance with the law. The law states that: "The dental professional is required to offer the necessary treatment for the patient's needs." Plaintiff was offered tooth extraction to relieve pain of a tooth that was previously documented for further repair. Furthermore, if extraction of a tooth can be performed during the pandemic, it is certainly reasonable to believe that a tooth can be repaired during the pandemic as well.

Plaintiff has endured excruciating pain for 7 months while being told his tooth could not be "repaired" during the pandemic. However, when plaintiff requested to have the tooth pulled, he was told by Dental Services that he would be on the call-out for the following week... ( Plaintiff was in fact placed on call-out to have his tooth pulled the following week.)

In October 2020, Plaintiff was called to dental to have the tooth pulled. However, after performing an x-ray, the dentist was uncertain of which tooth was the cause of the pain and informed Plaintiff that she did not want to extract the wrong tooth.  However, she then informed Plaintiff that she could not perform another x-ray to confirm which tooth was causing the pain. Plaintiff was told to submit another call out if tooth pain continued.

As a direct result of Defendant Stewart's breach of duty, as well as his actions in the negligent management of the Dental Services Department during the coronavirus Health crisis... Plaintiff is being subjected to extreme pain and suffering from untreated tooth pain. Ongoing pain and suffering are the direct result of Stewart's negligence and inability to promulgate and adequate treatment plan.

34

**FTCA CLAIM:**

**COUNT 1- NEGLIGENCE-**

63.) Here Plaintiff is alleging that the United States of America is negligent in their duty to promulgate and or regulate procedures whereby the Federal Bureau of Prisons is being held accountable in their duties and obligations to operate in accordance with the policies and laws of the United States and the Federal Constitution.

Plaintiff asserts that the Federal Bureau of Prisons is failing in their duties to ensure that Plaintiff and other inmates are not being subjected to unnecessary or undue risk to their health, safety, and well-being while incarcerated under the care of the Federal Bureau of Prisons.

**Plaintiff alleges as follows:**

64.) From April 1st to October 13th... Plaintiff was locked in a cell for 21 to 24 hours per day, 7 days per week for a period of six months. During this time, Plaintiff was denied and or deprived of sunlight, fresh air, exercise, Medical Care, Dental Care, and adequate meals; all of which are considered "Basic Life Necessities" covered under the 8th Amendment of the United States Constitution, and a prison officials' duty to provide "human conditions of confinement."

From April 1st to mid-July... (A period of 12 to 14 weeks)... plaintiff was confined to C3 housing unit where he did not receive any sunlight, fresh air, or exercise **at all** during this time; subjecting him to extreme cruel and unusual punishment.

In mid-July... Plaintiff began to receive one hour of recreation time per week until August 1st, when his entire housing unit was placed under quarantine.

From August 1st to October 13th (A period of 10 weeks)... Plaintiff was confined to C3 housing unit where he was again denied and deprived of sunlight, fresh air, and exercise; again subjecting him to extreme cruel and unusual punishment.

Plaintiff was denied access to commissary; Plaintiff could not purchase soap, deodorant, toothpaste, Etc., over the counter medications, nor general health items, from April 41st to mid-July.

35

Plaintiff is incarcerated under conditions posing a substantial risk of serious harm to his safety and well-being... Plaintiff is being incarcerated in an Institutional environment where CDC guidelines (such as social distance) are impossible to enforce

Some staff members do not wear masks **at all** and inmate mask-wearing is not strictly enforced.

Inmates are not being provided adequate cleaning supplies in order to maintain cleanliness of living areas.

The meals that inmates are being served are well under the prescribed daily caloric intake for an adult male and are extremely lacking in nutritional value.

Plaintiff has literally been trapped in an environment where Contracting covid-19 was inevitable and appeared to be part of the plan in order to achieve "herd immunity".

Plaintiff was confirmed covid-19 positive on December 5th 2020 and was moved to A3 housing unit.

**NOTE: Prior to the pandemic, A3 had been condemned for almost two years due to a problem with black mold. Now A3 is being used as a quarantine unit for inmates testing positive with Coronavirus.**

On December 5th 2020... Plaintiff was told to pack up all his belongings and move to A3 housing unit after confirmation of positive test results for covid-19.

When plaintiff arrived, he was assigned to cell #219 where he was housing alone in order to properly recover from covid-19.

From December 6th to December 11th... Plaintiff was listed as "asymptomatic" when evaluated by medical staff.

On December 11th at 1:15 PM... Defendant Marrs came into the A3 building and began going from cell to cell to see which cells only had one inmate in it. Inmates who were housing alone were told they were moving to "double up" in order to make room for other inmates testing positive who would be coming in. Lieutenant Marrs came to Plaintiff's cell and said: "You're getting a cellie." Plaintiff questioned Defendent Marrs regarding the immediate risk of forcing him into a cell with another inmate who tested positive for covid-19. Defendant Marrs stated: "All of you guys are asymptomatic so it won't matter and won't affect you if you're in the cell together."

