FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 29 2021

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

RECEIVED
US DISTRICT COURT
EASTERN DISTRICT ARKANSAS

2021 OCT 29 A 9 40

TAMMY H DOWNS

IN THE UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

RICHARD JULIUS DONALDSON
PLAINTIFF

V.

MERRICK GARLAND, et al.
DEFENDANT

CASE NO:
2:21-CV-00034-LPR-PSH

---

**SECOND AMENDED COMPLAINT
MOTION TO LIFT STAY &
UPDATE ADDRESS**

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

-----------------------------------------------------------------------------------

FROM: 16787040
TO: Donaldson, Richard
SUBJECT: Part 1:
DATE: 06/21/2021 12:18:16 PM

**SECOND AMENDED COMPLAINT**
------------------------------

Plaintiff Richard Julius Donaldson, representing himself pro se, alleging as follows:

1.)This action is being brought before this Court for the violation of Plaintiff's Constitutional Rights, under the Eighth Amendment of the United States Constitution, while in the custody of the Federal Bureau of Prisons and under the direct care of the Federal Correctional Institution Forrest City-Medium. Plaintiff seeks compensatory and punitive damages in an amount to be determined and proven at trial.

Parties:

2.)--Plaintiff Richard Julius Donaldson (hereinafter "Plaintiff") is and at all times relevant to this litigation; is an incarcerated inmate currently housed at the Federal Correctional Institution-Forrest City Medium, located in Forrest City, Arkansas; where Plaintiff has been since July 22, 2019.

3.)--Defendant Merrick Garland is, and at all time relevant to this litigation, is the Attorney General of the United States of America, and head of the Department of Justice to the United States of America, which maintains oversight of the Federal Bureau of Prisons.

4.)--Defendant DeWayne Hendrix is, and at all times relevant to this litigation, was the Warden of the Federal Correctional Institution-Forrest City, located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions performed in his official capacity; that is, in his inability to ensure that the proper procedures were in place, allowing Plaintiff to receive proper and effective medical treatment in a timely manner, and in accordance with the standard of care as provided pursuant to Arkansas law, and in accordance with Plaintiff's Constitutional Rights pursuant to the United States Constitution. Defendant Hendrix was the Warden of Forrest City during the time period relevant to this litigation.

5.)--Sheila S. Woodard MD. is, and at all time relevant to this litigation, is the Clinical Director for the Health Services Department at Forrest City-Medium; located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in her individual capacity, for actions performed in her official capacity; in that, she failed to promulgate, regulate, and/or ensure that procedures were in place, whereby Plaintiff could receive proper and effective medical treatment in a timely manner, and in accordance with the proper standard of care as provided pursuant to Arkansas law, and in accordance with Plaintiff's Constitutional Rights pursuant to the United States Constitution.

Defendant Woodard is the Clinical Director of the Health Services Department and by virtue of this position, is responsible for the acts and omissions of the department's personnel.

6.)--Defendant Maharaj Alejandro Tomar MD. is, and at all times relevant to this litigation, is a licensed Physician with the Health Services Department at Forrest City-Medium; located in Forrest City, Arkansas; which is operated by the Federal Bureau of Prisons, under the Department of Justice to the United States of America.

Defendant is being sued in his individual capacity, for actions performed in his official capacity; in that he failed to administer proper and effective medical treatment of Plaintiff's existing injury, in a timely manner, and in accordance with the proper standard of care as provided pursuant to Arkansas law, and in accordance with Plaintiff's Constitutional Rights pursuant to the United States Constitution.

Jurisdiction and Venue:

7.) This action arises under the Constitution and laws of the United States, including "Bivens vs. Six Unknown Named Fed Narcotics Agents, 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA) 28 U.S.C. 2671-2680. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. 1331 and 1346(b), respectively. Venue is this Court is proper under 28 U.S.C. 1391 and 1402(b), respectively.

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

----------------------------------------------------------------------------------------

**PAGE 2**

Factual Statement:

8.) July 22, 2019, Plaintiff arrived at FCI Forrest City Medium.  During initial intake evaluation, Plaintiff informed RN Melissa Loveday, that he had an existing injury (a torn rotator cuff) which he was awaiting surgery for prior to being transferred from the previous facility.

9.) September 16, 2019, Plaintiff sent an email to medical, following up on the status of his request for an evaluation of shoulder injury in order to proceed with surgery.

10.) October 11, 2019, Plaintiff went to a scheduled appointment with DNP, M. Hickerson, regarding his shoulder injury and the previously scheduled surgery.  Hickerson informed Plaintiff that he would be scheduled to see a local orthopedic surgeon for an evaluation.

11.) November 13, 2019, Plaintiff was taken to OrthoNow for a consultation with Dr. Bret Sokolove.  Sokolove stated that he was not recommending surgery; he was recommending exercises/physical therapy, NSAIDS, and steroid injections, and stated that "the location of pain was not consistent with a rotator tear."

12.) November 17, 2019, Plaintiff sent an email to DNP Hickerson, formally requesting a "second opinion" from a different provider, after Dr. Sokolove denied surgery.