36

Inmate L Williams; Register #:01237-104... who had been designated to move into the cell with plaintiff... Spoke up and informed Plaintiff and Defendant Marrs that he was in fact "symptomatic" and still experiencing severe symptoms from covid-19. Plaintiff began to protest being forced to house with someone who clearly had symptoms, when Plaintiff clearly had none and was asymptomatic. Defendant Marrs responded by threatening to send Plaintiff to the SHU if he did not want to accept a cell move.

December 12th 2020... Plaintiff begin to fill the initial onset and gradual worsening of covid-19 symptoms... Fever, severe coughing, sinus and chest congestion, shortness of breath, difficulty breathing when laying down, chest pains, cold shivers, loss of appetite, loss of taste and smell, body aches and joint pain, fatigue, nausea, dizziness, instant headaches, inability to use bathroom, yellowish eyes, depression, anxiety, and stress.

As of December 28th 2020... Plaintiff symptoms were getting worse not better as he was released from quarantine.

As a direct result of Defendant Marrs's negligence and breach of duty; specifically his negligent management of the coronavirus Health crisis; placing Plaintiff in harm's way by forcing him into a cell with an inmate who directly informed Marrs that he was in fact symptomatic... Plaintiff is now enduring extreme pain and suffering as a direct result of the actions of the defendant.

While being held in quarantine unit, plaintiff was being housed in a cell 23 hours per day in freezing cold room temperatures while suffering from severe covid-19 symptoms.

Plaintiff was locked in a Cell 24 hours per day during the weekends and not allowed to shower without legitimate reason or justification.

Plaintiff was not being provided with cleaning supplies **at all** in order to maintain sanitary living area.

Inmates requesting medical attention we're being ignored by medical staff.

Plaintiff inform medical staff of worsening symptoms and was prescribed aspirin.

As of December 28th 2020... Plaintiff Plaintiff's symptoms had not improved when he was released from quarantine.

Plaintiff asserts that he is being punished and treated like an animal because of a Health crisis that the whole world is dealing with. Officers, staff-members, and administration are responsible for the introduction of

37

coronavirus in to Forrest City-Medium. Inmates do not leave the facility **at all**; therefore, could not have contracted the virus from anyone other than a Forrest City staff member who contracted the virus outside the facility. Regardless of how the virus was initially introduced, the inmates are the ones suffering the negligent repercussions of the ordeal.

Plaintiff has now been locked in a cell from 21 to 24 hours per day, seven days per week, for the last nine months, with no regard for how it is affecting his physical and mental health and overall well-being.

Plaintiff is clearly being subjected to cruel and unusual punishment causing him to suffer unnecessary and wanton infliction of physical and mental pain and suffering, mental and emotional stress, anxiety, depression, weight-loss, hair-loss, and physical damage due to extreme sedentary lifestyle for an extensive period of time.

The current conditions of confinement that currently exists here at FCI Forrest City; where Plaintiff is being denied and deprived of "Basic Life Necessities"; being subjected to cruel and unusual punishment by being locked in a cell for a minimum of 22 and a half hours per day 7 days per week, for 7 out of 9 months of the pandemic... Where Plaintiff is also being denied his right to safety by subjecting him to conditions which were the direct causation of Plaintiff contracting coronavirus... subjecting him to cruel and unusual punishment while suffering from covid-19... and the ongoing violations of Plaintiff's 8th amendment constitutional rights... All claims and violations are all the direct result of the Federal Bureau of Prisons' and Forrest City Administrators' inability to implement a feasible mitigation plan to curb, stop, or even slow down the spread of the virus.

Covid-19 is currently ripping through the FCI Forrest City facility and there appears to be nothing to disrupt the continuing spread of the virus. Not even locking plaintiff and other inmates in a cell for up to 24 hours a day, seven days a week, for 8 months has work to stop Plaintiff from Contracting covid-19. Therefore, Forrest City and the Federal Bureau of Prisons have violated Plaintiff's rights frivolously and have proven their inability to guarantee Plaintiff's health and safety in accordance with the United States Federal Constitution.

**65.) Plaintiff asserts that he has exhausted administrative remedy procedures within the Bureau of Prisons in an attempt to remedy the situation, as required by 28 USC 2675.**

**FTCA CLAIM:**

38

**COUNT 2- CRUEL & UNUSUAL PUNISHMENT-**

65.5) Here Plaintiff is alleging that the United States of America is allowing him to be subjected to him to cruel and unusual punishment by failing in their duty to promulgate and or regulate procedures whereby the Federal Bureau of Prisons is being held accountable in their duties and obligations to operate in accordance with the policies and laws of the United States and the Federal Constitution.