13.) December 20, 2019, Plaintiff reported to a scheduled appointment with DNP Hickerson; Hickerson informed Plaintiff that "she was unfamiliar with the process, and did not know how to submit a request for a "second opinion".  Hickerson then took Plaintiff and introduced him to Dr. Tomar.

14.) Dr. Tomar immediately informed Plaintiff: "This is not something that I normally deal with"; He then quickly reviewed the notes from both ortho consultations and then proceeded to examine Plaintiff himself.  Without a thorough or adequate examination, he immediately agreed with Dr. Sokolove who had stated: "rotator tear does not need surgery."  Plaintiff asked Tomar: "How can you so easily agree with Dr. Sokolove and make a determination denying surgery, if I already received an opinion from a surgeon who recommended surgery to repair the torn rotator cuff?" Tomar said: "If I were to submit a request for a second opinion, it's highly likely you would get the same response as you did from Sokolove, denying the surgery."  Tomar then said: "Let me level with you on something... When dealing with the BOP, the ortho's they'll send you to will do everything possible to avoid giving you an expensive surgery."  Plaintiff then reminded Tomar that the previous ortho who had recommended surgery, was a contracted provider for the BOP.  Plaintiff then asked Tomar: "What is the difference between the ortho who thoroughly examined me and recommended surgery, vs. the ortho who barely examined me and declined surgery and instead recommended a treatment plan of NSAIDS, steroid injections, and physical therapy?"  Tomar said: "The ortho who recommended surgery was probably just money hungry."

When Plaintiff proceeded to ask another question, Tomar said: "I'm not going to waste time going back and forth with you; I'm not recommending you for a second opinion until you've done the physical therapy and steroid injections; after that I'll re-evaluate you in 6 months." NOTE: PLAINTIFF AGREED TO RECEIVE STEROID INJECTIONS.

15.) January 2020, Plaintiff filed an administrative remedy, disagreeing with Tomar's course of action for treatment of Plaintiff's shoulder injury.

16.) January 2020, Plaintiff was called to Warden's office to speak with A.W. Rosalez.  Rosalez questioned Plaintiff regarding the multiple administrative remedies that had been filed regarding the matter, at FCI Herlong, as well as FCI Forrest City.  Rosalez attempted to coerce Plaintiff into "dropping the complaints", giving his word that he would get the matter resolved.  Plaintiff declined his coercion efforts.

17.) January 15, 2020, After Plaintiff's complaint was brought to the attention of Dr. Tomar, Tomar made a late entry in Plaintiff's medical record, where several false statements were entered regarding the evaluation that took place on December 20, 2019.

-Tomar falsely stated that Plaintiff "volunteered that he proceeded with rather forceful shoulder muscle building exercises."

-Tomar falsely stated that Plaintiff "received a steroid injection which did not reduce pain."

-Tomar falsely stated that Plaintiff "resumed weightlifting exercises that he thought would be beneficial."

TRULINCS  16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

------------------------------------------------------------------------------------------

FROM: 16787040
TO: Donaldson, Richard
SUBJECT: Part 1:
DATE: 10/19/2021 07:43:12 AM

PAGE 3

18.) January 25, 2020, Plaintiff emailed Hickerson again, informing her that his shoulder was in a "great deal of pain; also interfering with his ability to sleep."  Plaintiff requested to "see someone who knows the proper procedure for how to refer a patient for a second opinion."

19.) February 7, 2020, Plaintiff received a response stating: " I have placed a follow-up in the computer for you to see another M.D."

20.) May 5, 2020, Plaintiff had still not received any form of treatment, nor steroid injection for shoulder injury, and had not seen a doctor as requested.

21.) May 29, 2020, After specifically requesting to see a different doctor due to too many disagreements with Tomar, as well as the false statements that Tomar had entered into Plaintiff's medical file; Plaintiff was scheduled for an to appointment with Tomar.

During this appointment, Plaintiff questioned Tomar regarding the false statements entered into his file on January 15, 2020. Tomar became very irate, unprofessional, and accused Plaintiff of "trying to use his words against him in order to build a foundation for a lawsuit against him and the BOP."

22.) Plaintiff again reminded Tomar that "the ibuprofen that he continued to prescribe caused stomach pain/discomfort." Plaintiff again left the appointment with a renewed prescription for IBUPROFEN.

23.) June 5, 2020, Plaintiff received an administrative remedy response from Warden Hendrix stating: "You did not adhere to plan of treatment which doctor recommended."

24.) June 20, 2020, Plaintiff continued administrative remedy process due to lack of treatment to his injury and Tomar's continued negligence in prescribing ibuprofen.

25.) September 10, 2020, Plaintiff emailed Tomar in regards to the status of being scheduled for surgery consultation.

26.) September 15, 2020, Tomar's response stated: "I forgot to ask if you wanted the steroid injection." Plaintiff had already informed Tomar 10 months prior during a face to face appointment, that he indeed wanted to proceed with receiving the steroid injection.  Defendant Tomar failed to schedule the injections.

Plaintiff continued administrative remedy process... Administrative appeals were denied and exhausted on February 10, 2021.

27.) Plaintiff continued to email Tomar regarding receiving treatment of his injury.  Tomar stated: "Treatment would be on hold two to three months due to Ortho clinics being closed for non-emergent cases as a result of pandemic."