Plaintiff asserts that the Federal Bureau of Prisons is failing in their duties to ensure that Plaintiff and other inmates are not being subjected to unnecessary or undue risk to their health, safety, and well-being while incarcerated under the care of the Federal Bureau of Prisons.

**Plaintiff alleges as follows:**

66.) From April 1st to October 13th... Plaintiff was locked in a cell for 21 to 24 hours per day, 7 days per week for a period of six months. During this time, Plaintiff was denied and or deprived of sunlight, fresh air, exercise, Medical Care, Dental Care, and adequate meals; all of which are considered "Basic Life Necessities" covered under the 8th Amendment of the United States Constitution, and a prison officials' duty to provide "human conditions of confinement."

From April 1st to mid-july... (A period of 12 to 14 weeks)... Plaintiff was confined to C3 housing unit where he did not receive any sunlight, fresh air, or exercise **at all** during this time; subjecting him to extreme cruel and unusual punishment.

In mid-July... Plaintiff began to receive one hour of recreation time per week until August 1st, when his entire housing unit was placed under quarantine.

From August 1st to October 13th (A period of 10 weeks)... Plaintiff was confined to C3 housing unit where he was again denied and deprived of sunlight, fresh air, and exercise; again subjecting him to extreme cruel and unusual punishment.

Plaintiff was denied access to commissary; Plaintiff could not purchase soap, deodorant, toothpaste, Etc., over the counter medications, nor general health items, from April 1st to mid-July.

39

Plaintiff is incarcerated under conditions posing a substantial risk of serious harm to his safety and well-being... Plaintiff is being incarcerated in an Institutional environment where CDC guidelines (such as social distance) are impossible to enforce.

Some staff members do not wear masks **at all** and inmate mask-wearing is not strictly enforced.

Inmates are not being provided adequate cleaning supplies in order to maintain cleanliness of living areas.

The meals that inmates are being served are well under the prescribed daily caloric intake for an adult male and are extremely lacking in nutritional value.

Plaintiff has literally been trapped in an environment where Contracting covid-19 was inevitable and appeared to be part of the plan in order to achieve "herd immunity".

Plaintiff was confirmed covid-19 positive on December 5th 2020 and was moved to A3 housing unit.

**NOTE: Prior to the pandemic, A3 had been condemned for almost two years due to a problem with black mold. Now A3 is being used as a quarantine unit for inmates testing positive with Coronavirus.**

On December 5th 2020... Plaintiff was told to pack up all his belongings and move to A3 housing unit after confirmation of positive test results for covid-19.

When plaintiff arrived, he was assigned to cell #219 where he was housing alone in order to properly recover from covid-19.

From December 6th to December 11th... Plaintiff was listed as "asymptomatic" when evaluated by medical staff.

On December 11th at 1:15 PM... Defendant Marrs came into the A3 building and began going from cell to cell to see which cells only had one inmate in it. Inmates who were housing alone were told they were moving to "double up" in order to make room for other inmates testing positive who would be coming in. Lieutenant Marrs came to Plaintiff's cell and said: "You're getting a cellie." Plaintiff questioned Defendant Marrs regarding the immediate risk of forcing him into a cell with another inmate who tested positive for covid-19. Defendant Marrs stated: "All of you guys are asymptomatic so it won't matter and won't affect you if you're in the cell together."

40

Inmate L Williams; Register #:01237-104... who had been designated to move into the cell with plaintiff... Spoke up and informed Plaintiff and Defendant Marrs that he was in fact "symptomatic" and still experiencing severe symptoms from covid-19. Plaintiff began to protest being forced to house with someone who clearly had symptoms, when Plaintiff clearly had none and was asymptomatic. Defendant Marrs responded by threatening to send Plaintiff to the SHU if he did not want to accept a cell move.

December 12th 2020... Plaintiff begin to fill the initial onset and gradual worsening of covid-19 symptoms... Fever, severe coughing, sinus and chest congestion, shortness of breath, difficulty breathing when laying down, chest pains, cold shivers, loss of appetite, loss of taste and smell, body aches and joint pain, fatigue, nausea, dizziness, instant headaches, inability to use bathroom, yellowish eyes, depression, anxiety, and stress.

As of December 28th 2020... Plaintiff symptoms were getting worse not better as he was released from quarantine.

As a direct result of Defendant Marrs's negligence and breach of duty; specifically his negligent management of the coronavirus Health crisis; placing Plaintiff in harm's way by forcing him into a cell with an inmate who directly informed Marrs that he was in fact symptomatic... Plaintiff is now enduring extreme pain and suffering as a direct result of the actions of the defendant.

While being held in quarantine unit, plaintiff was being housed in a cell 23 hours per day in freezing cold room temperatures while suffering from severe covid-19 symptoms.