28.) April 2021, During follow-up visit with Tomar, Plaintiff was directly informed that "steroid injections could not be performed on-site and a request would have to be submitted for Plaintiff to be taken to an outside clinic to receive an injection."

29.) Plaintiff questioned Tomar regarding surgery consultation being held-up and/or prolonged by steroid injections that he could not even receive.  Tomar again accused Plaintiff of "trying to gather information to pursue a lawsuit." Plaintiff reminded Tomar that he did not request appointment; it was scheduled without his request or knowledge.

30.) October 25, 2021, As of the present date... Plaintiff has not received ANY FORM OF TREATMENT, INCLUDING STEROID INJECTIONS; NOR HAS PLAINTIFF BEEN SCHEDULED FOR A SECOND OPINION FOR CONSULTATION.

31.) PLAINTIFF ASSERTS THAT HE HAS EXHAUSTED ALL ADMINISTRATIVE REMEDY PROCEDURES WITHIN THE BUREAU OF PRISONS, IN AN ATTEMPT TO REMEDY THIS SITUATION, AS REQUIRED BY 28 U.S.C. 2675.

Bivens Action-
Count 1: Deliberate Indifference

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

-------------------------------------------------------------------------------

PAGE 4

32.) Here Plaintiff is alleging that defendant Maharaj Alejandro Tomar, acted with deliberate indifference to his serious medical needs by failing to administer or follow procedures whereby Plaintiff could receive adequate treatment to his serious injury in a timely manner.

33.) As a Physician, and Plaintiff's Primary Care Provider, Tomar had a professional duty to utilize his skills, prudence, and diligence as other members of his profession would commonly possess and exercise in the diagnosing and administering of adequate treatment of Plaintiff's injury.

34.) July 22, 2019, Plaintiff arrived at FCI Forrest City and immediately informed medical staff member Melissa Loveday of an existing injury to his shoulder for which he was previously scheduled to receive surgery.

35.) September 16, 2019, Plaintiff sent an email to medical, following up on the status of his request for an evaluation of his shoulder injury in order to proceed with surgery.

36.) October 11, 2019, Plaintiff went to a scheduled appointment with DNP M. Hickerson, regarding his shoulder injury and the previously scheduled surgery.  Hickerson informed Plaintiff that he would be scheduled to see a local orthopedic surgeon for an evaluation because the previous consultation could not be used to proceed with the surgery.

37.) November 13, 2019, Plaintiff was taken to OrthoNow for a consultation with Dr. Bret Sokolove. Sokolove stated that he was not going to recommend surgery; he was instead recommending exercises, physical therapy, NSAIDS, and steroid injections, and stated that "the location of pain was not consistent with a rotator tear."

38.) November 17, 2019, Plaintiff sent an email to DNP Hickerson, formally requesting a "second opinion" from a different provider, after Sokolove denied surgery.

39.) December 20, 2019, Plaintiff reported to a scheduled appointment with DNP Hickerson. Hickerson informed Plaintiff that "she was unfamiliar with the process and did not know how to submit a request for a second opinion." Hickerson then took Plaintiff and introduced him to Dr. Tomar.

40.) Tomar immediately informed Plaintiff: "This is not something I normally deal with." He then quickly reviewed the notes from both ortho consultations and then proceeded to examine Plaintiff himself.  Without a thorough or adequate examination, Tomar immediately agreed with Dr. Sokolove who stated that: "rotator tear does not need surgery."  Plaintiff asked Tomar: "How can you so easily agree with Dr. Sokolove and make a determination denying surgery, if I already received an opinion from a surgeon recommending surgery to repair my torn rotator cuff?" Tomar said: "If I were to submit a request for a second opinion, it's likely you would get the same response as you did from Sokolove and the surgery would be denied." Tomar then said: "Let me level with you on something... When dealing with the BOP, the ortho's they'll send you to will do everything possible to avoid giving you an expensive surgery." Plaintiff then reminded Tomar that the previous ortho who recommended surgery, was in fact a contracted provider for the BOP.  Plaintiff then asked Tomar: "What's the difference between the ortho who thoroughly examined me and recommended surgery vs. the one who barely examined me, denied the surgery and instead recommended a treatment plan of exercises, NSAIDS, physical therapy, and steroid injections?"  Tomar said: "The ortho who recommended surgery was probably just money hungry."

41.) When Plaintiff proceeded to ask Tomar another question, Tomar said: "Look, I'm not going to waste time going back and forth with you; I'm not recommending you for a second opinion until you've done the physical therapy and steroid injections; after that, I'll re-evaluate you in 6 months."

42.) Plaintiff informed Tomar that he had just told him that the "FBOP does not provide nor send inmates out for physical therapy."  Tomar then printed a physical therapy pamphlet from the internet, gave it to Plaintiff and said "you'll have to figure out the physical therapy on your own."

NOTE: PLAINTIFF AGREED TO RECEIVE STEROID INJECTIONS IN ORDER TO PROCEED WITH PROCESS OF BEING REFERRED FOR A SECOND OPINION.