Plaintiff was locked in a Cell 24 hours per day during the weekends and not allowed to shower without legitimate reason or justification.

Plaintiff was not being provided with cleaning supplies **at all** in order to maintain sanitary living area.

Inmates requesting medical attention we're being ignored by medical staff.

Plaintiff inform medical staff of worsening symptoms and was prescribed aspirin.

As of December 28th 2020... Plaintiff Plaintiff's symptoms had not improved when he was released from quarantine.

Plaintiff asserts that he is being punished and treated like an animal because of a Health crisis that the whole world is dealing with. Officers, staff-members, and administration are responsible for the introduction of

41

coronavirus in to Forrest City-Medium. Inmates do not leave the facility **at all**; therefore, could not have contracted the virus from anyone other than a Forrest City staff member who contracted the virus outside the facility. Regardless of how the virus was initially introduced, the inmates are the ones suffering the negligent repercussions of the ordeal.

Plaintiff has now been locked in a cell from 21 to 24 hours per day, seven days per week, for the last nine months, with no regard for how it is affecting his physical and mental health and overall well-being.

Plaintiff is clearly being subjected to cruel and unusual punishment causing him to suffer unnecessary and wanton infliction of physical and mental pain and suffering, mental and emotional stress, anxiety, depression, weight-loss, hair-loss, and physical damage due to extreme sedentary lifestyle for an extensive period of time.

The current conditions of confinement that currently exists here at FCI Forrest City; where Plaintiff is being denied and deprived of "Basic Life Necessities"; being subjected to cruel and unusual punishment by being locked in a cell for a minimum of 22 and a half hours per day 7 days per week, for 7 out of 9 months of the pandemic... Where Plaintiff is also being denied his right to safety by subjecting him to conditions which were the direct causation of Plaintiff contracting coronavirus... subjecting him to cruel and unusual punishment while suffering from covid-19... and the ongoing violations of Plaintiff's 8th amendment constitutional rights... All claims and violations are all the direct result of the Federal Bureau of Prisons' and Forrest City Administrators' inability to implement a feasible mitigation plan to curb, stop, or even slow down the spread of the virus.

Covid-19 is currently ripping through the FCI Forrest City facility and there appears to be nothing to disrupt the continuing spread of the virus. Not even locking plaintiff and other inmates in a cell for up to 24 hours a day, seven days a week, for 8 months has work to stop plantar from Contracting covid-19. Therefore, Forrest City and the Federal Bureau of Prisons have violated Plaintiff's rights frivolously and have proven their inability to guarantee Plaintiff's health and safety in accordance with the United States Federal Constitution.

FCI Forrest City is a prison which operates under policies and procedures set forth by the Federal Bureau of Prisons under the Department of Justice for the United States of America, and its laws in accordance with the United States Federal Constitution.

42

The staff of the federal correctional institution Forrest City are employees of the Federal Bureau of Prisons and were acting in their official duties.   by and through the acts and omissions of its employees, the United States of America has acted with negligence, acted with deliberate indifference, subjected plaintiff to cruel and unusual punishment; Therefore, the United States of America is properly named as the defendant in this claim.

**DAMAGES:**

**67.) Plaintiff seeks compensatory and punitive damages in an amount to be proven and determined at trial.**

**68.) Plaintiff reserves the right to amend this complaint and further plead.**

**Wherefore, Plaintiff seeks an award of compensatory and punitive damages, and for all other relief to which he is entitled by law.**

**Plaintiff also asserts that: Due to the nature of this lawsuit, Plaintiff fears SWIFT AND SEVERE RETALIATION from FCI Forrest City Administrators and is therefore requesting immediate release from prison and hereby demands a trial by jury.**

**Submitted by Richard Julius Donaldson; representing himself pro se.**

Richard Donaldson

**This 23rd day of ~~January~~ March, 2021.**

43



ORIGIN ID:HAIA  (702) 412-2944
AMANDA NICOLE HITCHCOCK

5770 ARBUTUS

KALAMAZOO, MI 49009
UNITED STATES US

SHIP DATE: 08APR2
ACTWGT: 8.20 LB
CAD: 6997189/SSF02201

BILL CREDIT CARD

TO  RICHARD SHEPARD ARNOLD – CLERK
US DISTRICT COURT CLERK
600 W CAPITOL AVE
STE A149
LITTLE ROCK AR 72201

(501) 604-5410              REF:
INV:                              DEPT:
PO:

FedEx
Express

E

TUE – 13 APR 4:30P
EXPRESS SAVER

TRK#  7857 5662 1520
0201

SA LITA

72201
AR-US    LIT

RT 108    1    B
FZ        16:30
          1520
          04.13

Align bottom of peel-and-stick airbill or pouch here.