43.) January 2020, Plaintiff filed an administrative remedy, disagreeing with Tomar's course of action for treatment of his shoulder injury.

44.) January 15, 2020, After Plaintiff's administrative remedy was brought to Tomar's attention, Tomar made a late entry into Plaintiff's medical record, where several false statements were entered regarding the evaluation that took place on December

TRULINCS  16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------------------

20, 2019.                                    PAGE 5

-Tomar falsely stated that Plaintiff "volunteered that he proceeded with rather forceful shoulder muscle building exercises."

NOTE: PLAINTIFF ASSERTS THAT HE DID NOT INFORM DR. TOMAR OF ANYTHING IN RELATION TO PROCEEDING WITH "RATHER FORCEFUL EXERCISES" OR ANY KIND OF EXERCISES. ON JANUARY 15, 2020 WHEN THE LATE ENTRIES WERE MADE IN PLAINTIFF'S MEDICAL FILE, PLAINTIFF WAS NOT EVEN PRESENT, THEREFORE COULD NOT HAVE AND DID NOT TELL TOMAR ANYTHING.

-Tomar falsely stated that "Plaintiff "received a steroid injection which did not reduce pain."

NOTE: PLAINTIFF'S MEDICAL FILE WILL CLEARLY SHOW THAT NO STEROID INJECTION HAD EVER BEEN ADMINISTERED.

-Tomar falsely stated that Plaintiff "resumed weightlifting exercises that he thought would be beneficial."

NOTE: THIS IS CLEARLY FALSE CONSIDERING THE FACT THAT THERE ARE NO WEIGHTS HERE AT FCI FORREST CITY, NOR HAS PLAINTIFF HAD ACCESS TO WEIGHTS THROUGHOUT HIS ENTIRE TERM OF INCARCERATION.

45.) Tomar breached his duty as a medical professional by failing to take the necessary steps to submit Plaintiff for a second opinion so that he could receive consultation for surgery; if that was in fact the required treatment plan. Tomar denied Plaintiff's right to receive a second opinion from a qualified orthopedic surgeon who specialized in diagnosing and treating injuries such as the one Plaintiff was suffering from.  Tomar's actions were deliberately indifferent to Plaintiff's medical needs.

46.) As a result of Tomar's actions, Plaintiff has been forced to endure pain, suffering, mental anguish, and emotional distress for 25 months as a direct result of not receiving adequate treatment to his shoulder injury, and while Tomar has been his Primary Care Provider.

47.) Tomar acted with a sufficiently culpable state of mind as he was fully aware of Plaintiff's injury, and the substantial risk to Plaintiff's health from leaving that injury untreated.

48.) Here Plaintiff is alleging that defendant Dr. Sheila Woodard, acted with deliberate indifference to his serious medical needs by failing to promulgate, organize, and/or facilitate procedures whereby medical injuries that are serious in nature, and require immediate and/or timely action, are adequately handled in accordance with the standard of care and conduct set forth by Arkansas law.

49.) As Clinical Director for the medical department at FCI Forrest City-Medium, Dr. Woodard was directly responsible for oversight of department procedures associated with the scheduling of appointments, reviewing and signing off on treatment /care plans for patients. Dr. Woodard was responsible for ensuring proper administering of medical care in order to prevent Plaintiff from being subjected to unreasonable risk to his health & safety.

50.) As Clinical Director for the medical department, Dr. Woodard had a professional obligation to ensure that the department operated in accordance with policies and procedures set forth by the laws of the United States, and that Plaintiff received treatment in accordance with his constitutional rights according to the U.S. Federal Constitution.

51.) By virtue of the position as Clinical Director, Dr. Woodard is also responsible for the actions of all personnel within the department she oversees.

52.) Plaintiff arrived at Forrest City-Medium on July 22, 2019. Plaintiff immediately informed medical staff of the serious injury to his shoulder for which he was awaiting surgery prior to being transferred.

53.) November 2019, Plaintiff was denied surgery through consultation. Plaintiff immediately requested a second opinion, which was then denied by Dr. Tomar in December of 2019.

54.) Plaintiff was offered NSAIDS, physical therapy (which he was instructed to figure out on his own from pamphlet provided), and steroid injections which he was supposedly scheduled for but never received.

55.) Dr. Woodard was directly aware of Plaintiff's injury; as it was her responsibility which is confirmed by the fact that she is the one who signs off on all patient care & treatment plans.

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

----------------------------------------------------------------------------------

**PAGE 6**

56.) Dr. Woodard was also directly responsible for administering of the steroid injections which Plaintiff never received.

57.) Dr. Woodard was directly aware of the extensive time period for which Plaintiff was awaiting treatment of his shoulder injury, as it is well documented in Plaintiff's medical file. This means that Dr. Woodard would was also aware of the substantial risk of harm that Plaintiff was being subjected to by leaving injury untreated, and the subsequent pain and suffering inflicted upon the patient.

58.) Plaintiff has now been enduring pain and suffering for 25 months under the care of the FCI Forrest City Medical Department.

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

-------------------------------------------------------------------------------------

FROM: 16787040
TO: Donaldson, Richard
SUBJECT: Part 2:
DATE: 10/19/2021 07:44:47 AM

PAGE 7

59.) Dr. Woodard chose to disregard the obvious risks to Plaintiff's health by allowing a treatment plan that would allow his shoulder injury to to be left untreated for such an extensive period of time.

60.) Dr. Woodard acted with deliberate indifference to Plaintiff's medical needs by allowing him to be deprived of the "minimal civilized measure of a basic life necessity" in the form of "necessary and adequate medical care"; thereby, endangering Plaintiff's health and well-being in violation of Plaintiff's constitutional rights.

61.) Dr. Woodard acted with a sufficiently culpable state of mind as she was aware of the imminent risk associated with the failure to treat Plaintiff's injury, and failed to take necessary steps to abate or resolve this matter.

62.) Here Plaintiff is alleging that Defendant DeWayne Hendrix acted with deliberate indifference to his serious medical needs by failing to take the necessary steps to ensure that Plaintiff received adequate medical treatment in a timely manner.

63.) As Warden and head of administration at FCI Forrest City (which included the medical department), Hendrix had an obligation to ensure that all departments within his facility were fully functional in order to ensure that Plaintiff received the treatment and care he needed in accordance with the standard of care and conduct as set forth by Arkansas law. The Warden was also obligated and/or responsible for ensuring that Plaintiff was not subjected to unreasonable risks, unnecessary pain & suffering, or risk of further injury as a result of his serious injury being left untreated.

64.) Hendrix was directly informed of Plaintiff's injury through Plaintiff's filing of numerous administrative remedies based on lack of treatment to his shoulder injury. Proof of Hendrix's knowledge and awareness of Plaintiff's injury was apparent as early as January 2020, when an assistant warden interviewed Plaintiff in an effort to intervene in the administrative remedies filed by Plaintiff.

65.) Proof of Hendrix's direct knowledge of the lack of treatment that to Plaintiff's shoulder injury was also apparent on June 20, 2020, when Hendrix responded to Plaintiff's administrative remedy stating: "You did not adhere to plan of treatment which doctor recommended." The administrative remedy explained in full detail everything that he was experiencing due to lack of treatment to his injury. Rather than intervening and fixing the problem in order to put an end to Plaintiff's pain & suffering, Hendrix blamed the lack of treatment on Plaintiff, stating he "did not adhere to treatment plan." Beyond that, Hendrix took no further action to ensure that Plaintiff received adequate treatment to his injury.

66.) Hendrix was aware that Plaintiff was awaiting treatment to his serious injury, which he had been suffering from for an extensive period of time. As Warden of the facility, Hendrix was responsible for the treatment or lack thereof which Plaintiff was receiving. By virtue of his position, he was responsible for the substantial risk of serious harm and further injury that Plaintiff was being subjected to by not receiving treatment in a timely manner.

67.) Hendrix chose to disregard the imminent risks that Plaintiff was being subjected to; therefore, he was deliberately indifferent to Plaintiff's medical needs by allowing him to be denied/deprived the "minimal civilized measure of a basic life necessity" in the form of adequate medical care/treatment; thereby endangering Plaintiff's health, in violation of his constitutional rights.

68.) Hendrix acted with a sufficiently culpable state of mind, as he was responsible for being well informed of what was taking place within his facility (which included the medical department), and failed to take the necessary steps to abate or resolve the problem.

69.) As a direct result of Hendrix's actions, Plaintiff has been forced to endure pain, suffering, mental anguish, and emotional distress for 25 months due to lack of treatment to his serious shoulder injury. Hendrix's actions (or lack thereof) were unacceptable in accordance with the standard of care and conduct set forth by Arkansas law.

Bivens Action-
Count 2: Cruel & Unusual Punishment

70.) Here Plaintiff is alleging that Defendant Dr. Sheila Woodard inflicted, participated in, and/or allowed him to be subjected to

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------
PAGE 8

cruel & unusual punishment, in violation of his Eighth Amendment Constitutional rights.

TO ESTABLISH THE BASIS OF A CRUEL & UNUSUAL PUNISHMENT CLAIM AGAINST DEFENDANT WOODARD, HERE PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 48-61 AS IF FULLY SET FORTH HEREIN.

71.) As Clinical Director for the medical department at Forrest City Medium, Dr. Woodard had a professional obligation to ensure that the medical department operates in accordance with policies and procedures set forth pursuant to the laws of the state of Arkansas and the United States of America. By virtue of this position, defendant Woodard was also responsible for the acts and omissions of all personnel within the Health Services Department.

72.) Woodard was responsible for ensuring proper administering of medical care in order to prevent Plaintiff from being subjected to unreasonable risks to his health and well-being.

73.) Plaintiff has now been incarcerated at Forrest City for 27 months without receiving any form of treatment of his shoulder injury.

74.) Plaintiff was denied surgery in November of 2019.  Plaintiff immediately requested a second opinion which was then denied by Dr. Tomar in December 2019.

75.) Plaintiff was offered NSAIDS, a physical therapy pamphlet, and steroid injections which Dr. Woodard was personally responsible for administering, however, patient never received.

76.) Plaintiff's treatment was continually denied throughout 2020 & 2021.

77.) Defendant Woodard was directly aware of Plaintiff's injury; as it is her responsibility to be aware of the status of all patient's treatment, and is responsible for signing off on the care plans of patients.

78.) Woodard was directly aware of the extensive time period for which Plaintiff had been awaiting treatment to his shoulder injury, the substantial risk of serious harm of leaving his injury untreated, and the pain & suffering Plaintiff was enduring as a result of his injury being left untreated. Plaintiff has now endured pain & suffering for 27 months under the care of the Forrest City medical department.

79.) Defendant Woodard chose to disregard the obvious risk to Plaintiff's health by allowing his shoulder injury to be left untreated for an extensive period of time.

80.) Woodard's actions and/or lack thereof, resulted in Plaintiff being subjected to cruel & unusual punishment by allowing him to be denied/deprived of the "minimal civilized measure of a basic life necessity" in the form of adequate medical care; thereby endangering Plaintiff's health in violation of his 8th Amendment Constitutional rights.

81.) Defendant Woodard acted with a sufficiently culpable state of mind as she was aware of the imminent risk of danger to Plaintiff's health, safety, and well-being, and failed to take the necessary steps to abate or resolve this matter.

82.) Here Plaintiff is alleging that Defendant Dr. Maharaj Alejandro Tomar subjected him to cruel & unusual punishment by denying and/or depriving Plaintiff of one of the "minimal civilized measures of a basic life necessity" in the form of adequate medical treatment.

TO ESTABLISH A CRUEL & UNUSUAL PUNISHMENT CLAIM AGAINST DEFENDANT TOMAR, HERE PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 32-47 AS IF FULLY STATED HEREIN.

83.) Defendant Tomar is a licensed physician with the Health Services Department at FCI Forrest City Medium, and was the Primary Care Provider for the Plaintiff. Tomar had a professional obligation to ensure that Plaintiff receive adequate medical care in accordance with the standard of care and conduct set forth by the laws of the state of Arkansas and the United States of America.

84.) Plaintiff asserts that Tomar subjected him to cruel and unusual punishment by failing in his duty to provide adequate medical care for treatment of Plaintiff's shoulder injury in a timely manner; therefore, forcing Plaintiff to endure pain & suffering for an extensive period of time.

TRULINCS  16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

-----------------------------------------------------------------------------------------------------
PAGE 9

85.) Plaintiff initially saw Dr. Tomar in December 2019, after Plaintiff requested a second opinion of a surgery consultation after being denied by Dr. Sokolove. Tomar informed Plaintiff that he would not submit a request for a second opinion until after Plaintiff had gone through his recommended care plan consisting of physical therapy (which Plaintiff was told he would have to figure out on his own using a pamphlet), NSAIDS, and steroid injections.

NOTE: PLAINTIFF AGREE TO RECEIVE THE STEROID INJECTIONS; HOWEVER, TOMAR FAILED TO SCHEDULE THEM.

86.) Plaintiff continued to endure pain and suffering for an extensive period of time without receiving any form of treatment to his injury throughout 2020 & 2021.

87.) Plaintiff continued to email Tomar requesting treatment of his injury. Tomar informed Plaintiff that his treatment would be on hold for at least 2-3 months due to the ortho clinics being closed for non-emergent cases.

88.) Defendant Tomar was aware of Plaintiff's injury; therefore, aware of the unnecessary and wanton pain and suffering that Plaintiff was being subjected to.  Tomar took no action towards abating or resolving the matter or getting Plaintiff the treatment that he needed; therefore he was directly responsible for Plaintiff's suffering, thereby subjecting him to cruel and unusual punishment in violation of his 8th Amendment Constitutional Rights.

89.) Tomar acted with a sufficiently culpable state of mind as he was aware of the imminent risk to Plaintiff's health, safety,  and well-being and the pain and suffering that Plaintiff was enduring as a result of leaving his injury untreated.

90.) Here Plaintiff is alleging that Defendant DeWayne Hendrix, inflicted, participated in, and/or allowed Plaintiff to be subjected to cruel and unusual punishment with the denial of the "minimal civilized measure of a basic life necessity" in the form of adequate medical treatment of his shoulder injury.

IN ORDER TO ESTABLISH THE BASIS OF A CRUEL AND UNUSUAL PUNISHMENT CLAIM AGAINST DEFENDANT HENDRIX, HERE PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 62-69 AS IF FULLY STATED HEREIN.

91.) As Warden and head of administration at FCI Forrest City (which included the medical department), Hendrix had a professional obligation to ensure that all departments within his facility, were fully functional in order to ensure that Plaintiff could receive the treatment and care he needed in accordance with the standard of care and conduct set forth by the state of Arkansas and the United States of America.  Defendant Hendrix was also personally responsible for ensuring that Plaintiff was not subjected to unreasonable risks, unnecessary pain & suffering, or risk of harm or further injury.  Hendrix failed in his duty by allowing Plaintiff's injury to go untreated for an unacceptable amount of time.

92.) Hendrix was directly informed of Plaintiff's injury through Plaintiff's filing of numerous administrative remedies based on the lack of treatment he was receiving to his shoulder injury.  Proof of this is in the response receive on June 20, 2020 when Hendrix blamed Plaintiff for lack of treatment by stating that Plaintiff "failed to adhere to recommended treatment plan." Records show that all treatment (or lack thereof) was beyond Plaintiff's control.

93.) Hendrix was aware that Plaintiff had been awaiting treatment for an extensive period time yet took no action.  By virtue of his position, he was also responsible for the actions of defendant's Tomar and Woodard who continually prolonged, denied, and/or deprived Plaintiff the medical treatment that he needed, subjecting him to substantial risk to his health and further harm as a result of his injury being left untreated.

94.) Because Hendrix took no action to make sure that Plaintiff received the treatment that he needed, Hendrix is personally responsible for the cruel and unusual punishment that Plaintiff was being subjected to.

95.) Hendrix chose to disregard the imminent risks to Plaintiff's health, the pain and suffering, mental anguish, and emotional distress that Plaintiff was continually being subject to, and is responsible for the denial of Plaintiff's medical treatment through the actions of defendant Woodard and Tomar who willingly violated Plaintiff's constitutional right to receive adequate medical treatment.

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

FROM: 16787040
TO: Donaldson, Richard
SUBJECT: Part 3:
DATE: 10/20/2021 07:48:06 AM

PAGE 10

96.) Defendant Hendrix acted with a sufficiently culpable state of mind and was personally involved in the delay, denial, deprivation of adequate medical care for Plaintiff's injury.

97.) As a direct result of the actions of defendant Hendrix, Plaintiff has been subjected to cruel and unusual punishment by being denied medical care for an amount of time that is medically unacceptable in accordance with the standard of care and conduct set forth by Arkansas law and the United States of America. Furthermore, Plaintiff has now endured pain & suffering for 25 months as he has still not received any form of treatment for his shoulder injury, thereby, subjecting him to ongoing suffering.

98.) The acts and omissions of Defendants Tomar, Woodard, and Hendrix caused Plaintiff unnecessary and wanton pain; in that, he was forced to continue performing his daily activities while suffering from his serious shoulder injury.

99.) As professionals responsible for medical care and treatment, the staff at the Forrest City Medium facility's Health Services Clinic owed a duty to the Plaintiff to possess and apply with reasonable care, the degree of skill and knowledge ordinarily possessed and used by others in the same or related profession.

100.) The Health Services Department at Forrest City, as an institution responsible for providing medical treatment, owes a duty to use ordinary care to furnish the Plaintiff with the type of care and attention reasonably required by his injury/condition.

101.) The clinical staff and Health Services Department itself, breached their duty to Plaintiff by delaying, denying, and/or depriving Plaintiff the medical care that he needed in order to have his injury treated. Additionally, Warden Hendrix breached his duty to ensure that the medical staff/department fulfilled their duties.

102.) The breach of these duties and failures on the part of the health services staff, and the Warden, was the proximate cause of the undue and unnecessary pain and suffering endured by the Plaintiff as a result of the unreasonable delay in medical treatment.

FTCA Action-
Count 3: Negligence
Count 4: Cruel and Unusual Punishment
Count 5: Deliberate Indifference

103.) Here Plaintiff is alleging that Defendant United States of America, by and through the actions of it's employees, was negligent in their duty to provide proper procedures for ensuring that medical injuries that are serious in nature, which required immediate and/or timely action, were handled adequately in accordance with the proper standard of care as set forth by Arkansas law and the rights afforded to Plaintiff by the 8th Amendment of the United States Constitution.

As a result of the negligence of Defendant United States of America, Plaintiff has been subjected to cruel and unusual as defendants Woodard, Tomar, and Hendrix acted with deliberate indifference to the medical needs of Plaintiff.

IN ORDER TO ESTABLISH THE BASIS OF THIS CLAIM, PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 32-102, IN SUMMARY, AS IF FULLY STATED HEREIN.

104.) July 22, 2019, Plaintiff arrived at FCI Forrest City Medium. During initial intake evaluation, Plaintiff immediately informed medical staff of his existing injury (a torn rotator cuff) which he was awaiting surgery prior to being transferred from the previous facility.

105.) October 11, 2019, Plaintiff went to a scheduled appointment with DNP Hickerson regarding his injury and the aforementioned surgery. Hickerson informed Plaintiff that he would be scheduled to see a local orthopedic surgeon for an evaluation.

106.) November 13, 2019, Plaintiff was taken to OrthoNow where he was denied surgery.

TRULINCS  16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------
PAGE 11
107.) November 17, 2019, Plaintiff formally requested a second opinion from a different provider.

108.) December 20, 2019, Plaintiff reported to a scheduled appointment with DNP Hickerson; Hickerson informed Plaintiff that she was "unfamiliar with the process and did not know how to submit a request for a second opinion." Hickerson then introduced Plaintiff to Dr. Tomar.

109.) Without thorough examination, Dr. Tomar immediately agreed with Dr. Sokolove's denial of surgery. Plaintiff began to question "how Tomar could so easily deny surgery, if Plaintiff had already received a recommendation for surgery?" Tomar said: "If I were to submit a request for a second opinion, it's likely you would get the same response denying the surgery." Tomar then said: "The ortho's that the BOP will send you to will do everything possible to avoid giving an expensive surgery." Tomar then said: "The ortho who previously recommended surgery was probably just money hungry." When Plaintiff proceeded to ask another question, Tomar said: "Look, I'm not going to go back and forth with you about this; I'm not recommending you for a second opinion until you've done physical therapy, NSAIDS, and steroid injections and return in 6 months."

NOTE: PLAINTIFF AGREED TO RECEIVE STEROID INJECTIONS.

110.) January 2020, Plaintiff filed an administrative remedy, disagreeing with Dr. Tomar's course of action for treatment of Plaintiff's shoulder injury.

111.) January 15, 2020, After Plaintiff's complaint was brought to the attention of Dr. Tomar, Tomar made late entries into Plaintiff's medical file where he entered a series of false statements.

112.) January 25, 2020, Plaintiff emailed Hickerson, again informing her that his shoulder was "in a great deal of pain and interfereing with his ability to sleep."

113.) May 5, 2020, Plaintiff had still not received any form of treatment, nor steroid injections, nor had been scheduled for a second consultation.

114.) May 29, 2020, Plaintiff questioned Dr. Tomar regarding the false statements entered into his medical file. Tomar became very irate, unprofessional, and accused Plaintiff of "trying to use his words against him in order to build a lawsuit against him and the BOP."

114.5) During this appointment, Plaintiff again reminded Tomar that "the ibuprofen that he continued to prescribe was causing stomach pain." Plaintiff again left the appointment with a renewed prescription for IBUPROFEN.

115.) June 5, 2020, Plaintiff received a response from Warden Hendrix stating: "You did not adhere to plan of treatment which doctor recommended."

116.) Plaintiff continued administrative remedy process due to lack of treatment to his injury and Dr. Tomar's deliberate, continued negligence in prescribing ibuprofen.

117.) September 15, 2020, Plaintiff continued administrative remedy process; appeals were denied and exhausted on February 10, 2021.

118.) April 2021, During follow-up visit with Dr. Tomar, Plaintiff was directly informed that "steroid injections could not be performed onsite." "A request would have to be submitted to take Plaintiff to an outside clinic to receive an injection." Tomar again accused Plaintiff of trying to gather information to pursue a lawsuit and threatened to have Plaintiff locked up for insolence for accusing Tomar of lying. Plaintiff informed Tomar that the false statements were well documented in his medical file and easy to disprove.

119.) As of today's date, October 25, 2021, Plaintiff has still not received any form of treatment to his shoulder injury.

120.) The acts and omissions of defendant's Woodard, Tomar, and Hendrix caused Plaintiff unnecessary and wanton pain; in that, he was forced to continue performing his daily activities while suffering from his serious shoulder injury.

121.) As persons responsible for providing medical treatment, the staff at Forrest City Mediums' health services clinic, owed a duty to the Plaintiff to possess and apply with reasonable care, the degree of skill and knowledge ordinarily possessed and used by others in the same or similar profession.

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

------------------------------------------------------------------------------------

PAGE 12

122.) The Health Services Department at Forrest City Medium, as an institution responsible for providing medical treatment and care, owes a duty to use ordinary care to furnish the Plaintiff with the type of care and attention reasonably required by his physical condition.

123.) The responsible staff members (Defendant's Woodard, Tomar, and Hendrix) breached their professional duties to Plaintiff by failing to ensure that he received the necessary treatment to his injury in a timely manner, and in accordance with the standard of care set forth by Arkansas law and the United States of America.

124.) The breach of duty and failures on the part of the Health Services Department, as well as the Warden, was the proximate causation of the unnecessary and wanton discomfort, pain and suffering, and mental anguish endured by Plaintiff for an unacceptable amount of time.

125.) As Clinical Director, Defendant Woodard was responsible for the actions of Health Services personnel (Dr. Tomar)...

126.) As Warden, Defendant Hendrix was responsible for the actions of the Health Services Department and it's personnel (Dr. Woodard & Dr. Tomar)...

127.) United States of America, as overseer to the Federal Bureau of Prisons, was responsible for the actions of it's personnel (Warden Hendrix, Dr. Woodard, & Dr. Tomar), and therefore, should be held responsible for the callous indifference to Plaintiff's medical needs.

128.) The responsible staff members of the Forrest City Health Services Department, as well as prison administration were/are employees of the Federal Bureau of Prisons, and were acting in their official capacities; therefore, the United States of America is properly named as the defendant of the claims of Count's 3, 4, & 5.

129.) PLAINTIFF SEEKS COMPENSATORY AND PUNITIVE DAMAGES IN AN AMOUNT TO BE PROVEN AND DETERMINED AT TRIAL.

130.) PLAINTIFF RESERVES THE RIGHT TO AMEND THIS COMPLAINT AND FURTHER PLEADINGS.

WHEREFORE, PLAINTIFF SEEKS AN AWARD OF COMPENSATORY AND PUNITIVE DAMAGES, AND FOR ALL OTHER RELIEF TO WHICH HE IS ENTITLED BY LAW. FURTHERMORE, PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

DATED THIS 25TH DAY OF OCTOBER, 2021.

RICHARD JULIUS DONALDSON