UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF ARKANSAS
-DELTA DIVISION-

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 0 5 2022

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

**RICHARD JULIUS DONALDSON**
PLAINTIFF,


V.



**MERRICK GARLAND, ET, AL.**
DEFENDANTS



CASE NO:
2:21-CV-00034-LPR-PSH




-----------------------------
**THIRD AMENDED COMPLAINT**

PLAINTIFF RICHARD JULIUS DONALDSON, REPRESENTING HIMSELF PRO SE, ALLEGING AS FOLLOWS:

1) THIS ACTION IS BEING BROUGHT BEFORE THIS COURT FOR THE VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION, WHILE IN THE CUSTODY OF THE FEDERAL BUREAU OF PRISONS AND UNDER THE DIRECT CARE OF THE FEDERAL CORRECTIONAL INSTITUTION FORREST CITY -MEDIUM. PLAINTIFF SEEKS COMPENSATORY AND PUNITIVE DAMAGES IN AN AMOUNT TO BE PROVEN & DETERMINED AT TRIAL.

**PARTIES:**

2) PLAINTIFF RICHARD JULIUS DONALDSON (HEREINAFTER "PLAINTIFF") IS AND AT ALL TIMES RELEVANT TO THIS LITIGATION, IS AN INCARCERATED INMATE CURRENTLY HOUSED AT THE FEDERAL CORRECTIONAL INSTITUTION FORREST CITY MEDIUM, LOCATED IN FORREST CITY, ARKANSAS, WHERE PLAINTIFF HAS BEEN SINCE JULY 22, 2019.

3) DEFENDANT MERRICK GARLAND, IS AND AT ALL TIMES RELEVANT TO THIS LITIGATION, IS THE ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA, AND HEAD OF THE DEPARTMENT OF JUSTICE TO THE UNITED STATES OF AMERICA, WHICH MAINTAINS OVERSIGHT OF THE FEDERAL BUREAU OF PRISONS.

4) DEFENDANT DEWAYNE HENDRIX,IS, AND AT ALL TIMES RELEVANT TO THIS LITIGATION, WAS THE WARDEN OF THE FEDERAL CORRECTIONAL INSTITUTION FORREST CITY, LOCATED IN FORREST CITY, ARKANSAS; WHICH IS OPERATED BY THE FEDERAL BUREAU OF PRISONS, UNDER THE DEPARTMENT OF JUSTICE TO THE UNITED STATES OF AMERICA.

DEFENDANT IS BEING SUED IN HIS INDIVIDUAL CAPACITY, FOR ACTIONS PERFORMED IN HIS OFFICIAL CAPACITY; THAT IS, IN HIS INABILITY TO ENSURE THAT THE PROPER PROCEDURES WERE IN PLACE, ALLOWING PLAINTIFF TO RECEIVE PROPER AND EFFECTIVE MEDICAL TREATMENT IN A TIMELY MANNER, AND IN ACCORDANCE WITH THE STANDARD OF CARE AS PROVIDED PURSUANT TO ARKANSAS LAW, AND IN ACCORDANCE WITH PLAINTIFF'S CONSTITUTIONAL RIGHTS PURSUANT TO THE UNITED STATES CONSTITUTION. DEFENDANT HENDRIX WAS THE WARDEN OF FORREST CITY DURING THE TIME PERIOD OF PLAINTIFF'S COMPLAINT FROM DECEMBER 2019 THROUGH MAY OF 2021 (EST).

5) DEFENDANT MAHARAJ ALEJANDRO TOMAR, MD., IS, AND AT ALL TIMES RELEVANT TO THIS LITIGATION, IS A LICENSED PHYSICIAN WITH THE HEALTH SERVICES DEPT., AT FORREST CITY-MEDIUM; LOCATED IN FORREST CITY, ARKANSAS; WHICH IS OPERATED BY THE FEDERAL BUREAU OF PRISONS, UNDER THE DEPARTMENT OF JUSTICE TO THE UNITED STATES OF AMERICA.

DEFENDANT IS BEING SUED IN HIS INDIVIDUAL CAPACITY, FOR ACTIONS PERFORMED IN HIS OFFICIAL CAPACITY; IN THAT HE FAILED TO ADMINISTER PROPER AND EFFECTIVE MEDICAL TREATMENT OF PLAINTIFF'S EXISTING INJURY, IN A TIMELY, PROFESSIONAL, AND MEDICALLY ACCEPTABLE MANNER, AND IN ACCORDANCE  WITH THE PROPER STANDARD OF CARE AS PROVIDED PURSUANT TO ARKANSAS LAW, AND IN ACCORDANCE WITH PLAINTIFF'S CONSTITUTIONAL RIGHTS PURSUANT TO THE UNITED STATES CONSTITUTION. DEFENDANT TOMAR WAS PLAINTIFF'S PRIMARY CARE PROVIDER AND RESPONSIBLE FOR PLAINTIFF'S CARE DURING THE TIME PERIOD OF PLAINTIFF'S COMPLAINT FROM DECEMBER 2019 THROUGH THE PRESENT DAY OF SEPTEMBER 30,2022.

**JURISDICTION & VENUE:**

6) THIS ACTION ARISES UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES,

(1)

6) CONTINUED... INCLUDING "BIVENS VS. SIX UNKNOWN NAMED FED NARCOTICS AGE- NTS, 403 U.S. 388 (1971), AND THE FEDERAL TORT CLAIMS ACT (FTCA) 28 U.S.C. § 2671-2680. JURISDICTION IS CONFERRED UPON THIS COURT PURSUANT TO 28 U.S.C. § 1331 AND 1346(b), RESPECTIVELY. VENUE IN THIS COURT IS PROPER UNDER 28 U.S.C. § 1391 AND 1402(b), RESPECTIVELY.

**FACTUAL STATEMENT:**

7) JULY 22, 2019, PLAINTIFF ARRIVED AT FCI FORREST CITY MEDIUM. DURING AN INITIAL INTAKE EVALUATION, PLAINTIFF INFORMED RN MELISSA LOVEDAY, THAT HE HAD AN EXISTING INJURY (A TORN ROTATOR CUFF) FOR WHICH HE WAS AWAITNG SUR- GERY PRIOR TO BEING TRANSFERRED FROM THE PREVIOUS FACILITY.

8) SEPTEMBER 16, 2019, PLAINTIFF SENT AN EMAIL TO MEDICAL, FOLLOWING UP ON THE STATUS OF HIS REQUEST FOR AN·EVALUATION OF HIS SHOULDER INJURY IN ORDER TO PROCEED WITH SURGERY.

9) OCTOBER 11, 2019, PLAINTIFF REPORTED TO A SCHEDULED APPOINTMENT WITH DNP, M. HICKERSON, REGARDING HIS INJURY AND THE PREVIOUSLY SCHEDULED SUR- GERY. HICKERSON INFORMED PLAINTIFF THAT HE WOULD BE SCHEDULED TO SEE A LOCAL ORTHOPEDIC SURGEON FOR AN EVALUATION.

10) NOVEMBER 13, 2019, PLAINTIFF WAS TAKEN TO AN OUTISDE APPOINTMENT AT ORTHONOW FOR A CONSULTATION WITH DR. BRET SOKOLOFF. SOKOLOFF STATED THAT "HE WAS NOT RECOMMENDING SURGERY; HE WAS RECOMMENDING EXERCISES/PHYSICAL THERAPY, NSAIDS, AND STEROID INJECTIONS, AND STATED THAT THE LOCATION OF PAIN WAS NOT CONSISTENT WITH A ROTATOR TEAR.

11) NOVEMBER 17, 2019, PLAINTIFF SENT AN EMAIL TO DNP HICKERSON, FORMALLY REQUESTING A "SECOND OPINION" FROM A DIFFERENT PROVIDER, AFTER SOKOLOFF· DENIED SURGERY.

12) DECEMBER 20, 2019, PLAINTIFF REPORTED TO A SCHEDULED APPOINTMENT WITH DNP HICKERSON; HICKERSON INFORMED PLAINTIFF THAT "SHE WAS UNFAMILIAR WITH THE PROCESS, AND DID NOT KNOW HOW TO SUBMIT A REQUEST FOR A SECOND OPINION." HICKERSON THEN TOOK PLAINTIFF AND INTRODUCED HIM TO DR. TOMAR.

13) DR. TOMAR IMMEDIATELY INFORMED PLAINTIFF: "THIS IS NOT SOMETHING I NOR- MALLY DEAL WITH"; HE THEN [QUICKLY] REVIEWED THE NOTES FROM BOTH ORTHO CONSULTATIONS AND THEN PROCEEDED TO EXAMINE PLAINTIFF HIMSELF. WITHOUT A THOROUGH OR ADEQUATE EXAMINATION, DR. TOMAR IMMEDIATELY AGREED WITH DR. SOKOLOFF WHO STATED: "ROTATOR TEAR DOES NOT NEED SURGERY." PLAINTIFF ASKED TOMAR: "HOW CAN YOU SO EASILY AGREE WITH DR. SOKOLOFF AND MAKE A DETERMIN- ATION DENYING SURGERY, IF I ALREADY RECEIVED AN OPINION FROM A SURGEON WHO RECOMMENDED SURGERY TO REPAIR THE TORN ROTATOR CUFF?" TOMAR SAID: "IF I WERE TO SUBMIT A REQUEST FOR A SECOND OPINION, IT'S HIGHLY LIKELY YOU WOULD GET THE SAME RESPONSE AS YOU DID FROM SOKOLOFF, DENYING THE SURGERY." TOMAR THEN SAID: "LET ME LEVEL WITH YOU ON SOMETHING... WHEN DEALING WITH THE BOP, THE ORTHO'S THEY'LL SEND YOU TO, WILL DO EVERYTHING POSSIBLE TO AVOID GIVING YOU AN EXPENSIVE SURGERY." PLAINTIFF THEN REMINDED TOMAR THAT THE PREVIOUS ORTHO WHO HAD RECOMMENDED SURGERY, WAS IN FACT A CONTRACTED PROVIDER FOR THE BOP. PLAINTIFF THEN ASKED TOMAR: "WHAT IS THE DIFFERENCE BETWEEN THE ORTHO WHO THOROUGHLY EXAMINED ME AND RECOMMENDED SURGERY, VS. THE ORTHO WHO BARELY EXAMINED ME AND DECLINED SURGERY, AND INSTEAD ....

(2)

13) CONTINUED... RECOMMENDED A TREATMENT PLAN OF NSAIDS, STEROID INJECT-
IONS, AND PHYSICAL THERAPY?" TOMAR THEN SAID: "THE ORTHO WHO RECOMMENDED
SURGERY WAS PROBABLY JUST MONEY HUNGRY."

WHEN PLAINTIFF PROCEEDED TO ASK DR. TOMAR ANOTHER QUESTION, TOMAR SAID:
"I'M NOT GOING TO WASTE TIME GOING BACK & FORTH WITH YOU; I'M NOT RECOMM-
ENDING YOU FOR A SECOND OPINION UNTIL YOU'VE DONE PHYSICAL THERAPY AND
STEROID INJECTIONS; AFTER THAT, I'LL RE-EVALUATE YOU IN 6 MONTHS."

14) JANUARY 2020, PLAINTIFF FILED AN ADMINISTRATIVE REMEDY, DISAGREEING
WITH TOMAR'S COURSE OF ACTION FOR TREATMENT OF PLAINTIFF'S SHOULDER INJURY.

15) JANUARY 2020, PLAINTIFF WAS CALLED TO WARDEN'S OFFICE TO SPEAK WITH
A.W. ROSALEZ REGARDING MULTIPLE ADMINISTRATIVE REMEDY'S THAT PLAINTIFF HAD
SUBMITTED TO WARDEN HENDRIX. ROSALEZ QUESTIONED PLAINTIFF REGARDING THE
ADMINISTRATIVE REMEDIES THAT HAD BEEN FILED REGARDING AN INJURY THAT
OCCURRED AT FCI HERLONG AND NOW AT FCI FORREST CITY. ROSALEZ ATTEMPTED TO
COERCE PLAINTIFF INTO "DROPPING THE COMPLAINTS" GIVING HIS WORD THAT HE
WOULD GET THE MATTER RESOLVED. ROSALEZ INFORMED PLAINTIFF THAT HE WOULD
SPEAK WITH DR. TOMAR AND INVESTIGATE THE MATTER. PLAINTIFF DECLINED HIS
COERCION EFFORTS AND DECIDED TO PROCEED WITH HIS ADMINISTRATIVE REMEDY
PROCESS.

16) JANUARY 15, 2020, AFTER PLAINTIFF'S COMPLAINT WAS BROUGHT TO THE ATTE-
NTION OF DR. TOMAR BY A.W. ROSALEZ, TOMAR MADE AN ENTRY INTO PLAINTIFF'S
MEDICAL RECORD, WHERE SEVERAL FALSE STATEMENTS WERE ENTERED REGARDING THE
EVALUATION THAT TOOK PLACE ON DECEMBER 20, 2019.

-TOMAR FALSELY STATED THAT "PLAINTIFF "VOLUNTEERED THAT HE PROCEEDED WITH
RATHER FORCEFUL SHOULDER MUSCLE BUILDING EXERCISES."

-TOMAR FALSELY STATED THAT PLAINTIFF "RECEIVED A STEROID INJECTION WHICH
DID NOT REDUCE PAIN."

-TOMAR FALSELY STATED THAT PLAINTIFF "RESUMED WEIGHTLIFTING EXERCISES THAT
HE THOUGHT WOULD BE BENEFICIAL."

17) JANUARY 25, 2020, PLAINTIFF EMAILED HICKERSON AGAIN, INFORMING HER
THAT HIS SHOULDER WAS IN A "GREAT DEAL OF PAIN; ALSO INTERFERING WITH HIS
ABILITY TO SLEEP." PLAINTIFF REQUESTED TO "SEE SOMEONE WHO KNOWS THE PRO-
PER PROCEDURE FOR HOW TO REFER A PATIENT FOR A SECOND OPINION."

18) FEBRUARY 7, 2020, PLAINTIFF RECEIVED A RESPONSE STATING: "I HAVE PLA-
CED A FOLLOW-UP IN THE COMPUTER FOR YOU TO SEE ANOTHER M.D."

19) MAY 5, 2020, PLAINTIFF HAD STILL NOT RECEIVED ANY FORM OF TREATMENT,
NOR STEROID INJECTION FOR SHOULDER INJURY, AND HAD NOT SEEN A DOCTOR AS
REQUESTED.

20) MAY 29, 2020, AFTER SPECIFICALLY REQUESTING TO SEE A DIFFERENT DOCTOR
DUE TO TOO MANY DISAGREEMENTS WITH TOMAR. AS WELL AS THE FALSE STATEMENTS

(3)

20) CONTINUED... THAT TOMAR HAD ENTERED INTO PLAINTIFF'S MEDICAL FILE; PLAINTIFF WAS AGAIN SCHEDULED FOR AN APPOINTMENT WITH TOMAR.

DURING THIS APPOINTMENT, PLAINTIFF QUESTIONED TOMAR REGARDING THE FALSE STATEMENTS ENTERED INTO HIS FILE ON JANUARY 15, 2020. TOMAR BECAME VERY IRATE, UNPROFESSIONAL , AND ACCUSED PLAINTIFF OF "TRYING TO USE HIS WORDS AGAINST HIM IN ORDER TO BUILD A FOUNDATION FOR A LAWSUIT AGAINST HIM & THE BOP."

21) DURING THIS APPOINTMENT, PLAINTIFF ALSO REMINDED TOMAR THAT "THE IBU-PROFEN THAT HE CONTINUED TO PRESCRIBE CAUSED STOMACH PAIN & DISCOMFORT." PLAINTIFF AGAIN LEFT THE APPOINTMENT WITH A RENEWED PRESCRIPTION FOR [IBUPROFEN].

22) JUNE 5, 2020, PLAINTIFF RECEIVED A RESPONSE FROM AN ADMINISTRATIVE REMEDY FROM WARDEN HENDRIX STATING: "YOU DID NOT ADHERE TO PLAN OF TREAT-MENT WHICH DOCTOR RECOMMENDED."

23) JUNE 20, 2020, PLAINTIFF CONTINUED THE ADMINISTRATIVE REMEDY PROCESS DUE TO LACK OF TREATMENT TO HIS SHOULDER INJURY AND TOMAR'S CONTINUED NEGLIGENCE/DELIBERATE INDIFFERENCE IN PRESCRIBING IBUPROFEN.

24)SEPTEMBER 10, 2020, PLAINTIFF EMAILED TOMAR IN REGARDS TO THE STATUS OF BEING SCHEDULED FOR SURGERY CONSULTATION.

25) SEPTEMBER 15, 2020, 9:27AM, TOMAR STATED IN AN EMAIL TO PLAINTIFF: "I FORGOT TO ASK IF YOU WANTED THE STEROID INJECTION." [SEE ATTACHMENT: "SEPTEMBER 15TH EMAIL"]

26) OCTOBER 2020, PLAINTIFF WAS GOING BACK & FORTH IN AN EMAIL EXCHANGE WITH DR. TOMAR. TOMAR INFORMED PLAINTIFF THAT "TREATMENT WILL BE ON HOLD TWO TO THREE MONTHS DUE TO ORTHO CLINICS BEING CLOSED FOR NON-EMERGENT CASES AS A RESULT OF THE PANDEMIC."

(4)

27) IT WAS 11 MONTHS FROM DECEMBER 20, 2019, TO OCTOBER 2020 BEFORE TOMAR INFORMED PLAINTIFF IN AN EMAIL EXCHANGE THAT "ORTHO CLINICS ARE CLOSED FOR NON-EMERGENT PATIENTS." THROUGHOUT THIS TIME PERIOD, PLAINTIFF WAS STILL WAITING FOR AN INJECTION WHICH HE WAS TOLD WOULD BE ADMINISTERED ON-SITE BY DR. WOODDARD. IN FACT, ON OCTOBER 7, 2020, AT APPROXIMATELY 9:03AM, TOMAR TOLD PLAINTIFF IN AN EMAIL EXCHANGE... "DR. WOODARD HAS AN OPENING ON FRIDAY 10/30; WOULD YOU LIKE ME TO SCHEDULE YOUR INJECTION?" (SEE ATTACHMENT: "EMAIL FROM OCTOBER 7TH")...

28) APRIL 2021, DURING A FOLLOW-UP APPOINTMENT WITH TOMAR, PLAINTIFF WAS DIRECTLY INFORMED THAT "STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE DUE TO RESTRICTIONS FROM THE REGIONAL MEDICAL DIRECTOR; A REQUEST WOULD HAVE TO BE SUBMITTED FOR PLAINTIFF TO BE TAKEN TO AN OUTSIDE CLINIC TO RECEIVE AN INJECTION."

DURING THIS SAME APPOINTMENT, PLAINTIFF QUESTIONED TOMAR REGARDING THE SURGERY CONSULTATION BEING FURTHER PROLONGED BY STEROID INJECTIONS THAT HE [SUPPOSEDLY] COULD NOT EVEN RECEIVE. TOMAR AGAIN ACCUSED PLAINTIFF OF TRYING TO GATHER INFORMATION TO PURSUE A LAWSUIT. PLAINTIFF REMINDED TOMAR THAT HE DIDN'T REQUEST THIS APPOINTMENT WITH HIM; IT WAS SCHEDULED WITHOUT HIS REQUEST OR KNOWLEDGE.

BEFORE THIS APPOINTMENT CONCLUDED, PLAINTIFF QUESTIONED TOMAR REGARDING THE FALSE STATEMENTS THAT HE HAD ENTERED INTO PLAINTIFF'S MEDICAL FILE. TOMAR BECAME UPSET AND THREATENED TO HAVE PLAINTIFF LOCKED UP FOR INSOLE-NCE FOR ACCUSING HIM OF LYING.

29) FROM APRIL 2021 THROUGH NOVEMBER 3, 2021, PLAINTIFF HAD STILL NOT REC-EIVED ANY TREATMENT OF HIS SHOULDER INJURY. PLAINTIFF HAD NOT RECEIVED THE RECOMMENDED STEROID INJECTIONS; NOT RECEIVED THE SECOND OPINION FOR SURGERY; THE ONLY FORM OF TREATMENT THAT PLAINTIFF HAD RECEIVED WAS NSAIDS, WHICH HAD BEEN SWITCHED FROM IBUPROFEN TO NAPROXEN.

30) AFTER FILING SECOND AMENDED COMPLAINT, PLAINTIFF DISCONTINUED ALL COMMUNICATION WITH TOMAR.

31) JANUARY 31, 2022, TOMAR ENTERED ADDITIONAL FALSE NOTATIONS INTO PLAIN-TIFF'S MEDICAL RECORD.

-TOMAR FALSELY STATED: "PT REFUSED JOINT INJECTION AND REFUSAL FORM IN CHART."

-TOMAR FALSELY STATED: "PT SUED THE PREVIOUS BOP FACILITY IN 2018 AND LOST AND NOW HAS SUED MY COLLEAGUE AND I FOR DELAY OF MEDICAL CARE, SO PLEASE EXERCISE CAUTION IN ALL YOUR CLINICAL DECISION MAKING WITH THIS HIGHLY LITIGIOUS INMATE."

-TOMAR FALSELY STATED: "I THEN SCHEDULED HIM (PLAINTIFF) FOR AN ON-SITE SUBACROMIAL INJECTION IN 1/2021, BUT LATER I LEARNED THAT FORREST CITY STAFF ARE NOT AUTHORIZED TO PROVIDE THESE PROCEDURES ON-SITE PER REGIONAL MEDICAL DIRECTOR."

(5)

28A) MID 2021 (UNKNOWN MONTH): PLAINTIFF DISCOVERED THAT OTHER INMATES WERE STILL RECEIVING STEROID INJECTIONS (FROM DR. TOMAR AND OTHER MEDICAL STAFF MEMBERS) DESPITE THE FACT THAT PLAINTIFF HAD BEEN TOLD THAT STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE DUE TO RESTRICTIONS FROM THE REGIONAL DIRECTOR.

INMATE SHELTON BERNARD HOPKINS III HAD RECENTLY RECEIVED INJECTIONS IN HIS BACK; INMATE PAUL IVY HAD RECENTLY RECEIVED INJECTION(S) IN HIS HAND. BOTH INMATES RECEIVED THESE INJECTIONS IMMEDIATELY BEFORE [& AFTER] TOMAR HAD INFORMED PLAINTIFF THAT "STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE."

31)  IN THE NOTATION FROM JANUARY 31, 2022, AT APPROXIMATELY 12:36PM, TOMAR FALSELY STATED: "PT REFUSED JOINT INJECTION AND REFUSAL FORM IN CHART." IN THE SAME NOTATION TOMAR CONTRADICTS HIMSELF BY STATING: "I THEN SCHEDULED HIM  (PLAINTIFF) FOR AN ON-SITE SUBACROMIAL INJECTION IN 1/2021."

(SEE ATTACHMENT: "MEDICAL RECORD JANUARY 21 & 31")

32) APRIL 28, 2022, PLAINTIFF WAS TAKEN TO OUTSIDE APPOINTMENT AT 'REGIONAL ONE HEALTH' LOCATED IN MEMPHIS, TENNESSEE, FOR A SCHEDULED APPOINTMENT WITH AN ORTHOPEDIC SPECIALIST. PLAINTIFF WAS SEEN BY DR. **NAVEEN PATTISAPU, MD.** PRIOR TO THE SCHEDULED APPOINTMENT, DR. PATTISAPU REVIEWED PLAINTIFF'S MEDICAL FILE AND MRI NOTES AND STATED THAT: "GIVEN HIS ACTIVE LIFESTYLE AND HIS YOUNG AGE, I THINK HE WOULD BENEFIT FROM INTERVENTION. WE WILL GET AN MR ARTHROGRAM TO BETTER CHARACTERIZE HIS INJURY. WE HAVE SENT A CONSULTATION TO INTERVENTIONAL RADIOLOGY FOR ASSISTANCE WITH THIS. WE WILL CONTACT HIM TO [SCHEDULE SURGERY] AFTER WE GET THIS BACK."

AMONG EVERYTHING ELSE THAT DR. PATTISAPU STATED, HE ALSO SAID THAT "THERE'S NO LEGITIMATE REASON THAT YOU (PLAINTIFF) SHOULD NOT HAVE RECEIVED THIS SURGERY." [SEE ATTACHED MEDICAL RECORD: "REGIONAL ONE MEDICAL RECORD"]

33) MAY 11, 2022, PLAINTIFF REPORTED TO LIEUTENANT'S OFFICE TO REQUEST A STAFF WITNESS FOR A SCHEDULED APPOINTMENT WITH DR. TOMAR. PLAINTIFF ARRIVED AT LT'S OFFICE AT APPROXIMATELY 7:35AM. PLAINTIFF SPOKE WITH LT. MCCALLISTER WHO FIRST SAID: "ASK A NURSE TO DO IT". PLAINTIFF INFORMED THE LT. THAT ON A PREVIOUS OCCASION, THE NURSES INFORMED PLAINTIFF THAT THEY "DID NOT WANT TO BE INVOLVED IN WHATEVER IT WAS THAT REQUIRED PLAINTIFF TO NEED A STAFF WITNESS."

LT. MCCALLISTER THEN ASKED PLAINTIFF: "WHY DO YOU NEED A STAFF WITNESS?" PLAINTIFF INFORMED HER THAT "I HAVE PENDING LITIGATION AGAINST TOMAR AND HE TENDS TO SHOW INDIFFERENCE TOWARDS ME WHENEVER I SEE HIM." LT. MCCALLISTER THEN TOLD PLAINTIFF: "ASK THE HEAD OF MEDICAL, POYNER OR RAY TO SIT IN FOR THE APPOINTMENT WITH TOMAR." PLAINTIFF RESPONDED: "I HAVE NO AUTHORITY TO GET THEM TO SIT IN ON ANYTHING AND PROBABLY WON'T EVEN BE ABLE TO SPEAK TO THEM." LT. MCCALLISTER INFORMED PLAINTIFF THAT SHE WOULD CALL MEDICAL TO SPEAK WITH ONE OF THE ADMINISTRATORS TO LET THEM KNOW THAT A STAFF WITNESS IS NEEDED DURING APPOINTMENT WITH TOMAR.

34) AT APPROXIMATELY 8:10AM, PLAINTIFF REPORTED TO MEDICAL FOR THE SCHEDULED APPOINTMENT WITH TOMAR. UPON ARRIVAL, PLAINTIFF IMMEDIATELY INFORMED STAFF MEMBER WALLIS THAT LT. MCCALLISTER SAID THAT SHE WAS GOING TO CALL TO GET ME A STAFF WITNESS FOR APPOINTMENT WITH TOMAR. MS. WALLIS SAID: "I'LL CHECK ON IT."

35) AT APPROXIMATELY 8:27AM, TOMAR CAME OUT AND CALLED PLAINTIFF FOR HIS APPOINTMENT; THERE WAS NO STAFF WITNESS PRESENT. ONCE IN TOMAR'S OFFICE, HE BEGAN LOOKING AT HIS COMPUTER SCREEN TO SEE WHAT WAS THE REASON PLAINTIFF WAS SCHEDULED FOR THE APPOINTMENT WITH HIM. TOMAR INFORMED PLAINTIFF THAT IT WAS A CHRONIC CARE FOLLOW-UP REGARDING HIGH CHOLESTEROL MEDICATION.

(6)

35) CONTINUED... TOMAR THEN TOLD PLAINTIFF: "I WANT TO DO MY DUE DILIGENCE WITH YOU BECAUSE WE KNOW YOU'RE HIGHLY LITIGIOUS."

TOMAR THEN BEGAN LOOKING AT PLAINTIFF'S COMMISSARY RECEIPTS TO SEE IF ITEMS THAT WERE BEING PURCHASED WERE THE CAUSE OF ELEVATED CHOLESTEROL. TOMAR THEN SAID: "I SEE THAT NURSE LAMARRE NOTED THAT YOU MISSED AN APPOI- NTMENT WITH HER AND THAT YOU REFUSED TO SIGN A MEDICAL TREATMENT REFUSAL FORM." PLAINTIFF INFORMED TOMAR THAT HE "DIDN'T REFUSE TO SIGN ANYTHING, AND THE REASON FOR THE MISSED APPOINTMENT WAS BECAUSE THERE WAS  FOG COUNT DURING THE TIME THAT THE APPOINTMENT WAS SCHEDULED FOR." TOMAR THEN SAID: "YOU DIDN'T SHOW UP FOR AN APPOINTMENT WITH ME... YOU PEOPLE ARE ALWAYS MAKING EXCUSES WHY YOU CAN'T SHOW UP FOR SOMETHING." WHEN PLAINTIFF BEGAN TO EXPLAIN THAT THE DOOR TO MEDICAL WAS LOCKED BECAUSE OF A MEDICAL EMERG- ENCY IN THE SHU, THE DAY OF THE APPOINTMENT WITH HIM, TOMAR THEN SAID: "SHUT UP... I DIDN'T TELL YOU TO TALK." PLAINTIFF IMMEDIATELY SAID: "I NEED A WITNESS IN HERE, I'M NOT COMFORTABLE IN THIS APPOINTMENT WITH YOU." PLAI- NTIFF STOOD UP AND OPENED THE DOOR, TOMAR YELLED AT PLAINTIFF SAYING: "SIT YOUR ASS DOWN." PLAINTIFF CONTINUED WALKING OUT OF THE OFFICE WITH HIS HANDS IN THE AIR AND LOUDLY YELLED "I NEED A STAFF WITNESS, I NEED A STAFF WITNESS."  TOMAR WAS FOLLOWING CLOSELY BEHIND AND AS TOMAR & PLAIN- TIFF APPROACHED THE END OF THE HALLWAY, TOMAR THREATENED PLAINTIFF SAYING: "I SHOULD PUNCH YOUR HEAD THROUGH THAT BRICK WALL."

[NOTE: THERE WAS ANOTHER INMATE PRESENT, SITTING AT THE END OF THE HALLWAY WHO SAW PLAINTIFF WALKING AWAY FROM TOMAR AND CLEARLY HEARD TOMAR THREATEN TO PUNCH PLAINTIFF'S HEAD THROUGH THE BRICK WALL."]

AS PLAINTIFF AND TOMAR APPROACHED THE FRONT OFFICE, TOMAR BURST THROUGH THE OFFICE DOOR WHERE THE NURSES WERE SITTING AND SAID: "THIS GUY NEEDS A STAFF WITNESS FOR HIS BULLSHIT HE HAS GOING." PLAINTIFF SPOKE UP AND SAID TO NURSE WALLIS: "THIS IS WHY I NEEDED A STAFF WITNESS, TOMAR JUST THREATENED TO PUNCH MY HEAD THROUGH THE BRICK WALL... I NEED TO SEE THE LIEUTENANT."

NURSE WALLIS PICKED UP THE PHONE AND IMMEDIATELY CALLED THE LT'S OFFICE... TOMAR ATTEMPTED TO CLOSE PLAINTIFF OUT IN THE HALLWAY WHERE HE WAS STILL STANDING NEXT TO PLAINTIFF; HOWEVER, PLAINTIFF ASKED THE NURSES IF THEY COULD LEAVE THE DOOR OPEN SO THEY COULD SEE IF ANYTHING HAPPENED.

WHILE PLAINTIFF WAS STANDING THERE WAITING FOR NURSE WALLIS TO GET THROUGH TO THE LIEUTENANT, TOMAR NOTICED THAT PLAINTIFF WAS BREATHING HEAVILY. TOMAR ASKED PLAINTIFF: "WHY ARE YOU BREATHING SO HARD, ARE YOU SCARED?" PLAINTIFF SAID: "NO... I'M BREATHING HARD BECAUSE YOU JUST THREATENED ME AND I DON'T LIKE TO BE THREATENED." TOMAR THEN SAID: "NO... YOU'RE BREA- THING HARD BECAUSE YOU'RE NOT A MAN... YOU'RE JUST A PUNK KID WHO WRITES BULLSHIT ON PEOPLE, EVEN AFTER I TRIED TO HELP YOU WITH YOUR SHOULDER." PLAINTIFF RESPONDED: "YOU DIDN'T TRY TO HELP ME WITH ANYTHING."

TOMAR TOLD THE NURSES THAT THEY NEEDED TO SPEED UP WHATEVER THEY WERE GOING TO DO BECAUSE HE HAD TO GO TO THE SHU AND HE DIDN'T HAVE TIME FOR THIS SHIT. HE THEN TURNED AND WALKED OUT OF THE OFFICE. HE RETURNED A COUPLE MINUTES LATER AND PRESENTED PLAINTIFF WITH A DOCUMENT TO SIGN; PLAINTIFF TOLD TOMAR: "I'M NOT SIGNING ANYTHING." TOMAR THEN SLAPPED THE DOCUMENT ON THE DESK AND TOLD NURSE THOMAS TO SIGN AS A WITNESS TO PLAINTIFF'S REFUSAL TO SIGN. PLAINTIFF ASKED TOMAR FOR A COPY OF THE DOCUMENT; TOMAR SAID: "YOU CAN GO TO HELL." [SEE ATTACHED: "STATEMENT OF INCIDENT W/ TOMAR"]

(7)

36) END OF MAY/JUNE 1, 2022, PLAINTIFF DISCOVERED THAT: DESPITE BEING INF-
ORMED BY DR. TOMAR THAT HE COULD NO LONGER ADMINISTER STEROID INJECTIONS
ON-SITE DUE TO RESTRICTIONS FROM THE REGIONAL MEDICAL DIRECTOR... PLAIN-
TIFF DISCOVERED AND WAS SHOWN PROOF THAT TOMAR WAS STILL ADMINISTERING THE
STEROID SHOTS AS RECENTLY AS FEBRUARY 28, 2022 AND WAS PLANNING TO ADMIN-
ISTER THE NEXT SHOT IN JUNE OF 2022.

INMATE **GERALD BEASLEY, INMATE NO: 03393-084,** SHOWED PLAINTIFF PROOF IN THE
FORM OF A MEDICAL RECORD, AS WELL AS EMAIL CORRESPONDANCE SHOWING THAT DR.
TOMAR HAD RECENTLY GIVEN HIM A STEROID INJECTION. INMATE BEASLEY EMAILED
TOMAR INQUIRING IN REGARDS TO WHEN HE WOULD BE ABLE TO RECEIVE THE NEXT OF
HIS 3 STEROID SHOTS; TOMAR RESPONDED: "I WILL BE ABLE TO PLACE THE NEXT
INJECTION IN JUNE ONCE I HAVE MORE OPENINGS IN MY SCHEDULE." SIGNED WITH
AN ELECTRONIC SIGNATURE FROM DR. TOMAR. [**SEE ATTACHED: "BEASLEY STATEMENT
& EMAIL CORRESPONDANCE**]

37) AS OF THE PRESENT DATE: SEPTEMBER 26, 2022, PLAINTIFF HAS NOT RECEIVED
A SINGLE STEROID INJECTION; PLAINTIFF'S PAIN MEDICATION WAS SWITCHED FROM
IBUPROFEN TO NAPROXEN (ONLY AFTER PURSUING THE ISSUE THROUGH THE ADMINIS-
TRATIVE REMEDY PROCESS); PLAINTIFF'S PAIN MEDICATION WAS AGAIN UPDATED TO
SOMETHING STRONGER ON 4/28/2022 AFTER PLAINTIFF WAS TAKEN TO REGIONAL ONE
HEALTH WHERE DR. PATTISAPU DISCOVERED THAT I WAS BEING GIVEN AN "INADEQUATE
FORM OF MEDICATION FOR A SERIOUS INJURY."

38) AS A RESULT OF DR. TOMAR'S DELIBERATELY INDIFFERENT ACTIONS IN HIS DEN-
IAL AND/OR REFUSAL TO PROVIDE PLAINTIFF WITH ADEQUATE MEDICAL CARE... PLAI-
NTIFF HAS NOW BEEN FORCED TO ENDURE PAIN & SUFFERING FOR 33 MONTHS UNDER
THE DIRECT CARE OF DR. TOMAR.

39) PLAINTIFF ASSERTS THAT HE HAS EXHAUSTED ALL ADMINISTRATIVE REMEDY PROC-
EDURES WITHIN THE BUREAU OF PRISONS, IN AN ATTEMPT TO REMEDY THIS SITUATION
AS REQUIRED BY 28 U.S.C. § 2675. EXHAUSTION WAS COMPLETED ON FEBRUARY 10,
2021.


**BIVENS ACTION-**
**COUNT 1: DELIBERATE INDIFFERENCE**

40) HERE PLAINTIFF IS ALLEGING THAT DEFENDANT MAHARAJ ALEJANDRO TOMAR, ACTED
WITH DELIBERATE INDIFFERENCE TO HIS SERIOUS MEDICAL NEEDS BY FAILING IN
HIS DUTY TO ADMINISTER, AND/OR FOLLOW PROCEDURES WHEREBY PLAINTIFF COULD
RECEIVE ADEQUATE TREATMENT TO HIS INJURY, IN A TIMELY, PROFESSIONAL, AND
MEDICALLY ACCEPTABLE MANNER.

41) AS A LICENSED PHYSICIAN, AND PLAINTIFF'S PRIMARY CARE PROVIDER, TOMAR
HAD A PROFESSIONAL DUTY TO UTILIZE HIS SKILLS, PRUDENCE, AND DILIGENCE AS
OTHER MEMBERS OF HIS PROFESSION WOULD COMMONLY POSSESS AND EXERCISE, IN THE
DIAGNOSING AND ADMINISTERING OF ADEQUATE TREATMENT OF PLAINTIFF'S INJURY.

42) JULY 22, 2019, PLAINTIFF ARRIVED AT FCI FORREST CITY MEDIUM. DURING HIS
INITIAL INTAKE EVALUATION, PLAINTIFF IMMEDIATELY INFORMED MEDICAL STAFF
MEMBER MELISSA LOVEDAY OF AN EXISTING INJURY TO HIS SHOULDER FOR WHICH HE
WAS SCHEDULED TO RECEIVE SURGERY AT THE PREVIOUS FACILITY.

(8)

43) SEPTEMBER 16, 2019, PLAINTIFF SENT AN EMAIL TO MEDICAL, FOLLOWING UP ON THE STATUS OF HIS REQUEST FOR AN EVALUATION OF HIS SHOULDER INJURY, IN ORDER TO PROCEED WITH THE SURGERY.

44) OCTOBER 11, 2019, PLAINTIFF WENT TO A SCHEDULED APPOINTMENT WITH DNP M. HICKERSON, REGARDING HIS SHOULDER INJURY AND THE PREVIOUSLY SCHEDULED SURGERY. HICKERSON INFORMED PLAINTIFF THAT HE WOULD BE SCHEDULED TO SEE A LOCAL ORTHOPEDIC SURGEON FOR AN EVALUATION.

45) NOVEMBER 13, 2019, PLAINTIFF WAS TAKEN TO 'ORTHO NOW FOR A CONSULTATION WITH DR. BRET SOKOLOFF. SOKOLOFF STATED THAT HE WAS NOT GOING TO RECOMMEND SURGERY; HE WAS INSTEAD RECOMMENDING PHYSICAL THERAPY, NSAIDS, AND STEROID INJECTIONS; HE ALSO STATED THAT IT WAS HIS OPINION THAT "THE LOCATION OF PLAINTIFF'S PAIN WAS NOT CONSISTENT WITH A ROTATOR TEAR."

46) NOVEMBER 17, 2019, PLAINTIFF SENT AN EMAIL TO DNP HICKERSON, FORMALLY REQUESTING A "SECOND OPINION" FROM A DIFFERENT PROVIDER, AFTER DR. SOKOLOFF DENIED  SURGERY.

47) DECEMBER 20, 2019, PLAINTIFF REPORTED TO A SCHEDULED APPOINTMENT WITH NURSE HICKERSON. HICKERSON INFORMED PLAINTIFF THAT "SHE WAS UNFAMILIAR WITH THE PROCESS AND DID NOT KNOW HOW TO SUBMIT A REQUEST FOR A SECOND OPINION. HICKERSON THEN TOOK PLAINTIFF AND INTRODUCED HIM TO DR. TOMAR.

48) TOMAR IMMEDIATELY INFORMED PLAINTIFF: "THIS IS NOT SOMETHING I NORMALLY DEAL WITH." HE THEN QUICKLY REVIEWED THE NOTES FROM BOTH ORTHO CONSULTATIONS AND PROCEEDED TO EXAMINE PLAINTIFF HIMSELF. WITHOUT A THROUGH OR ADEQUATE EXAMINATION, TOMAR IMMEDIATELY AGREED WITH SOKOLOFF WHO STATED: "ROTATOR TEAR DOES NOT NEED SURGERY." PLAINTIFF ASKED TOMAR: "HOW CAN YOU SO EASILY AGREE WITH DR. SOKOLOFF AND MAKE A DETERMINATION DENYING SURGERY, IF I ALREADY RECEIVED AN OPINION FROM AN ORTHOPEDIC SURGEON WHO RECOMMENDED SURGERY TO REPAIR MY TORN ROTATOR CUFF?" TOMAR SAID: "IF I WERE TO SUBMIT A REQUEST FOR A SECOND OPINION, IT'S HIGHLY LIKELY YOU WOULD GET THE SAME RESPONSE AS YOU DID FROM SOKOLOFF, AND THE SURGERY WOULD BE DENIED." TOMAR THEN SAID: "LET ME LEVEL WITH YOU ON SOMETHING... WHEN DEALING WITH THE BOP, THE ORTHO'S THEY'LL SEND YOU TO WILL DO EVERYTHING POSSIBLE TO AVOID GIVING YOU AN EXPENSIVE SURGERY." PLAINTIFF THEN REMINDED TOMAR THAT THE PREVIOUS ORTHO WHO RECOMMENDED SURGERY, WAS IN FACT A CONTRACTED PROVIDER FOR THE BOP." PLAINTIFF THEN ASKED TOMAR: "WHAT'S THE DIFFERENCE BETWEEN THE ORTHO WHO THOROUGHLY EXAMINED ME AND RECOMMENDED SURGERY VS. THE ONE WHO BARELY EXAMINED ME, DENIED THE SURGERY AND INSTEAD RECOMMENDED A TREATMENT PLAN OF EXERCISES/PHYSICAL THERAPY, NSAIDS, AND STEROID INJECTIONS?" TOMAR SAID: "THE ORTHO WHO RECOMMENDED SURGERY WAS PROBABLY JUST MONEY HUNGRY."

NOTE 1: THE BASIS OF THE CLAIM OF DELIBERATE INDIFFERENCE IN THIS INSTANCE STEMS FROM THE FOLLOWING FACTS... DEFENDANT TOMAR'S INITIAL DENIAL OF PLAINTIFF'S REQUEST FOR A SECOND OPINION WAS BASED PRIMARILY ON HIS ASSERTION THAT: "IF I WERE TO SUBMIT A REQUEST FOR A SECOND OPINION, IT'S HIGHLY LIKELY YOU WOULD GET THE SAME RESPONSE, DENYING THE SURGERY."

TOMAR ATTEMPTED TO SUPPORT HIS BELIEF THAT A REQUEST FOR A SECOND OPINION WOULD BE DENIED, BY STATING: "LET ME LEVEL WITH YOU ON SOMETHING... WHEN DEALING WITH THE BOP, THE ORTHO'S THEY'LL SEND YOU TO WILL DO EVERYTHING POSSIBLE TO AVOID GIVING YOU AN EXPENSIVE SURGERY." HE ATTEMPTED TO BOLSTER

(9)

48) CONTINUED...
[NOTE 1 CONTINUED: THAT STATEMENT BY STATING: "THE ORTHO WHO RECOMMENDED SURGERY WAS PROBABLY JUST MONEY HUNGRY."]

BASED ON THESE FACTS, PLAINTIFF ASSERTS THAT TOMAR'S ACTIONS WERE DELIBERA-TELY INDIFFERENT TO HIS MEDICAL NEEDS BECAUSE...

1A) TOMAR KNEW BASED ON READING THE PREVIOUS CONSULTATIONS OF BOTH ORTHO'S, THAT PLAINTIFF DID IN FACT HAVE A TORN ROTATOR CUFF, VERIFIED BY THE MRI PERFORMED ON SEPTEMBER 10, 2018.

1B) TOMAR STATED HIMSELF: "WHEN DEALING WITH THE BOP, THE ORTHO'S THEY'LL SEND YOU TO WILL DO EVERYTHING POSSIBLE TO AVOID GIVING YOU AN EXPENSIVE SURGERY." THIS ASSERTION WOULD HAVE UNDOUBTEDLY INCLUDED DR. SOKOLOFF, WHO DID IN FACT DENY THE SURGERY, AND WAS IN FACT A CONTRACTED PROVIDER FOR THE BOP.

IF TOMAR KNEW OR BELIEVED THAT "THE ORTHO'S THEY'LL SEND YOU TO WILL DO EVERYTHING POSSIBLE TO AVOID GIVING YOU AN EXPENSIVE SURGERY (WHICH CONST-ITUTES DELIBERATE INDIFFERENCE) THEN AGREEING WITH THE BIASED DENIAL OF SURGERY FROM DR. SOKOLOFF WAS IN FACT DELIBERATE INDIFFERENCE AS WELL.]


[NOTE 2: TOMAR HAD NOTHING ELSE TO BASE HIS OPINION ON OTHER THAN THE OPIN-IONS OF THE ORTHO CONSULTATIONS. TOMAR DID NOT REVIEW THE MRI HIMSELF IN ORDER TO GET AN IN DEPTH UNDERSTANDING OF THE EXTENT OF PLAINTIFF'S INJURY, IN ORDER TO FORM AN OPINION OF HIS OWN. HE SIMPLY RELIED ON THE OPINION OF THE ORTHO WHOM HE KNEW HAD GIVEN A BIASED OPINION IN ORDER TO SAVE THE BOP MONEY, BY NOT RECOMMENDING SURGERY, WHETHER PLAINTIFF NEEDED IT OR NOT. THIS CONSTITUTES DELIBERATE INDIFFERENCE.

2A) TOMAR HAD A PROFESSIONAL DUTY TO ENSURE THAT PLAINTIFF RECEIVED ADEQUATE TREATMENT OF HIS INJURY  THAT IS EQUIVALENT TO THE TREATMENT THAT WOULD BE AVAILABLE TO A COMMON CITIZEN IN TODAY'S SOCIETY. A COMMON CITIZEN HAS THE UNDENIABLE RIGHT TO SEEK AND RECEIVE A SECOND OPINION, AND THEREFORE, THIS RIGHT SHOULD HAVE BEEN EXTENDED TO PLAINTIFF AS WELL. TOMAR'S REFUSAL TO SUBMIT PLAINTIFF FOR A SECOND OPINION WAS A VIOLATION OF HIS RIGHT TO REC-EIVE ADEQUATE MEDICAL CARE, AND WAS THEREFORE DELIBERATELY INDIFFERENT TO PLAINTIFF'S MEDICAL NEEDS.]

[NOTE 3: TOMAR FURTHER BREACHED HIS DUTY AND ACTED WITH DELIBERATE INDIFF-ERENCE BY AGREEING WITH AND FURTHER RECOMMENDING A TREATMENT OF PHYSICAL THERAPY, THAT HE KNEW WAS UNAVAILABLE.

3A) TOMAR HIMSELF INFORMED PLAINTIFF: "THE BOP DOES NOT OFFER PHYSICAL THERAPY." WHEN PLAINTIFF REMINEDED TOMAR OF THIS, TOMAR THEN PRINTED A PAMPHLET FROM THE INTERNET AND TOLD PLAINTIFF "YOU'LL HAVE TO FIGURE IT OUT ON YOUR OWN."

3B) AS A MEDICAL PROFESSIONAL, TOMAR KNEW THAT OFFEREING PLAINTIFF [SELF-TAUGHT] PHYSICAL THERAPY FOR A TORN ROTATOR CUFF THAT HAD NOT HEALED ON IT'S ON IN 33 MONTHS, WOULD BE AN INEFFECTIVE FORM OF TREATMENT. FURTHERMORE, TOMAR ALSO KNEW THAT RECOMMENDING PHYSICAL THERAPY **BEFORE** REPAIRING THE INJURY, WOULD BE INEFFECTIVE, AND WOULD NOT BE THE TREATMENT OFFERED TO A COMMON CITIZEN WITH THE SAME INJURY. PHYSICAL THERAPY IS COMMONLY OFFERED AS A **POST-SURGERY** TREATMENT PLAN. TOMAR'S ACTIONS CONSTITUTED DELIBERATE INDIFF-ERENCE TO PLAINTIFF'S MEDICAL NEEDS.

49) WHEN PLAINTIFF PROCEEDED TO ASK ANOTHER QUESTION, TOMAR SAID: "LOOK, I'M NOT GOING TO WASTE TIME GOING BACK & FORTH WITH YOU; I'M NOT RECOMMENDING YOU FOR A SECOND OPINION UNTIL YOU'VE DONE THE PHYSICAL THERAPY AND STEROID INJECTIONS AND AFTER THAT, I'LL RE-EVALUATE YOU IN 6 MONTHS."

[NOTE: DURING THE APPOINTMENT ON DECEMBER 20, 2019, PLAINTIFF AGREED TO RECEIVE THE INJECTIONS AND FOLLOW THE RECOMMENDED TREATMENT PLAN IN ORDER TO PROCEED WITH THE PROCESS OF BEING REFERRED FOR A SECOND OPINION.]

50) JANUARY 2020, PLAINTIFF FILED AN ADMINISTRATIVE REMEDY, DISAGREEING WITH TOMAR'S COURSE OF ACTION FOR TREATMENT OF HIS SHOULDER INJURY.

51) PLAINTIFF'S ADMINISTRATIVE REMEDY WAS BROUGHT TO TOMAR'S ATTENTION DURING A.W. ROSALEZ'S INVESTIGATION OF PLAINTIFF'S COMPLAINT. TOMAR RETALIATED BY ENTERING SEVERAL FALSE STATEMENTS INTO PLAINTIFF'S MEDICAL RECORD REGARDING THE EVALUATION THAT TOOK PLACE ON DECEMBER 20, 2019.

-TOMAR FALSELY STATED:"PLAINTIFF VOLUNTEERED THAT HE PROCEEDED WITH RATHER FORCEFUL SHOULDER MUSCLE BUILDING EXERCISES."

[NOTE: PLAINTIFF ASSERTS THAT HE DID NOT INFORM TOMAR OF ANYTHING IN RELATION TO "PROCEEDING WITH RATHER FORCEFUL MUSCLE BUILDING EXERCISES" OR ANY KIND OF EXERCISES. ON JANUARY 15, 2020, WHEN THE ENTRY WAS MADE INTO PLAINTIFF'S MEDICAL RECORD, PLAINTIFF WAS NOT EVEN PRESENT; AND THEREFORE, COULD NOT HAVE TOLD TOMAR ANYTHING.]

-TOMAR FALSELY STATED: PLAINTIFF "RESUMED WEIGHTLIFTING EXERCISES THAT HE THOUGHT WOULD BE BENEFICIAL."

[NOTE: PLAINTIFF ASSERTS THAT THIS IS CLEARLY FALSE CONSIDERING THE FACT THAT THERE ARE NO WEIGHTS HERE AT FCI FORREST CITY, NOR HAS PLAINTIFF HAD ANY ACCESS TO WEIGHTS THROUGHOUT HIS ENTIRE TERM OF INCARCERATION.]

-TOMAR FALSELY STATED: PLAINTIFF "RECEIVED A STEROID INJECTION WHICH DID NOT REDUCE PAIN."

[NOTE: PLAINTIFF'S MEDICAL RECORD WILL CLEARLY SHOW THAT NO STEROID INJECTION HAD EVEN BEEN ADMINISTERED.]

52) PLAINTIFF ASSERTS THAT TOMAR ENTERED THESE STATEMENTS MALISIOUSLY, AFTER A.W. ROSALEZ CONFRONTED TOMAR IN REGARDS TO PLAINTIFF'S ADMINISTRATIVE COMPLAINT FILED AGAINST HIM.

53) THE FALSE STATEMENTS WERE PART OF THE BEHAVIOR THAT SHOWED & PROVED THAT TOMAR WAS CONTINUALLY ACTING WITH DELIBERATE INDIFFERENCE TOWARDS PLAINTIFF'S MEDICAL NEEDS. THIS CAUSED INJURY TO PLAINTIFF BY DEPRIVING HIM  OF MEDICAL TREATMENT WHILE SIMULTANEOUSLY SUBJECTING HIM TO UNNECESSARY & WANTON PAIN & SUFFERING.

54) MAY 29, 2020, DURING A SCHEDULED APPOINTMENT WITH TOMAR, PLAINTIFF QUESTIONED HIM REGARDING THE FALSE STATEMENTS THAT HE HAD ENTERED INTO HIS MEDICAL FILE. TOMAR BECAME VERY IRATE, UNPROFESSIONAL, AND ACCUSED PLAINTIFF OF "TRYING TO USE HIS WORDS IN ORDER TO BUILD A LAWSUIT AGAINST

(11)

54) CONTINUED... HIM AND THE BOP." DURING THIS APPOINTMENT, PLAINTIFF AGAIN REMINDED TOMAR THAT "THE IBUPROFEN THAT HE CONTINUED TO PRESCRIBE WAS CAUSING STOMACH PAIN & DISCOMFORT." PLAINTIFF AGAIN LEFT THE APPOINTMENT WITH A RENEWED PRESCRIPTION FOR [IBUPROFEN].

55) PLAINTIFF ASSERTS THAT TOMAR CONTINUED TO PRESCRIBE THE IBUPROFEN MALICIOUSLY BECAUSE HE WAS UPSET THAT PLAINTIFF HAD AN ONGOING COMPLAINT PENDING AGAINST HIM.

PLAINTIFF INFORMED TOMAR FACE TO FACE DURING THIS APPOINTMENT THAT THE IBUPROFEN CAUSED STOMACH PAIN. PLAINTIFF HAD ALSO INFORMED TOMAR OF THIS BY EMAIL. THERE WAS NO LEGITIMATE REASON FOR TOMAR TO CONTINUE PLAINTIFF'S PRESCRIPTION FOR IBUPROFEN IF HE WAS AWARE THAT IT WAS CAUSING PLAINTIFF STOMACH PAIN. CONSIDERING THE FACT THAT THERE WAS NO LEGITIMATE REASON, PLAINTIFF BELIEVES BASED ON THE DETAILS OF THE SITUATION, THAT TOMAR'S REASON FOR DOING SO WERE WITH MALICE AND INTENT TO RETALIATE AGAINST PLAINTIFF FOR FILING A COMPLAINT.

56) PLAINTIFF ASSERTS THAT TOMAR'S ACTIONS IN THIS INSTANCE WERE DELIBERATELY INDIFFERENT TO HIS MEDICAL NEEDS BECAUSE TOMAR KNEW OF PLAINTIFF'S INJURY... KNEW OF SOKOLOFF'S RECOMMENDATION FOR NSAIDS (PAIN MEDICATION)... AND KNEW THAT PLAINTIFF COULD NOT TAKE THE PRESCRIBED IBUPROFEN BECAUSE PLAINTIFF WAS INFORMING HIM THAT IT CAUSED STOMACH PAIN. TOMAR HAD A DUTY TO ENSURE THAT PLAINTIFF RECEIVE A PAIN MEDICATION THAT WAS ADEQUATE FOR HIS MEDICAL NEEDS. TOMAR CHOSE TO DELIBERATELY DISREGARD THAT DUTY AND THEREFORE ACTED WITH DELIBERATE INDIFFERENCE TOWARDS PLAINTIFF'S MEDICAL NEEDS.

57) SEPTEMBER 10, 2020, PLAINTIFF EMAILED TOMAR IN REGARDS TO THE STATUS OF BEING SCHEDULED FOR SURGERY CONSULTATION.

58) SEPTEMBER 15, 2020, TOMAR RESPONDED TO PLAINTIFF'S EMAIL STATING: "I FORGOT TO ASK IF YOU (PLAINTIFF) WANTED THE STEROID INJECTION."

59) PLAINTIFF ASSERTS THAT TOMAR ACTED WITH DELIBERATE INDIFFERENCE BY INTENTIONALLY WITHHOLDING TREATMENT AND DISGUISING IT AS AN "I FORGOT TO ASK" INCIDENT.

60) IN THE ENTRY MADE INTO PLAINTIFF'S MEDICAL FILE ON JANUARY 15, 2020, AT APPROXIMATELY 13:07PM... TOMAR NOTED: "b. PT SCHEDULED FOR SUBACROMIAL INJECTION IN MD2." **(SEE ATTACHMENT: "JANUARY 15, 2020 MEDICAL RECORD")**

HOWEVER, ON SEPTEMBER 15, 2020, AT APPROXIMATELY 9:27AM, HERE TOMAR WAS STATING IN AN EMAIL: "I FORGOT TO ASK IF YOU WANTED THE STEROID INJECTION." **(SEE ATTACHMENT: "SEPTEMBER 15TH EMAIL")**

61) THE "I FORGOT TO ASK STATEMENT WAS EXACTLY 9 MONTHS AFTER HE HAD ALREADY MADE THE NOTATION IN PLAINTIFF'S MEDICAL FILE THAT HE (PLAINTIFF) WAS "SCHEDULED FOR INJECTION". PLAINTIFF HAD BEEN WAITING THROUGHOUT THIS TIME PERIOD FOR AN INJECTION AND NOW TOMAR WAS CLAIMING HE "FORGOT TO ASK" IF PLAINTIFF WANTED THE INJECTION.

62) PLAINTIFF HAD INFORMED TOMAR DURING THE APPOINTMENT ON DECEMBER 20, 2019, THAT HE WANTED THE INJECTION IN ORDER TO PROCEED WITH THE PROCESS

62) CONTINUED... OF RECEIVING THE SECOND OPINION.

63) PLAINTIFF ASSERTS THAT TOMAR WAS INTENTIONALLY WITHHOLDING TREATMENT BECAUSE HE WAS AWARE THAT PLAINTIFF HAD AN ONGOING COMPLAINT PENDING AGAINST HIM FOR INADEQUATE MEDICAL CARE. TOMAR KEPT PLAINTIFF WAITING 11 MONTHS TO BE SCHEDULED FOR AND/OR RECEIVE AN INJECTION THAT WAS TO BE ADMINISTERED ON-SITE AND THEN SAYS "I FORGOT TO ASK IF YOU WANT THE INJECTION." THE "I FORGOT TO ASK" WAS JUST ANOTHER EFFORT TO WITHHOLD TREATMENT FROM PLAINTIFF AND CONTINUE TO SUBJECT HIM (PLAINTIFF) TO UNNECESSARY & WANTON PAIN & SUFFERING, AS A RESULT OF NOT RECEIVING THE NECESSARY TREATMENT OF HIS INJURY.

64) TOMAR'S ACTIONS IN THIS INSTANCE WERE DELIBERATELY INDIFFERENT TO PLAINTIFF'S MEDICAL NEEDS BECAUSE HE FAILED TO SCHEDULE PLAINTIFF FOR THE REQUIRED MEDICAL TREATMENT AND/OR INTENTIONALLY WITHHELD SUCH TREATMENT.

TOMAR KNEW THAT PLAINTIFF NEEDED THE STEROID INJECTIONS (AS RECOMMENDED BY DR. SOKOLOFF)...PLAINTIFF AGREED TO RECEIVE THE INJECTIONS ON DECEMBER 20, 2019... TOMAR NOTED PLAINTIFF'S MEDICAL FILE ON JANUARY 15, 2020 STATING: "b. PT (PLAINTIFF) SCHEDULED FOR SUBACROMIAL INJECTION"... HOWEVER, PLAINTIFF ULTIMATELY NEVER RECEIVED AN INJECTION BECAUSE TOMAR DELIBERATELY DISREGARDED HIS DUTY AND FAILED TO SCHEDULE PLAINTIFF FOR THE REQUIRED INJECTION STATING: "I FORGOT TO ASK IF YOU WANT THE INJECTION."

64A) IT WAS EXACTLY 10 MONTHS FROM DECEMBER 20, 2019 TO OCTOBER 2020 THAT PLAINTIFF HAD BEEN AWAITING SCHEDULING AND ADMINISTERING OF A STEROID INJECTION. IN OCTOBER 2020, PLAINTIFF WAS INFORMED THAT "ORTHO CLINICS ARE NOT SEEING NON-EMERGENT PATIENTS." THROUGHOUT THIS TIME PERIOD, PLAINTIFF WAS WAITING FOR AN INJECTION THAT HE WAS TOLD WOULD BE ADMINISTERED **ON-SITE BY DR. WOODARD.**

64B) OCTOBER 7, 2020, AT APPROXIMATELY 9:03AM, DR. TOMAR TOLD PLAINTIFF IN AN EMAIL EXCHANGE: "DR. WOODARD HAS AN OPENING ON FRIDAY 10/30; WOULD YOU LIKE TO SCHEDULE YOUR INJECTION?" (**SEE ATTACHMENT: "EMAIL FROM OCTOBER 7TH")**... PLAINTIFF RESPONDED AFFIRMATIVELY, REQUESTING TO BE SCHEDULED FOR THE APPOINTMENT; HOWEVER, PLAINTIFF WAS NOT SCHEDULED FOR THE APPOINTMENT AND THE RESPONSE REQUESTING TO BE SCHEDULED "MYSTERIOUSLY" DOES NOT SHOW UP IN THE RECORD, WHICH IRONICALLY TOMAR WAS RESPONSIBLE FOR.

64C) PLAINTIFF ASSERTS THAT TOMAR ACTED WITH DELIBERATE INDIFFERENCE IN THIS INSTANCE BY INTENTIONALLY [NOT] SCHEDULING PLAINTIFF FOR THE APPOINTMENT TO RECEIVE THE STEROID INJECTION.

PLAINTIFF ASSERTS THAT TOMAR'S ACTIONS WERE INTENTIONAL BECAUSE TOMAR KNEW THAT PLAINTIFF HAD BEEN WAITING 10 MONTHS FOR INJECTIONS THAT HE WAS RESPONSIBLE FOR SCHEDULING. YET AGAIN, PLAINTIFF WAS NOT SCHEDULED FOR THE APPOINTMENT.

PLAINTIFF AGAIN ASSERTS THAT TOMAR WAS INTENTIONALLY WITHHOLDING TREATMENT IN ORDER TO RETALIATE AGAINST PLAINTIFF FOR THE ONGOING COMPLAINT FOR INADEQUATE MEDICAL TREATMENT AGAINST DR. TOMAR.

(13)

64D) TOMAR KNEW THAT PLAINTIFF WAS AWAITING STEROID INJECTIONS... TOMAR HAD CONTROL OF THE SCHEDULING OF APPOINTMENTS FOR THE INJECTIONS AND YET, WHEN THERE WAS AN OPPORTUNITY TO SCHEDULE PLAINTIFF FOR AN INJECTION, TOMAR FAILED TO SCHEDULE THE APPOINTMENT. AS A RESULT OF THIS, TOMAR FAILED IN HIS DUTY TO ENSURE THAT PLAINTIFF RECEIVED THE NECESSARY MEDICAL CARE THAT PLAINTIFF'S INJURY REQUIRED AND THEREFORE, ACTED WITH DELIBERATE INDIFFERENCE TOWARDS PLAINTIFF'S MEDICAL NEEDS.

65) APRIL 2021, DURING A FOLLOW-UP VISIT WITH TOMAR, PLAINTIFF WAS DIRECTLY INFORMED THAT :"STEROID INJECTIONS COULD NO LONGER BE PERFORMED ON-SITE DUE TO RESTRICTIONS FROM THE REGIONAL MEDICAL DIRECTOR... A REQUEST WOULD ------ HAVE TO BE SUBMITTED FOR PLAINTIFF TO BE TAKEN TO AN OUTSIDE CLINIC TO RECEIVE AN INJECTION."

PLAINTIFF QUESTIONED TOMAR AS TO WHY HIS SURGERY CONSULTATION WAS BEING HELD UP/PROLONGED BY STEROID INJECTIONS THAT HE (PLAINTIFF) COULD NOT EVEN RECEIVE. PLAINTIFF ALSO CONFRONTED TOMAR REGARDING THE FALSE STATEMENTS THAT HE HAD ENTERED INTO HIS MEDICAL FILE. TOMAR AGAIN ACCUSED PLAINTIFF OF "TRYING TO GATHER INFORMATION TO BUILD A LAWSUIT AGAINST HIM." TOMAR THREATENED TO HAVE PLAINTIFF "LOCKED UP FOR INSOLENCE FOR ACCUSING HIM OF LYING."

66) PLAINTIFF ASSERTS THAT TOMAR WAS AGAIN WITHHOLDING TREATMENT WHEN HE INFORMED PLAINTIFF THAT "STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ONSITE."

THIS ASSERTION IS SUPPORTED BY THE FACT THAT: SOMETIME IN MID 2021, PLAINTIFF DISCOVERED THAT OTHER INMATES WERE STILL RECEIVING STEROID INJECTIONS (FROM DR. TOMAR AND OTHER STAFF MEMBERS) DESPITE THE FACT THAT PLAINTIFF HAD BEEN TOLD THAT "STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE DUE TO RESTRICTIONS FROM REGIONAL MEDICAL DIRECTOR."

67) PLAINTIFF IS NOT CERTAIN OF THE MONTH... HOWEVER, PLAINTIFF DISCOVERED THE INMATE SHELTON BERNARD HOPKINS III HAD RECENTLY RECEIVED INJECTIONS IN HIS BACK; INMATE PAUL IVY HAD RECENTLY RECEIVED INJECTION(S) IN HIS HAND. BOTH INMATES RECEIVED THESE INJECTIONS [AFTER] TOMAR HAD INFORMED

(13½)

67) CONTINUED... PLAINTIFF THAT "STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE."

[NOTE: THE MEDICAL RECORDS FOR BOTH INMATES CAN BE PROVIDED FOR TRIAL]

68) PLAINTIFF ASSERTS THAT TOMAR WAS AGAIN ACTING WITH DELIBERATE INDIFF-ERENCE TOWARDS HIS MEDICAL NEEDS BY INTENTIONALLY WITHHOLDING TREATMENT OF PLAINTIFF'S INJURY. THIS ASSERTION IS SUPPORTED BY THE FACT THAT HE (TOMAR) MISLEAD PLAINTIFF AND TOLD HIM THAT HE "COULD NO LONGER RECEIVE AN INJECTION ON-SITE" BUT ADMINISTERED INJECTIONS TO OTHER INMATES AFTER TELLING PLAINTIFF THAT HE COULD NOT RECEIVE ONE.

69) TOMAR ACTED WITH DELIBERATE INDIFFERENCE IN THIS INSTANCE BECAUSE: HE (TOMAR) KNEW THAT PLAINTIFF NEEDED AND WAS AWAITING STEROID INJECTIONS AND HAD BEEN WAITING FOR .28 MONTHS TO RECEIVE AN INJECTION (DECEMBER 2019 TO APRIL 2021)... STEROID INJECTIONS WERE PART OF THE RECOMMENDED TREAT-MENT PLAN PRESCRIBED BY DR. SOKOLOFF... TOMAR INTENTIONALLY MISLEAD PLA-INTIFF BY TELLING HIM THAT "STEROID INJECTIONS COULD NO LONGER BE ADMIN-ISTERED ON-SITE" IN ORDER TO WITHHOLD THE INJECTIONS FROM PLAINTIFF EVEN THOUGH OTHER INMATES WERE STILL RECEIVING THE INJECTIONS.

70) TOMAR WAS AGAIN INTENTIONALLY WITHHOLDING TREATMENT WITH MALICIOUS INTENT AND ACTING WITH DELIBERATE INDIFFERENCE TOWARDS PLAINTIFF'S MEDI-CAL NEEDS. TOMAR DISREGARDED HIS DUTY TO ENSURE THAT PLAINTIFF RECEIVED THE NECESSARY TREATMENT THAT HIS INJURY REQUIRED.

71) JANUARY 31. 2022, TOMAR ENTERED ADDITIONAL FALSE INFORMATION INTO PLAINTIFF'S MEDICAL RECORD...

-TOMAR FALSELY STATED: "PT REFUSED JOINT INJECTION AND REFUSAL FORM IN CHART."

[NOTE: PLAINTIFF ASSERTS THAT THIS CLAIM IS FALSE; AS PLAINTIFF HAS NEVER REFUSED INJECTIONS, NOR IS THERE ANY SUCH REFUSAL FORM IN MEDICAL RECORD. IN FACT, DOCUMENTATION SHOWS THAT PLAINTIFF CONTINUALLY PURSUED THE STEROID INJECTIONS TO NO AVAIL. FURTHERMORE, TOMAR HAD INFORMED PLAINTIFF DURING AN APPOINTMENT IN APRIL 2021, THAT HE WAS "NO LONGER ALLOWED TO PERFORM STEROID INJECTIONS ON-SITE DUE TO RESTRICTIONS FROM THE REGIONAL MEDICAL DIRECTOR." THIS IS ALSO NOTED IN THE MEDICAL NOTATION ENTERED ON JANUARY 31, 2022. (SEE ATTACHMENT: "MEDICAL RECORD JANUARY 21 & 31")]

-TOMAR FALSELY STATED: "PT SUED THE PREVIOUS BOP FACILITY IN 2018 AND LOST AND NOW HAS SUED MY COLLEAGUE AND I FOR DELAY IN MEDICAL CARE, SO PLEASE EXERCISE CAUTION IN ALL OF YOUR CLINICAL DECISION MAKING WITH THIS HIGHLY LITIGIOUS INMATE."

[NOTE: PLAINTIFF ASSERTS THAT THIS CLAIM & STATEMENT ARE COMPLETELY FABRICATED BY TOMAR AND WAS FALSELY ENTERED INTO HIS MEDICAL RECORD WITH MALICIOUS INTENT. PLAINTIFF HAS NOT/DID NOT FILE ANY LAWSUIT AGAINST THE PREVIOUS BOP FACILITY IN 2018; THEREFORE, COULD NOT HAVE LOST AS TOMAR FALSELY ENTERED INTO PLAINTIFF'S MEDICAL RECORD. (SEE ATTACHMENT: "JANUARY 21 & 31 MEDICAL RECORD") ]

(14)

71) CONTINUED...

-TOMAR FALSELY STATED: "I THEN SCHEDULED HIM (PLAINTIFF) FOR AN ON-SITE SUBACROMIAL STEROID INJECTION IN 1/2021."

[NOTE: PLAINTIFF ASSERTS THAT: IF PLAINTIFF HAD  SUPPOSEDLY  REFUSED JOINT INJECTION AS TOMAR NOTED IN PLAINTIFF'S FILE, THEN WHY WOULD TOMAR SCHEDULE PLAINTIFF FOR AN INJECTION? **(SEE ATTACHMENT: "JANUARY 21 & 31 MEDICAL REC-ORD)**]

72) PLAINTIFF ASSERTS THAT TOMAR ENTERED THESE NOTATIONS INTO HIS FILE MALICIOUSLY, AS PART OF HIS RETALIATION FOR PLAINTIFF'S ONGOING COMPLAINT & LAWSUIT FILED AGAINST HIM. TOMAR'S ACTIONS  IN THIS INSTANCE · IS PART OF THE BEHAVIOR THAT SHOWS THAT HE WAS ACTING WITH DELIBERATE INDIFFERENCE TOWARDS PLAINTIFF'S MEDICAL NEEDS.

73) END OF MAY/JUNE 1, 2022, PLAINTIFF DISCOVERED THAT: DESPITE BEING INF-ORMED BY DR. TOMAR THAT "HE COULD NO LONGER ADMINISTER STEROID INJECTIONS ON-SITE DUE TO RESTRICTIONS FROM THE REGIONAL MEDICAL DIRECTOR; PLAINTIFF WAS SHOWN PROOF THAT TOMAR WAS STILL ADMINISTERING THE STEROID INJECTIONS AS RECENTLY AS FEBRUARY 28, 2022, AND WAS PLANNING TO SCHEDULE AND ADMIN-ISTER THE NEXT INJECTION IN JUNE OF 2022.

74) INMATE GERALD BEASLEY, INMATE NO: 03393-084, SHOWED PLAINTIFF PROOF INT HE FORM OF HIS MEDICAL RECORD, AS WELL AS EMAIL CORRESPONDANCE SHOW-ING THAT DR. TOMAR HAD RECENTLY GIVEN HIM A STEROID INJECTION. INMATE BEASLEY THEN EMAILED TOMAR INQUIRING IN REGARDS TO WHEN HE WOULD BE ABLE TO RECEIVE THE NEXT OF HIS 3 SHOTS; TOMAR RESPONDED: "I WILL BE ABLE TO PLACE THE NEXT INJECTION IN JUNE, ONCE I HAVE MORE OPENINGS IN MY SCHEDULE." (SIGNED WITH AN ELECTRONIC SIGNATURE FROM "DR. TOMAR". **(SEE ATTACHED: "BEASLEY STATEMENT & EMAIL CORRESPONDANCE")**.

75) TOMAR ACTED WITH DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS IN THIS INSTANCE BECAUSE TOMAR WAS DIRECTLY AWARE THAT PLAINTIFF HAD BEEN AWAITING INJECTIONS FOR 30 MONTHS (FROM DECEMBER 20, 2019, TO JUNE 2022)... TOMAR WAS DIRECTLY RESPONSIBLE FOR SCHEDULING OF THE INJECTIONS THAT WERE PART OF HIS PRESCRIBED TREATMENT PLAN... TOMAR DEPRIVED PLAINTIFF OF THE INJECTIONS AND WITHHELD TREATMENT OF PLAINTIFF'S·INJURY INTENTIONALLY EVEN THOUGH HE WAS STILL PROVIDING OTHER INMATES WITH THE SAME FORM OF TREATMENT.

76) PLAINTIFF ASSERTS THAT TOMAR'S ACTIONS WERE WITH MALICIOUS INTENT TO CAUSE HARM, AND/OR PAIN & SUFFERING TO PLAINTIFF AS RETALIATION AGAINST HIM FOR HIS ONGOING COMPLAINT/LAWSUIT. AS A DIRECT RESULT OF TOMAR'S ACTIONS, PLAINTIFF WAS SUBJECTED TO DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS WHICH IN TURN SUBJECTED HIM TO CRUEL & UNUSUAL PUNISHMENT IN VIOLA-TION OF HIS EIGHTH AMENDMENT CONSTITUTIONAL RIGHTS.

(15)

77) AS A DIRECT RESULT OF TOMAR'S ACTIONS, PLAINTIFF HAS BEEN FORCED TO ENDURE PAIN, SUFFERING, MENTAL ANGUISH, AND EMOTIONAL DISTRESS FOR 33 MONTHS AS A RESULT OF NOT RECEIVING ADEQUATE TREATMENT OF HIS SHOULDER INJURY IN A TIMELY, PROFESSIONAL, AND MEDICALLY ACCEPTABLE MANNER, DURING THE TIME THAT DEFENDANT TOMAR HAS BEEN HIS PRIMARY CARE PROVIDER.

78) TOMAR ACTED WITH A SUFFICIENTLY CULPABLE STATE OF MIND AS HE WAS AWARE OF PLAINTIFF'S INJURY, AND THE SUBSTANTIAL RISK TO PLAINTIFF'S HEALTH FROM LEAVING THAT INJURY UNTREATED.

79) HERE PLAINTIFF IS ALLEGING THAT DEFENDANT DEWAYNE HENDRIX ACTED WITH DELIBERATE INDIFFERENCE  TO HIS SERIOUS MEDICAL NEEDS BY FAILING TO TAKE ACTION BY TAKING THE NECESSARY STEPS TO ENSURE THAT PLAINTIFF RECEIVED ADEQUATE MEDICAL TREATMENT IN A TIMELY, PROFESSIONAL MANNER, AND IN ACCOR-DANCE WITH HIS RIGHTS IN ACCORDANCE WITH THE UNITED STATES CONSTITUTION.

80) AS WARDEN AND HEAD OF ADMINISTRATION AT FCI FORREST CITY (WHICH INCLU-DED THE MEDICAL DEPARTMENT), HENDRIX HAD AN OBLIGATION TO ENSURE THAT ALL DEPARTMENTS WITHIN HIS FACILITY WERE FULLY FUNCTIONAL  IN ORDER TO ENSURE THAT PLAINTIFF RECEIVED THE TREATMENT AND CARE THAT HE NEEDED IN ACCORD-ANCE WITH THE STANDARD OF CARE AND CONDUCT AS SET FORTH BY ARKANSAS LAW. THE WARDEN WAS RESPONSIBLE  AND/OR OBLIGATED TO ENSURE THAT PLAINTIFF WAS NOT BEING SUBJECTED TO UNREASONABLE·RISKS, UNNECESSARY PAIN & SUFFERING, OR THE RISK OF FURTHER INJURY AS A RESULT OF HIS SERIOUS INJURY BEING LEFT UNTREATED.

81) DEFENDANT HENDRIX BECAME AWARE OF PLAINTIFF'S INJURY, AS WELL AS HIS COMPLAINTS OF EIGHTH AMENDMENT CONSTITUTIONAL VIOLATIONS IN THE FORM OF INADEQUATE MEDICAL CARE, WHEN PLAINTIFF FILED NUMEROUS ADMINISTRATIVE REMEDIES; SPECIFICALLY BP-9'S WHICH HENDRIX WAS DIRECTLY RESPONSIBLE FOR REVIEWING AND RESPONDING TO.

82) INSTEAD OF PROPERLY INVESTIGATING THE MATTER HIMSELF, WARDEN HENDRIX APPOINTED AN ASSOCIATE WARDEN (ROSALEZ) TO INVESTIGATE THE MATTER AND INTERVENE IN AN ATTEMPT TO PREVENT THE MATTER FROM MOVING FORWARD.

83) JANUARY 2020, PLAINTIFF WAS CALLED TO THE WARDEN'S OFFICE TO SPEAK WITH A.W. ROSALEZ REGARDING THE MULTIPLE ADMINISTRATIVE REMEDIES THAT PLA-INTIFF HAD SUBMITTED TO WARDEN HENDRIX. ROSALEZ QUESTIONED PLAINTIFF REGARDING HIS "MOTIVE" FOR FILING THE COMPLAINTS PERTAINING TO HIS INJURY AND THE FACT THAT THE INJURY OCCURRED AT THE PREVIOUS FACILITY. ROSALEZ ATTEMPTED TO COERCE PLAINTIFF INTO "DROPPING THE COMPLAINTS", "GIVING HIS WORD" THAT HE WOULD GET THE MATTER RESOLVED. ROSALEZ INFORMED PLAINTIFF THAT HE WOULD SPEAK TO TOMAR AND INVESTIGATE TO FIND OUT WHAT'S GOING ON WITH THE TREATMENT. PLAINTIFF DECLINED ROSALEZ'S COERCION EFFORTS AND INSTEAD DECIDED TO PROCEED WITH HIS ADMINISTRATIVE REMEDY PROCESS.

[NOTE: PLAINTIFF ASSERTS THAT THIS IS PROOF OF HENDRIX'S KNOWLEDGE OF PLAINTIFF'S LACK OF TREATMENT TO HIS SHOULDER INJURY AS FAR BACK AS JANUARY 2020.]

84) JUNE 20, 2020, HENDRIX RESPONDED TO ONE OF PLAINTIFF'S ADMINISTRATIVE COMPLAINTS STATING: "YOU DID NOT ADHERE TO PLAN OF TREATMENT WHICH DOCTOR

(16)

84) CONTINUED... RECOMMENDED."

[NOTE: PLAINTIFF ASSERTS THAT THE ADMINISTRATIVE REMEDY EXPLAINED IN FULL DETAIL EVERYTHING THAT HE WAS EXPERIENCING AS A RESULT OF THE LACK OF TREATMENT TO HIS INJURY. RATHER THAN INTERVENING AND FIXING THE PROBLEM IN ORDER TO PUT AN END TO PLAINTIFF'S PAIN & SUFFERING, HENDRIX BLAMED PLAINTIFF FOR THE LACK OF TREATMENT BY STATING: "YOU DID NOT ADHERE TO TREATMENT PLAN." BEYOND THAT, HENDRIX TOOK NO FURTHER ACTION TO ENSURE THAT PLAINTIFF RECEIVED ADEQUATE TREATMENT. ]

85) HENDRIX'S RESPONSE WAS NOT BASED ON ANYTHING FACTUAL; AS THERE WAS ABSOLUTELY NO RECORD OF PLAINTIFF DOING ANYTHING THAT WOULD INDICATE THAT HE DID NOT FOLLOW THE TREATMENT PLAN. IN FACT, MEDICAL RECORDS, EMAIL CORR-ESPONDANCE BETWEEN PLAINTIFF & DR. TOMAR, AS WELL AS ADMINISTRATIVE REMED-IES ALL SHOW THAT PLAINTIFF WAS CONTINUALLY PURSUING TREATMENT (STEROID SHOTS, PAIN MANAGEMENT MEDICATION) FROM THE TIME OF HIS INITIAL APPOINTMENT IN DECEMBER 20, 2019, THRU JUNE 5, 2020, WHEN HENDRIX RESPONDED TO PLAIN-TIFF'S ADMINISTRATIVE REMEDY.

86) HENDRIX DIRECTLY INVOLVED HIMSELF IN THE VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS BY FALSELY STATING: "YOU DID NOT ADHERE TO TREATMENT PLAN."  ADEQUATE RESEARCH WOULD HAVE SHOWN HENDRIX THAT PLAINTIFF WAS IN FACT BEING DENIED/DEPRIVED OF ADEQUATE MEDICAL TREATMENT.

87) HENDRIX WAS AWARE THAT PLAINTIFF HAD BEEN AWAITING TREATMENT OF HIS SERIOUS INJURY, WHICH HE HAD BEEN SUFFERING  FROM FOR AN EXTENSIVE PERIOD OF TIME. AS WARDEN OF THE FACILITY, HENDRIX WAS RESPONSIBLE  FOR THE TREATMENT OR THE LACK THEREOF WHICH PLAINTIFF WAS RECEIVING. BY VIRTUE OF HIS POSITION, HE WAS RESPONSIBLE FOR THE SUBSTANTIAL RISK OF SERIOUS HARM AND FURTHER INJURY THAT PLAINTIFF WAS BEING SUBJECTED TO BY NOT RECEIVING TREATMENT IN A TIMELY MANNER.

[NOTE: PLAINTIFF ASSERTS THAT HENDRIX FAILED TO THOROUGHLY RESEARCH HIS MEDICAL RECORD TO SEE THAT NSAIDS (IBUPROFEN) WAS IN FACT THE [ONLY] TREATMENT THAT HAD BEEN ADMINISTERED IN A 6 MONTH TIME PERIOD. INSTEAD, HE BLAMED PLAINTIFF.

BECAUSE HE BLAMED PLAINTIFF FOR "NOT ADHERING TO THE TREATMENT PLAN" IT CAN BE EASILY ARGUED THAT HENDRIX [APPROVED] OF THE TREATMENT THAT PLAIN-TIFF WAS RECEIVING, WHICH WAS NOTHING MORE THAN IBUPROFEN.]

88) PLAINTIFF ASSERTS THAT BECAUSE HENDRIX FAILED TO TAKE ACTION AGAINST THE INADEQUATE TREATMENT THAT PLAINTIFF WAS BEING SUBJECTED TO, PLAINTIFF ASSERTS THAT HENDRIX [CONDONED] OR [TURNED A BLIND EYE] TO THE TREATMENT PLAN THAT PLAINTIFF WAS RECEIVING; THEREBY PERSONALLY INVOLVING HIMSELF AND ACTING WITH DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS, IN VIOLATION OF HIS EIGHTH AMENDMENT CONSTITUTIONAL RIGHTS.

89) HENDRIX CHOSE TO DISREGARD THE IMMINENT RISKS THAT PLAINTIFF WAS BEING SUBJECTED TO BY ALLOWING HIM TO BE DENIED/DEPRIVED OF THE "MINIMAL CIVIL-IZED MEASURE OF A BASIC LIFE NECESSITY" IN THE FORM OF ADEQUATE MEDICAL CARE/TREATMENT; THEREBY ENDANGERING PLAINTIFF'S HEALTH.

89) HENDRIX ACTED WITH A SUFFICIENTLY CULPABLE STATE OF MIND, AS HE WAS RESPONSIBLE FOR BEING WELL INFORMED OF WHAT WAS TAKING PLACE WITHIN HIS

(17)

89) CONTINUED... FACILITY (WHICH INCLUDED THE MEDICAL DEPARTMENT), AND FAILED TO TAKE CORRECTIVE ACTION, AND/OR THE NECESSARY STEPS TO ABATE OR RESOLVE THE PROBLEM.

90) AS A DIRECT RESULT OF HENDRIX'S ACTIONS, PLAINTIFF WAS FORCED TO ENDURE PAIN, SUFFERING, MENTAL ANGUISH, AND EMOTIONAL DISTRESS FOR 33 MONTHS DUE TO LACK OF TREATMENT TO HIS SHOULDER INJURY. HENDRIX'S LACK OF ACTION WAS UNACCEPTABLE IN ACCORDANCE WITH THE STANDARD OF CARE AND CONDUCT AS SET BY ARKANSAS LAW.

BIVENS ACTION-
**COUNT 2: CRUEL & UNUSUAL PUNISHMENT**

91) HERE PLAINTIFF IS ALLEGING THAT DEFENDANT MAHARAJ ALEJANDRO TOMAR SUB-JECTED HIM TO CRUEL & UNUSUAL PUNISHMENT BY DENYING AND/OR DEPRIVING PLAINTIFF OF ONE OF THE "MINIMAL CIVILIZED MEASURES OF A BASIC LIFE NECES-SITY" IN THE FORM OF ADEQUATE MEDICAL TREATMENT.

**TO ESTABLISH THE BASIS OF A CRUEL & UNUSUAL PUNISHMENT CLAIM AGAINST DEF-ENDANT TOMAR, HERE PLAINTIFF REPEATS AND REALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 40-78 AS IF FULLY STATED HEREIN.**

92) PLAINTIFF ASSERTS THAT TOMAR SUBJECTED HIM TO CRUEL & UNUSUAL PUNISH-MENT BY FAILING IN HIS DUTY TO PROVIDE ADEQUATE MEDICAL CARE FOR TREATM-ENT OF PLAINTIFF'S SHOULDER INJURY IN A TIMELY, PROFESSIONAL, AND MEDICA-LLY ACCEPTABLE MANNER; FORCING PLAINTIFF TO ENDURE PAIN, SUFFERING, MEN-TAL ANGUISH, AND EMOTIONAL DISTRESS FOR AN EXTENSIVE PERIOD OF TIME.

93) PLAINTIFF INITIALLY SAW TOMAR IN DECEMBER 2019, AFTER REQUESTING A SECOND OPINION OF A SURGERY CONSULTATION WHERE DR. SOKOLOFF DENIED SURGERY. TOMAR INFORMED PLAINTIFF THAT HE WOULD NOT SUBMIT A SECOND OPINION BECAUSE HE BELIEVED THAT THE BOP WOULD DENY IT ANYWAYS FOR FINANCIAL REASONS. TOMAR INFORMED PLAINTIFF THAT HE WOULD NOT SUBMIT A REQUEST FOR A SECOND OPINION UNTIL PLAINTIFF HAD GONE THROUGH THE RECOMMENDED TREATMENT PLAN WHICH CONSISTED OF NSAIDS, PHYSICAL THERAPY, AND STEROID INJECTIONS.

94) PLAINTIFF CONTINUED TO ENDURE THE PAIN & SUFFERING OF HIS INJURY, AS THE ONLY FORM OF TREATMENT HE WAS GIVEN WITHIN A 6 MONTH TIME PERIOD WAS IBUPROFEN.

95) MAY 29, 2020, DURING A SCHEDULED APPOINTMENT WITH TOMAR, PLAINTIFF QUESTIONED HIM REGARDING THE FALSE STATEMENTS THAT HE HAD ENTERED INTO HIS MEDICAL FILE. TOMAR BECAME VERY IRATE, UNPROFESSIONAL, AND ACCUSED PLAINTIFF OF "TRYING TO USE HIS WORDS IN ORDER TO BUILD A LAWSSUIT AGAI-NST HIM AND THE BOP." DURING THS APPOINTMENT, PLAINTIFF AGAIN REMINDED TOMAR THAT "THE IBUPROFEN THAT HE CONTINUED TO PRESCRIBE WAS CAUSING STOMACH PAIN & DISCOMFORT." [TOMAR AGAIN RENEWED PLAINTIFF'S PRESCRIPTION FOR IBUPROFEN.]

96) PLAINTIFF ASSERTS THAT TOMAR CONTINUED TO PRESCRIBE THE IBUPROFEN MALICIOUSLY BECAUSE HE WAS UPSET THAT PLAINTIFF HAD AN ONGOING COMPLAINT PENDING AGAINST HIM.

(18)

97) PLAINTIFF INFORMED TOMAR FACE TO FACE DURING THIS APPOINTMENT THAT THE IBUPROFEN CAUSED STOMACH PAIN; PLAINTIFF ALSO INFORMED TOMAR OF THIS BY EMAIL. THERE WAS NO LEGITIMATE REASON FOR TOMAR TO CONTINUE PLAINTIFF'S PRESCRIPTION FOR IBUPROFEN IF HE WAS AWARE THAT PLAINTIFF COULD NOT TAKE IT.

98) TOMAR KNEW THAT NSAIDS WERE PART OF THE PRESCRIBED TREATMENT PLAN IN ORDER TO HELP PLAINTIFF MANAGE THE PAIN OF HIS INJURY. TOMAR PRESCRIBED IBUPROFEN. BECAUSE PLAINTIFF COULD NOT TAKE THE PRESCRIBED MEDICATION, THAT MEANS THAT PLAINTIFF HAD NO PAIN MEDICATION AT ALL WHICH WAS FORCING PLAINTIFF TO ENDURE THE PAIN OF HIS INJURY WITH NO PAIN MANAGEMENT MEDIC- ATION. TOMAR CONTINUED TO PRESCRIBE PLAINTIFF WITH IBUPROFEN FOR AT LEAST 9 MONTHS (DECEMBER 20, 2019 THRU AUGUST 2020) UNTIL PLAINTIFF FILED A COMPLAINT REGARDING TOMAR'S CONTINUED RENEWAL OF A PAIN MEDICATION THAT HE COULD NOT TAKE.

99) TOMAR KNEW OF PLAINTIFF'S INJURY; KNEW OF PLAINTIFF'S NEED FOR PAIN MANAGEMENT MEDICATION; AND KNEW THAT PLAINTIFF COULD NOT TAKE THE IBUPRO- FEN THAT HE CONTINUED TO PRESCRIBE. BECAUSE TOMAR WAS AWARE OF THESE FACTORS, TOMAR ALSO KNEW OF THE UNNECESSARY & WANTON PAIN & SUFFERING THAT PLAINTIFF WAS BEING SUBJECTED TO. TOMAR TOOK NO ACTION TOWARDS RESOLVING THE MATTER BY PROVIDING PLAINTIFF WITH MEDICATION THAT HE COULD TAKE; THEREFORE, HE WAS DIRECTLY RESPONSIBLE FOR PLAINTIFF'S SUFFERING, THEREBY SUBJECTING HIM TO CRUEL & UNUSUAL PUNISHMENT IN VIOLATION OF HIS EIGHTH AMENDMENT CONSTITUTIONAL RIGHT.

100) TOMAR ACTED WITH A SUFFICIENTLY CULPABLE STATE OF MIND AS HE WAS AWARE OF THE IMMINENT RISKS TO PLAINTIFF'S HEALTH, SAFETY, AND WELL-BEING, AND THE PAIN & SUFFERING THAT HE ENDURED AS A RESULT OF HIS ACTIONS.

101) SEPTEMBER 10, 2020, PLAINTIFF EMAILED TOMAR IN REGARDS TO THE STATUS OF BEING SCHEDULED FOR SURGERY CONSULTATION.

102) SEPTEMBER 15, 2020, TOMAR RESPONDED TO PLAINTIFF'S EMAIL STATING: "I FORGOT TO ASK IF YOU WANTED THE STEROID INJECTION."

103) PLAINTIFF ASSERTS THAT TOMAR SUBJECTED HIM TO CRUEL & UNUSUAL PUNIS- HMENT BY INTENTIONALLY WITHHOLDING TREATMENT AND DISGUISING IT AS A "I FORGOT TO ASK" INCIDENT.

104) IN THE ENTRY MADE INTO PLAINTIFF'S MEDICAL FILE ON JANUARY 15, 2020, AT APPROXIMATELY 13:07PM... TOMAR NOTED: "b. PT SCHEDULED FOR SUBACROMIAL INJECTION IN MD2." **(SEE ATTACHMENT: "JANUARY 15, 2020 MEDICAL RECORD")**

HOWEVER, ON SEPTEMBER 15, 2020, AT APPROXIMATELY 9:27AM, TOMAR WAS STATING IN AN EMAIL: "I FORGOT TO ASK IF YOU WANTED THE STEROID INJECTION." **(SEE ATTACHMENT: SEPTEMBER 15TH EMAIL")**

105) THE "I FORGOT TO ASK" STATEMENT WAS EXACTLY 9 MONTHS AFTER HE HAD ALREADY MADE THE NOTATION IN PLAINTIFF'S FILE THE HE WAS "SCHEDULED FOR INJECTION."

106) PLAINTIFF HAD INFORMED TOMAR DURING THE APPOINTMENT ON DECEMBER 20, 2019, THAT HE **"WANTED THE INJECTION** IN ORDER TO PROCEED WITH THE PROCESS

(19)

106) CONTINUED... OF RECEIVING THE SECOND OPINION.

107) PLAINTIFF ASSERTS THAT TOMAR WAS INTENTIONALLY WITHHOLDING TREATMENT BECAUSE HE WAS AWARE THAT PLAINTIFF HAD AN ONGOING COMPLAINT PENDING AGAINST HIM FOR INADEQUATE MEDICAL TREATMENT. TOMAR HAD ALREADY KEPT PLAINTIFF WAITING 11 MONTHS TO BE SCHEDULED FOR AND RECEIVE AN INJECTION THAT WAS TO BE ADMINISTERED ON-SITE, AND NOW WAS SAYING "I FORGOT TO ASK IF YOU WANTED THE INJECTION." THIS STATEMENT FROM TOMAR WAS JUST ANOTHER EFFORT TO WITHHOLD TREATMENT FROM PLAINTIFF AND CONTINUE TO SUBJECT HIM TO UNNECESSARY & WANTON PAIN & SUFFERING AS A RESULT.

108) PLAINTIFF ASSERTS THAT TOMAR AGAIN INTENTIONALLY WITHHELD TREATMENT BY FAILING TO SCHEDULE INJECTIONS IN OCTOBER 2020...

OCTOBER 7, 2020, AT APPROXIMATELY 9:03AM, TOMAR TOLD PLAINTIFF IN AN EMAIL EXCHANGE: "DR. WOODARD HAS AN OPENING ON FRIDAY 10/30; WOULD YOU LIKE TO SCHEDULE YOUR INJECTION?" (SEE ATTACHMENT: "EMAIL FROM OCTOBER 7TH")... PLAINTIFF RESPONDED AFFIRMATIVELY, REQUESTING TO BE SCHEDULED FOR THE APPOINTMENT; HOWEVER, PLAINTIFF WAS NOT SCHEDULED FOR THE APPOINTMENT AND THE RESPONSE REQUESTING TO BE SCHEDULED "MYSTERIOUSLY" DOES NOT SHOW UP IN THE RECORD, WHICH IRONICALLY, TOMAR WAS RESPONSIBLE FOR.

109) PLAINTIFF ASSERTS THAT TOMAR SUBJECT HIM TO CRUEL & UNUSUAL PUNISHMENT, AND UNNECESSARY & WANTON PAIN & SUFFERING BY [INTENTIONALLY NOT SCHEDULING THE APPOINTMENT] TO RECEIVE THE STEROID INJECTION.

110) PLAINTIFF AGAIN ASSERTS THAT TOMAR'S ACTIONS WERE INTENTIONAL AS A WAY OF RETALIATING AGAINST PLAINTIFF FOR THE ONGOING COMPLAINT FOR INADEQUATE MEDICAL TREATMENT THAT PLAINTIFF WAS PURSUING AGAINST TOMAR.

111) TOMAR KNEW THAT PLAINTIFF HAD BEEN WAITING AN EXTENSIVE PERIOD OF TIME TO RECEIVE A STEROID INJECTION THAT [HE (TOMAR)] WAS RESPONSIBLE FOR SCHEDULING; YET AGAIN, PLAINTIFF WAS NOT SCHEDULED FOR THE APPOINTMENT. TOMAR FAILED TO SCHEDULE THE APPOINTMENT AND AS A RESULT OF THIS, TOMAR FAILED IN HIS DUTY TO ENSURE THAT PLAINTIFF RECEIVED THE NECESSARY MEDICAL CARE THAT HIS INJURY REQUIRED; THEREFORE, SUBJECTING PLAINTIFF TO CRUEL & UNUSUAL PUNISHMENT.

112) TOMAR ACTED WITH A SUFFICIENTLY CULPABLE STATE OF MIND AS HE WAS AWARE OF THE IMMINENT RISKS TO PLAINTIFF'S HEALTH, SAFETY, AND WELL-BEING AS A RESULT OF LEAVING HIS INJURY UNTREATED.

113) TOMAR AGAIN SUBJECTED PLAINTIFF TO CRUEL & UNUSUAL PUNISHMENT BY THREATENING TO "PUNCH PLAINTIFF'S HEAD THROUGH A BRICK WALL"...

MAY 11, 2022, PLAINTIFF REPORTED TO LIEUTENANT'S OFFICE TO REQUEST A STAFF WITNESS FOR A SCHEDULED APPOINTMENT WITH DR. TOMAR. (NO STAFF WITNESS WAS PROVIDED... LT. INFORMED THAT SHE WOULD CALL MEDICAL TO HAVE A WITNESS PRESENT.)

114) AT APPROXIMATELY 8:27AM, TOMAR CAME OUT AND CALLED PLAINTIFF FOR HIS APPOINTMENT; THERE WAS NO STAFF WITNESS PRESENT...

(20)

115) ----------- TOMAR THEN TOLD PLAINTIFF: "I WANT TO DO MY DUE DILIGENCE WITH YOU BECAUSE WE KNOW YOU'RE HIGHLY LITIGIOUS."

TOMAR THEN BEGAN LOOKING AT PLAINTIFF'S COMMISSARY RECEIPTS TO SEE IF ITEMS THAT WERE BEING PURCHASED WERE THE CAUSE OF ELEVATED CHOLESTEROL. TOMAR THEN SAID: "I SEE THAT NURSE LAMARRE NOTED THAT YOU MISSED AN APPOINTMENT WITH HER AND THAT YOU REFUSED TO SIGN A MEDICAL TREATMENT REFUSAL FORM." PLAINTIFF INFORMED TOMAR THAT HE "DIDN'T REFUSE TO SIGN ANYTHING, AND THE REASON FOR THE MISSED APPOINTMENT WAS BECAUSE THERE WAS  FOG COUNT DURING THE TIME THAT THE APPOINTMENT WAS SCHEDULED FOR." TOMAR THEN SAID: "YOU DIDN'T SHOW UP FOR AN APPOINTMENT WITH ME... YOU PEOPLE ARE ALWAYS MAKING EXCUSES WHY YOU CAN'T SHOW UP FOR SOMETHING." WHEN PLAINTIFF BEGAN TO EXPLAIN THAT THE DOOR TO MEDICAL WAS LOCKED BECAUSE OF A MEDICAL EMERGENCY IN THE SHU, THE DAY OF THE APPOINTMENT WITH HIM, TOMAR THEN SAID: "SHUT UP... I DIDN'T TELL YOU TO TALK." PLAINTIFF IMMEDIATELY SAID: "I NEED A WITNESS IN HERE, I'M NOT COMFORTABLE IN THIS APPOINTMENT WITH YOU." PLAINTIFF STOOD UP AND OPENED THE DOOR, TOMAR YELLED AT PLAINTIFF SAYING: "SIT YOUR ASS DOWN." PLAINTIFF CONTINUED WALKING OUT OF THE OFFICE WITH HIS HANDS IN THE AIR AND LOUDLY YELLED "I NEED A STAFF WITNES, I NEED A STAFF WITNESS."  TOMAR WAS FOLLOWING CLOSELY BEHIND AND AS TOMAR & PLAINTIFF APPROACHED THE END OF THE HALLWAY, TOMAR THREATENED PLAINTIFF SAYING: "I SHOULD PUNCH YOUR HEAD THROUGH THAT BRICK WALL."

[NOTE: THERE WAS ANOTHER INMATE PRESENT, SITTING AT THE END OF THE HALLWAY WHO SAW PLAINTIFF WALKING AWAY FROM TOMAR AND CLEARLY HEARD TOMAR THREATEN TO PUNCH PLAINTIFF'S HEAD THROUGH THE BRICK WALL."]

AS PLAINTIFF AND TOMAR APPROACHED THE FRONT OFFICE, TOMAR BURST THROUGH THE OFFICE DOOR WHERE THE NURSES WERE SITTING AND SAID: "THIS GUY NEEDS A STAFF WITNESS FOR HIS BULLSHIT HE HAS GOING." PLAINTIFF SPOKE UP AND SAID TO NURSE WALLIS: "THIS IS WHY I NEEDED A STAFF WITNESS, TOMAR JUST THREATENED TO PUNCH MY HEAD THROUGH THE BRICK WALL... I NEED TO SEE THE LIEUTENANT."

NURSE WALLIS PICKED UP THE PHONE AND IMMEDIATELY CALLED THE LT'S OFFICE... TOMAR ATTEMPTED TO CLOSE PLAINTIFF OUT IN THE HALLWAY WHERE HE WAS STILL STANDING NEXT TO PLAINTIFF; HOWEVER, PLAINTIFF ASKED THE NURSES IF THEY COULD LEAVE THE DOOR OPEN SO THEY COULD SEE IF ANYTHING HAPPENED.

WHILE PLAINTIFF WAS STANDING THERE WAITING FOR NURSE WALLIS TO GET THROUGH TO THE LIEUTENANT, TOMAR NOTICED THAT PLAINTIFF WAS BREATHING HEAVILY. TOMAR ASKED PLAINTIFF: "WHY ARE YOU BREATHING SO HARD, ARE YOU SCARED?" PLAINTIFF SAID: "NO... I'M BREATHING HARD BECAUSE YOU JUST THREATENED ME AND I DON'T LIKE TO BE THREATENED." TOMAR THEN SAID: "NO... YOU'RE BREATHING HARD BECAUSE YOU'RE NOT A MAN... YOU'RE JUST A PUNK KID WHO WRITES BULLSHIT ON PEOPLE, EVEN AFTER I TRIED TO HELP YOU WITH YOUR SHOULDER." PLAINTIFF RESPONDED: "YOU DIDN'T TRY TO HELP ME WITH ANYTHING."

TOMAR TOLD THE NURSES THAT THEY NEEDED TO SPEED UP WHATEVER THEY WERE GOING TO DO BECAUSE HE HAD TO GO TO THE SHU AND HE DIDN'T HAVE TIME FOR THIS SHIT. HE THEN TURNED AND WALKED OUT OF THE OFFICE. HE RETURNED A COUPLE MINUTES LATER AND PRESENTED PLAINTIFF WITH A DOCUMENT TO SIGN; PLAINTIFF TOLD TOMAR: "I'M NOT SIGNING ANYTHING." TOMAR THEN SLAPPED THE DOCUMENT ON THE DESK AND TOLD NURSE THOMAS TO SIGN AS A WITNESS TO PLAINTIFF'S REFUSAL TO SIGN. PLAINTIFF ASKED TOMAR FOR A COPY OF THE DOCUMENT; TOMAR SAID: "YOU CAN GO TO HELL." [SEE ATTACHED: "STATEMENT OF INCIDENT W/ TOMAR"]

(21)

116) PLAINTIFF ASSERTS THAT TOMAR SUBJECTED HIM TO CRUEL & UNUSUAL PUNIS-
HMENT IN THIS INSTANCE BY THREATENING THE USE OF PHYSICAL FORCE IN AN
ENVIRONMENT WHERE PLAINTIFF WAS COMING TO RECEIVE MEDICAL TREATMENT.

117) PLAINTIFF ASSERTS THAT TOMAR WAS UPSET WITH HIM BECAUSE OF THE LAW-
SUIT COMPLAINT THAT PLAINTIFF HAD FILED AGAINST HIM. TOMAR HAD TAKEN MANY
STEPS TO RETALIATE AGAINST PLAINTIFF (INTENTIONALLY WITHHOLDING TREATMENT;
INTENTIONALLY PRESCRIBING A MEDICATION THAT PLAINTIFF COULD NOT TAKE;);
THREATENING TO PUNCH PLAINTIFF WAS JUST ANOTHER RETALIATORY EFFORT AGAINST
PLAINTIFF BY TOMAR.

118) TOMAR'S ACTIONS WERE PART OF THE ONGOING BEHAVIOR THAT HE CONTINUED
TO EXHIBIT THAT SHOWED HIS INDIFFERENCE TOWARDS PLAINTIFF'S CONSTITUTIONAL
RIGHTS.

119) TOMAR ACTED WITH A SUFFICIENTLY CULPABLE STATE OF MIND AS HE WAS
COMPLETELY AWARE OF THE MALICE AND INTENT OF HIS INAPPROPRIATE CONDUCT
AND HIS THREATENING BEHAVIOR TOWARDS PLAINTIFF. AS A RESULT OF TOMAR'S
ACTIONS, PLAINTIFF WAS SUBJECTED TO CRUEL & UNUSUAL PUNISHMENT, MENTAL
ANGUISH, AND EMOTIONAL DISTRESS.


120) HERE PLAINTIFF IS ALLEGING THAT DEFENDANT DEWAYNE HENDRIX  INFLICTED,
PARTICIPATED IN, AND/OR ALLOWED PLAINTIFF TO BE SUBJECTED TO CRUEL & UN-
USUAL PUNISHMENT IN THE DENIAL OF THE "MINIMAL CIVILIZED MEASURE OF A
BASIC LIFE NECESSITY" IN THE FORM OF ADEQUATE MEDICAL TREATMENT OF HIS
SHOULDER INJURY.

**IN ORDER TO ESTABLISH THE BASIS OF A CRUEL & UNUSUAL PUNISHMENT CLAIM
AGAINST HENDRIX, HERE PLAINTIFF REPEATS AND RE-ALLEGES THE ALLEGATIONS AND
AVERMENTS OF PARAGRAPHS 79-90 AS IF FULLY STATED HEREIN.**

121) AS WARDEN AND HEAD OF ADMINISTRATION AT FCI FORREST CITY (WHICH INC-
LUDED THE MEDICAL DEPARTMENT), HENDRIX HAD A PROFESSIONAL OBLIGATION TO
ENSURE THAT ALL DEPARTMENTS WITHIN HIS FACILITY, WERE FULLY FUNCTIONAL
IN ORDER TO ENSURE THAT PLAINTIFF COULD RECEIVE THE TREATMENT AND CARE
THAT HE NEEDED IN ACCORDANCE WITH THE STANDARD OF CARE AND CONDUCT SET
FORTH BY THE STATE OF ARKANSAS AND THE UNITED STATES OF AMERICA. HENDRIX
WAS PERSONALLY RESPONSIBLE FOR ENSURING THAT PLAINTIFF WAS NOT SUBJECTED
TO UNREASONABLE RISKS, UNNECESSARY & WANTON PAIN & SUFFERING, OR RISK OF
FURTHER HARM OR INJURY. HENDRIX FAILED IN HIS DUTY BY ALLOWING PLAINTIFF'S
INJURY TO GO UNTREATED FOR AN UNACCEPTABLE AMOUNT OF TIME.

122) HENDRIX WAS DIRECTLY INFORMED OF PLAINTIFF'S INJURY THROUGH HIS
NUMEROUS ADMINISTRATIVE FILINGS PERTAINING TO THE COMPLAINT OF THE TREAT-
MENT THAT HE WAS RECEIVING FOR HIS SHOULDER INJURY.

123) HENDRIX RESPONDED AND BLAMED PLAINTIFF BY STATING: "YOU DID NOT ADHERE
TO RECOMMENDED TREATMENT PLAN." (RECORDS SHOWED THAT ALL TREATMENT OR
LACK THEREOF WAS BEYOND PLAINTIFF'S CONTROL.)

124) HENDRIX WAS AWARE THAT PLAINTIFF HAD BEEN AWAITING TREATMENT FOR AN
EXTENSIVE PERIOD OF TIME YET FAILED TOOK TAKE ANY CORRECTIVE ACTION. BY

(22)

124) CONTINUED... VIRTUE OF HIS POSITION, HENDRIX WAS RESPONSIBLE FOR THE ACTIONS OF TOMAR WHO CONTINUALLY PROLONGED, DENIED, DEPRIVED, AND INTENTIONALLY WITHHELD THE TREATMENT THAT PLAINTIFF'S INJURY REQUIRED. THESE ACTIONS SUBJECTED PLAINTIFF TO SUBSTANTIAL RISK TO HIS HEALTH AND FURTHER HARM AS A RESULT OF LEAVING HIS INJURY UNTREATED.

125) BECAUSE HENDRIX TOOK NO ACTION TO ENSURE THAT PLAINTIFF RECEIVED THE TREATMENT THAT HIS INJURY REQUIRED, HENDRIX IS PERSONALLY RESPONSIBLE FOR AND/OR PARTICIPATED IN THE CRUEL & UNUSUAL PUNISHMENT THAT PLAINTIFF WAS BEING SUBJECTED TO.

126) HENDRIX CHOSE TO DISREGARD THE IMMINENT RISKS TO PLAINTIFF'S HEALTH; THE PAIN & SUFFERING , MENTAL ANGUISH, AND EMOTIONAL DISTRESS THAT HE WAS CONTINUALLY BEING SUBJECTED TO, AND THE ONGOING DENIAL OF HIS RIGHT TO RECEIVE ADEQUATE MEDICAL TREATMENT THROUGH THE ACTIONS OF DEFENDANT TOMAR WHO WILLINGLY VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS.

127) HENDRIX ACTED WITH A SUFFICIENTLY CULPABLE STATE OF MIND AND WAS PERSONALLY INVOLVED IN THE DELAY, DENIAL, AND/OR DEPRIVATION OF ADEQUATE MEDICAL CARE OF PLAINTIFF'S INJURY.

128) THE ACTS AND OMISSIONS OF DEFENDANT'S TOMAR AND HENDRIX CAUSED PLAINTIFF UNNECESSARY & WANTON PAIN & SUFFERING FOR AN EXTENSIVE PERIOD OF TIME THAT HAS NOW AMOUNTED TO 33 MONTHS.

129) AS A MEDICAL PROFESSIONAL RESPONSIBLE FOR MEDICAL CARE & TREATMENT AT FCI FORREST CITY MEDIUM, DR. TOMAR OWED A DUTY TO THE PLAINTIFF TO POSSESS AND APPLY WITH REASONABLE CARE, THE DEGREE OF SKILL AND KNOWLEDGE ORDINARILY POSSESSED AND USED BY OTHERS IN THE SAME OR RELATED PROFESSION.

130) TOMAR BREACHED HIS DUTY TO PLAINTIFF BY DELAYING, DENYING, DEPRIVING, INTENTIONALLY WITHHOLDING THE NECESSARY MEDICAL CARE IN ORDER TO HAVE HIS INJURY TREATED.

131) WARDEN HENDRIX BREACHED HIS DUTY TO ENSURE THAT THE MEDICAL STAFF/ DEPARTMENT FULFILLED THEIR DUTIES.

132) THE BREACH OF THSE DUTIES AND FAILURES ON THE PART OF DR. TOMAR & WARDEN HENDRIX WAS THE PROXIMATE CAUSE OF THE UNDUE DELAY AND UNNECESSARY PAIN & SUFFERING ENDURED BY THE PLAINTIFF AS A RESULT OF THE INADEQUATE TREATMENT THAT HE RECEIVED.


FTCA ACTION-
COUNT 3: NEGLIGENCE

133) HERE PLAINTIFF IS ALLEGING THAT DEFENDANT UNITED STATES OF AMERICA, BY AND THROUGH THE ACTIONS OF IT'S EMPLOYEES, WAS NEGLIGENT IN THEIR DUTY TO PROVIDE PROPER PROCEDURES FOR ENSURING THAT MEDICAL INJURIES THAT ARE SERIOUS IN NATURE, WHICH REQUIRED IMMEDIATE AND/OR TIMELY ACTION, WERE ADEQUATELY HANDLED IN ACCORDANCE WITH THE PROPER STANDARD OF CARE AS SET

(23)

133) CONTINUED... FORTH BY ARKANSAS LAW AND THE RIGHTS AFFORDED TO PLAINT-IFF BY THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

134) AS A RESULT OF THE NEGLIGENCE OF DEFENDANT UNITED STATES OF AMERICA, BY AND THROUGH THE ACTIONS OF IT'S EMPLOYEES DEFENDANT TOMAT AND DEFENDANT HENDRIX, PLAINTIFF HAS BEEN SUBJECTED TO DELIBERATE INDIFFERENCE TOWARDS HIS MEDICAL NEEDS WHICH RESULTED IN CRUEL & UNUSUAL PUNISHMENT.

**IN ORDER TO ESTABLISH THE BASIS OF THIS CLAIM OF NEGLIGENCE, PLAINTIFF RE-PEATS AND RE-ALLEGES THE ALLEGATIONS AND AVERMENTS OF PARAGRAPHS 7-132, IN SUMMARY, AS IF FULLY STATED HEREIN.**

135) JULY 22, 2019, PLAINTIFF ARRIVED AT FCI FORREST CITY-MEDIUM. DURING THE INITIAL INTAKE, PLAINTIFF IMMEDIATELY INFORMED MEDICAL STAFF OF HIS EXISTING INJURY (A TORN ROTATOR CUFF) FOR WHICH HE WAS AWAITING SURGERY PRIOR TO BEING TRANSFERRED FROM THE PREVIOUS FACILITY.

136) OCTOBER 11, 2019, PLAINTIFF REPORTED TO A SCHEDULED APPOINTMENT WITH DNP HICKERSON REGARDING HIS INJURY AND THE AFOREMENTIONED SURGERY. HICKER-SON INFORMED PLAINTIFF THAT HE WOULD BE SCHEDULED TO SEE A LOCAL ORTHOPE-DIC SURGEON FOR AN UPDATED EVALUATION.

137) NOVEMBER 13, 2019, PLAINTIFF WAS TAKEN TO ORTHONOW, WHERE HE WAS DENIED SURGERY, AND INSTEAD RECOMMENDED FOR NSAIDS, STEROID INJECTIONS, AND PHYSICAL THERAPY.

138) NOVEMBER 17, 2019, PLAINTIFF FORMALLY REQUESTED A SECOND OPINION FROM A DIFFERENT PROVIDER.

139) DECEMBER 20, 2019, PLAINTIFF REPORTED TO A SCHEDULED APPOINTMENT WITH DNP HICKERSON; HICKERSON INFORMED PLAINTIFF THAT SHE WAS "UNFAMILIAR WITH THE PROCESS AND DID NOT KNOW HOW TO SUBMIT A REQUEST FOR A SECOND OPINION." HICKERSON THEN INTRODUCED PLAINTIFF TO DR. TOMAR.

140) WITHOUT A THOROUGH EVALUATION, TOMAR IMMEDIATELY AGREED WITH DR. SOKO-LOFF'S DENIAL OF SURGERY. PLAINTIFF BEGAN TO QUESTION TOMAR: "HOW CAN YOU SO EASILY DENY SURGERY, IF I (PLAINTIFF) ALREADY RECEIVED A RECOMMENDATI-ON FOR SURGERY?" TOMAR SAID: "IF I WERE TO SUBMIT A REQUEST FOR A SECOND OPINION, IT'S HIGHLY LIKELY  YOU WOULD GET THE SAME RESPONSE DENYING THE SURGERY." TOMAR THEN SAID: "LET ME LEVEL WITH YOU ON SOMETHING... THE ORTHO'S THEY'LL SEND YOU TO WILL DO EVERYTHING POSSIBLE TO AVOID GIVING YOU AN EXPENSIVE SURGERY." TOMAR THEN SAID: "THE ORTHO WHO PREVIOUSLY RECOMMENDED SURGERY WAS PROBABLY JUST MONEY HUNGRY." WHEN PLAINTIFF PRO-CEEDED TO ASK ANOTHER QUESTION, TOMAR SAID: "LOOK, I'M NOT GOING TO WASTE TIME GOING BACK AND FORTH WITH YOU ABOUT THIS; I'M NOT RECOMMENDING  YOU FOR A SECOND OPINION UNTIL YOU'VE DONE PHYSICAL THERAPY, NSAIDS, AND STEROID INJECTIONS; I'LL EVALUATE YOU AFTER SIX MONTHS. PLAINTIFF REMINDED TOMAR THAT HE (TOMAR) HAD JUST TOLD HIM (PLAINTIFF) THAT THE BOP DOES NOT OFFER NOR TAKE INMATES OUT FOR PHYSICAL THERAPY. TOMAR THEN GAVE PLAINTIFF A PAMPHLET FROM THE INTERNET AND TOLD HIM THAT: "YOU'LL HAVE TO FIGURE OUT THE PHYSICAL THERAPY ON YOUR OWN."

[NOTE: DURING THIS APPOINTMENT, PLAINTIFF AGREED TO RECEIVE THE STEROID INJECTIONS IN ORDER TO PROCEED WITH THE PROCESS OF RECEIVING A SECOND OPINION.]

(24)

141) JANUARY 2020, PLAINTIFF FILED AN ADMINISTRATIVE REMEDY, DISAGREEING WITH TOMAR'S COURSE OF ACTION FOR TREATMENT OF PLAINTIFF'S SHOULDER INJURY.

142) PLAINTIFF WAS CALLED TO WARDEN'S OFFICE TO SPEAK TO A.W. ROSALEZ IN REGARDS TO THE MULTIPLE ADMINISTRATIVE REMEDIES THAT HE HAD FILED TO WARDEN HENDRIX. ROSALEZ ATTEMPTED TO COERCE PLAINTIFF INTO "DROPPING THE COMPLAINTS", GIVING HIS WORD THAT HE WOULD GET THE MATTER RESOLVED. ROSALEZ THEN INFORMED PLAINTIFF THAT HE WOULD SPEAK TO TOMAR TO INVESTIGATE THE MATTER.

143) AFTER PLAINTIFF'S COMPLAINT WAS BROUGHT TO THE ATTENTION OF TOMAR, TOMAR MADE NOTATIONS IN PLAINTIFF'S MEDICAL FILE WHERE HE ENTERED SEVERAL FALSE STATEMENTS.

144) JANUARY 25, 2020, PLAINTIFF EMAILED HICKERSON AGAIN, INFORMING HER THAT HIS SHOULDER WAS "IN A GREAT DEAL OF PAIN AND INTERFERING WITH HIS ABILITY TO SLEEP."

145) FEBRUARY 7, 2020, PLAINTIFF RECEIVED A RESPONSE FROM HICKERSON STATING: "I HAVE PLACED A FOLLOW-UP IN THE COMPUTER FOR YOU TO SEE ANOTHER M.D."

146) MAY 5, 2020, PLAINTIFF HAD STILL NOT RECEIVED ANY FORM OF TREATMENT OTHER THAN IBUPROFEN.

147) MAY 29, 2020, AFTER SPECIFICALLY REQUESTING TO SEE A DIFFERENT DOCTOR DUE TO TOO MANY DISAGREEMENTS WITH TOMAR, AS WELL AS THE FALSE STATEMENTS THAT TOMAR HAD ENTERED INTO HIS MEDICAL FILE... PLAINTIFF WAS AGAIN SCHEDULED FOR AN APPOINTMENT WITH TOMAR.

148) DURING THIS APPOINTMENT, PLAINTIFF QUESTIONED TOMAR REGARDING THE FALSE STATEMENTS AND REMINDED TOMAR THAT "THE IBUPROFEN THAT HE CONTINUED TO PRESCRIBE WAS CAUSING STOMACH PAIN." PLAINTIFF AGAIN LEFT THE APPOINTMENT WITH A RENEWED PRESCRIPTION FOR [IBUPROFEN].

149) JUNE 5, 2020, PLAINTIFF RECEIVED A RESPONSE FROM WARDEN HENDRIX STATING: "YOU DID NOT ADHERE TO THE PLAN OF TREATMENT WHICH DOCTOR RECOMMENDED."

150) PLAINTIFF CONTINUED THE ADMINISTRATIVE REMEDY PROCESS DUE TO LACK OF TREATMENT.

151) SEPTEMBER 10, 2020, PLAINTIFF EMAILED TOMAR IN REGARDS TO THE STATUS OF BEING SCHEDULED FOR SURGERY CONSULTATION.

152) SEPTEMBER 15, 2020, 9:27AM, TOMAR STATED IN AN EMAIL EXCHANGE: "I FORGOT TO ASK IF YOU WANTED THE STEROID INJECTION."

153) OCTOBER 2020, PLAINTIFF WAS GOING BACK AND FORTH IN AN EMAIL EXCHANGE WITH TOMAR... TOMAR INFORMED PLAINTIFF THAT: "TREATMENT WOULD BE ON HOLD TWO TO THREE MONTHS DUE TO ORTHO CLINICS BEING CLOSED FOR NON-EMERGENT PATIENTS."

154) OCTOBER 7, 2020, AT APPROXIMATELY 9:03AM, TOMAR TOLD PLAINTIFF IN AN EMAIL EXCHANGE: "DR. WOODARD HAS AN OPENING ON FRIDAY 10/30; WOULD YOU

(25)

154) CONTINUED... LIKE ME TO SCHEDULE YOUR INJECTION?"

[NOTE: PLAINTIFF RESPONDED AFFIRMATIVELY, REQUESTING TO BE SCHEDULED FOR THE APPOINTMENT; HOWEVER, PLAINTIFF WAS NOT SCHEDULED FOR THE INJECTION.]

155) APRIL 2021, DURING A FOLLOW-UP APPOINTMENT WITH TOMAR, PLAINTIFF WAS INFORMED THAT "STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE; A REQUEST WOULD HAVE TO BE SUBMITTED FOR PLAINTIFF TO BE TAKEN TO AN OUT-SIDE CLINIC TO RECEIVE AN INJECTION."

TOMAR AGAIN ACCUSED PLAINTIFF OF "TRYING TO GATHER INFORMATION FOR A LAW-SUIT"... TOMAR THREATENED TO HAVE PLAINTIFF LOCKED UP FOR INSOLENCE FOR ACCUSING HIM (TOMAR) OF LYING. PLAINTIFF INFORMED TOMAR THAT THE FALSE STATEMENTS THAT HE WAS ACCUSING HIM OF WERE WELL DOCUMENTED IN HIS MEDI-CAL FILE AND EASY TO DISPROVE.

156) JANUARY 31, 2022, TOMAR ENTERED ADDITIONAL FALSE NOTATIONS INTO PLAINTIFF'S MEDICAL FILE.

157) APRIL 28, 2022, PLAINTIFF WAS TAKEN TO OUTISDE APPOINTMENT AT 'REGI-ONLA ONE HEALTH', LOCATED IN MEMPHIS, TENNESSEE. PLAINTIFF WAS SEEN BY AN ORTHOPEDIC SPECIALIST NAMED DR. NAVEEN PATTISAPU. DR. PATTISAPU HAD REVIEWED PLAINTIFF'S MEDICAL RECORDS AND MRI NOTES AND STATED: "GIVEN HIS ACTIVE LIFESTYLE AND HIS YOUNG AGE, I THINK HE WOULD BENEFIT FROM INTERVENTION (**SURGERY**). WE WILL GET AN MR ARTHROGRAM TO BETTER CHARACTER-IZE HIS INJURY. WE HAVE SENT A CONSULTATION TO INTERVENTIONAL RADIOLOGY FOR ASSISTANCE WITH THIS. **WE WILL CONTACT HIM TO [SCHEDULE SURGERY]** AFTER WE GET THIS BACK."

AMONG EVERYTHING ELSE THAT DR. PATTISAPU SAID, HE ALSO STATED: "THERE'S NO LEGITIMATE REASON THAT YOU (PLAINTIFF) SHOULD NOT HAVE RECEIVED THIS SURGERY."

158) MAY 11, 2022, PLAINTIFF REPORTED TO THE LIEUTENANT'S OFFICE TO REQUEST A STAFF WITNESS FOR HIS APPOINTMENT WITH DR. TOMAR. LT. MCCALLI-STER INFORMED THAT SHE WOULD CONTACT MEDICAL TO HAVE ONE OF THE MEDICAL SUPERVISOR'S SIT IN ON THE APPOINTMENT

159) MAY 11, 2022, APPROXIMATELY 8:10AM, PLAINTIFF REPORTED TO MEDICAL FOR HIS SCHEDULED APPOINTMENT WITH DR. TOMAR... PLAINTIFF INFORMED STAFF MEMBER NURSE WALLIS THAT THE LIEUTENANT WAS SUPPOSED TO CALL TO MAKE SURE I HAVE A STAFF WITNESS; NURSE WALLIS SAID: "I'LL CHECK ON IT."

160) AT APPROXIMATELY 8:27AM, TOMAR CAME OUT AND CALLED PLAINTIFF FOR HIS APPOINTMENT... **THERE WAS NO STAFF WITNESS PRESENT.** AS THE APPOINTMENT BEGAN TO PROGRESS, TOMAR TOLD PLAINTIFF: "SHUT UP... I DIDN'T TELL YOU TO TALK." PLAINTIFF IMMEDIATELY INFORMED TOMAR "I'M NOT COMFORTABLE IN THIS APPOINTMENT WITH YOU; I NEED A STAFF WITNESS IN HERE." PLAINTIFF STOOD UP TO WALK OUT OF THE OFFICE... TOMAR YELLED AT PLAINTIFF: "SIT YOUR ASS DOWN." PLAINTIFF CONTINUED WALKING AWAY FROM TOMAR WITH HIS HANDS IN THE AIR... TOMAR THREATENED PLAINTIFF SAYING: "I SHOULD PUNCH YOUR HEAD THROUGH THAT BRICK WALL."

[NOTE: THERE WAS ANOTHER INMATE PRESENT WHO HEARD TOMAR THREATEN PLAIN-TIFF.]

(26)

155A) MID 2021 (UNKNOWN MONTH): PLAINTIFF DISCOVERED THAT OTHER INMATES WERE STILL RECEIVING STEROID INJECTIONS (FROM DR. TOMAR AND OTHER MEDICAL STAFF MEMBERS) DESPITE THE FACT THAT PLAINTIFF HAD BEEN TOLD THAT STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE DUE TO RESTRICTIONS FROM THE REGIONAL DIRECTOR.

INMATE SHELTON BERNARD HOPKINS III HAD RECENTLY RECEIVED INJECTIONS IN HIS BACK; INMATE PAUL IVY HAD RECENTLY RECEIVED INJECTION(S) IN HIS HAND. BOTH INMATES RECEIVED THESE INJECTIONS IMMEDIATELY BEFORE **[& AFTER]** TOMAR HAD INFORMED PLAINTIFF THAT "STEROID INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE."

161) PLAINTIFF FOLLOWED TOMAR INTO THE FRONT OFFICE AND INFORMED NURSE WALLIS THAT "TOMAR JUST THREATENED TO PUNCH MY HEAD THROUGH THE BRICK WALL... I NEED TO SEE THE LIEUTENANT."

162) END OF MAY/JUNE 1, 2022, PLAINTIFF DISCOVERED AND WAS SHOWN PROOF THAT TOMAR WAS STILL ADMINISTERING THE STEROID INJECTIONS, DESPITE TELLING PLAINTIFF THAT "INJECTIONS COULD NO LONGER BE ADMINISTERED ON-SITE."

163) AS OF TODAY'S DATE, SPETEMBER 28, 2022, PLAINTIFF HAS NOT RECEIVED A SINGLE STEROID INJECTION; PLAINTIFF'S PAIN MEDICATION WAS SWITCHED FROM IBURPROFEN TO NAPROXEN (ONLY AFTER PURSUING THE ISSUE THROUGH THE ADMIN-ISTRAIVE PROCESS); PLAINTIFF WAS TAKEN FOR A "SECOND OPINION" WHERE THE ORTHOPEDIC SURGEON RECOMMENDED SURGERY AND STATED THAT "THERE WAS NO LEGITIMATE REASON PLAINTIFF SHOULD NOT HAVE RECEIVED THE SURGERY ALREADY."

164) THE ACTS AND OMISSIONS OF DEFENDANT'S TOMAR & HENDRIX HAVE CAUSED PLAINTIFF UNNECESSARY & WANTON PAIN & SUFFERING; IN THAT HE HAS BEEN FORCED TO ENDURE PAIN AND CONTINUE PERFORMING HIS DAILY ACTIVITIES WHILE SUFFERING FROM A SEVERE SHOULDER INJURY. THEIR ACTIONS DENIED, DEPRIVED, DELAYED, PLAINTIFF THE NECESSARY TREATMENT THAT HIS INJURY REQUIRED.

165) AS PERSONS RESPONSIBLE FOR PLAINTIFF'S HEALTH, SAFETY, AND WELL-BEING, DR. TOMAR AND WARDEN HENDRIX OWED A DUTY TO PLAINTIFF TO POSSESS AND APPLY WITH REASONABLE CARE, THE DEGREE OF SKILL AND KNOWLEDGE ORDINARILY POSS-ESSED AND USED BY OTHER'S IN THEIR PROFESSION.

166) THE HEALTH SERVICES DEPARTMENT AT FORREST CITY MEDIUM (WHICH WARDEN HENDRIX WAS RESPONSIBLE FOR BY VIRTUE OF HIS POSITION) AS AN INSTITUTION RESPONSIBLE FOR PROVIDING MEDICAL TREATMENT AND CARE, OWED A DUTY TO USE ORDINARY CARE TO FURNISH PLAINTIFF WITH THE TYPE OF CARE AND ATTENTION REASONABLY REQUIRED BY HIS PHYSICAL CONDITION.

167) THE RESPONSIBLE STAFF MEMBERS (DEFENDANT'S TOMAR AND HENDRIX) BREACHED THEIR PROFESSIONAL DUTIES TO PLAINTIFF BY FAILING TO ENSURE THAT HE RECE-IVED THE NECESSARY TREATMENT TO HIS INJURY, IN A TIMELY, PROFESSIONAL, AND MEDICALLY ACCEPTABLE MANNER, AND IN ACCORDANCE WITH THE STANDARD OF CARE SET FORTH BY ARKANSAS LAW AND THE UNITED STATES OF AMERICA.

168) THE BREACH OF DUTIES AND FAILURES ON THE PART OF DR. TOMAR AND WARDEN HENDRIX, WERE THE PROXIMATE CAUSATION OF THE UNNECESSARY AND WANTON DISCOMFORT, PAIN & SUFFERING, AND MENTAL ANGUISH ENDURED BY PLAINTIFF FOR AN UNACCEPTABLE AMOUNT OF TIME.

169) UNITED STATES OF AMERICA, AS OVERSEER TO THE FEDERAL BUREAU OF PRISONS, WAS RESPONSIBLE FOR THE ACTIONS OF IT'S PERSONNEL (WARDEN HENDRIX & DR. TOMAR), AND THEREFORE, SHOULD BE HELD RESPONSIBLE FOR ALL CALLOUS INDIFF-ERENCE TO PLAINTIFF'S MEDICAL NEEDS AND CONSTITUTIONAL RIGHTS.

170) THE RESPONSIBLE STAFF MEMBERS OF THE FORREST CITY MEDICAL DEPARTMENT, AS WELL AS PRISON ADMINISTRATION, WERE EMPLOYEES OF THE FEDERAL BUREAU OF PRISONS, AND WERE ACTING IN THEIR OFFICIAL CAPACITIES; THEREFORE, THE UNITED STATES OF AMERICA IS PROPERLY NAMED AS THE DEFENDANT OF COUNT 3.

(27)

171) PLAINTIFF SEEKS COMPENSATORY AND PUNITIVE DAMAGES IN AN AMOUNT TO BE PROVEN AND DETERMINED AT TRIAL.

172) PLAINTIFF RESERVES THE RIGHT TO AMEND THIS COMPLAINT AND ANY FURTHER PLEADINGS.

WHEREFORE, PLAINTIFF SEEKS AN AWARD OF COMPENSATORY AND PUNITIVE DAMAGES, AND FOR ALL OTHER RELIEF TO WHICH HE IS ENTITLED BY LAW. FURTHERMORE, PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

DATED THIS 28TH DAY OF SEPTEMBER, 2022.


RICHARD JULIUS DONALDSON

*Exhibit A*
*Jan 15, 2020*
*Medical Record*

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: DONALDSON, RICHARD JULIUS | | Reg #: | 16787-040 |
| Date of Birth: 07/18/1979 | Sex:    M    Race:  BLACK | Facility: | FOM |
| Encounter Date: 12/20/2019 17:57 | Provider:  Tomar, M. MD | Unit: | C03 |

Physician - Consultation encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT  1**          **Provider:** Tomar, M. MD

**Chief Complaint:** ORTHOPEDIC/RHEUMATOLOGY

**Subjective:** NP referred pt after Ortho declined RC surgery based on imaging and exam. Please note that this is a late entry, but no medications or diagnostic studies were necessary after the OV. OV was on 12/20/19. HPI began in 2017 in BOP setting when pt was unloading boxes during work and suffered abrupt right shoulder pain while forcefully abducting shoulder. Pain was persistent for the next few months and even steroid injection did not reduce pain) Pt did not receive PT after injury per chart review, but he resumed weightlifting exercises that in his estimation as a personal trainer thought would be beneficial (upside-down push-ups, standard push ups, dips). In 12/2018 while at FCI Herlong, Ortho consult recommended RC repair. After interview, review of the chart revealed that he refused surgery at Herlong FCI in 2/2019, but he remarked during interview that surgery was interrupted due transfer to another facility. Due to persistent pain, MRI was ordered in 2019, which demonstrated RT shoulder impingement with a grade 2 tear. Subsequent Ortho consult (Dr. Sokolov) in 11/2019 reviewed MRI and performed a physical exam but he favored non-surgical treatment with PT and steroid injections without evidence of complete tear. Pt is confused about the disagreement between both Ortho consults and due to persistent pain that has not responded to conservative therapy, he requested my opinion.
A/P: SEE BELOW

**Pain:** Yes

**Pain Assessment**

| | |
|---|---|
| **Date:** | 01/15/2020 13:07 |
| **Location:** | Shoulder-Right |
| **Quality of Pain:** | Aching |
| **Pain Scale:** | 6 |
| **Intervention:** | IBU, PT handout, no weightlifting |
| **Trauma Date/Year:** | |
| **Injury:** | |
| **Mechanism:** | |
| **Onset:** | 1-5 Years |
| **Duration:** | 6-12 Hours |
| **Exacerbating Factors:** | resting on shoulder, physical activity |
| **Relieving Factors:** | rest, IBU |
| **Reason Not Done:** | |
| **Comments:** | |

**COMPLAINT  2**          **Provider:** Tomar, M. MD

**Chief Complaint:** ORTHOPEDIC/RHEUMATOLOGY

**Subjective:** A/P: RT impingement syndrome- Pt remarked that he did not receive PT regimen to practice shortly after injury, but he volunteered that he proceeded with rather forceful shoulder muscle-building exercises. Today, my exam also was specific for this Dx, so pt does not have new pathology. Furthermore, pain has been stable for the past year. Pt reasons that this issue developed in the BOP and should be definitively addressed before release in 8/2023. He also plans to be gainfully employed shortly after release and he does not want to spend the first

| Inmate Name: | DONALDSON, RICHARD JULIUS | | | | Reg #: | 16787-040 |
|---|---|---|---|---|---|---|
| Date of Birth: | 07/18/1979 | Sex: | M | Race: BLACK | Facility: | FOM |
| Encounter Date: | 12/20/2019 17:57 | Provider: | Tomar, M. MD | | Unit: | C03 |

few months recovering from surgery (he is a personal trainer and needs to have full use of arms). Review of the literature agreed with Dr. Sokolov to favor non-surgical approach: "surgical intervention (most often arthroscopic decompression) failed to produce clinically significant reductions in pain at one- and two-year follow-up or improvements in shoulder function at one-year follow-up compared with conservative treatment" per AAOS. However in young pts who need full use of shoulder constitutes a relative indication for surgery, which applies to this pt who wants to resume work as a personal trainer upon release.

a. I provided pt PT from AAOS to do BID and instructed pt to avoid all shoulder weightlifting exercises other than PT. Provided MDS form for him to use rubber bands for PT.

b. Pt scheduled for subacromial injection in MD2.

c. Will confer with Dr. Ballom if another ortho consult is permitted. F/u in February 2020.

d. IBU refill

e. enroll in CCC Ortho to provide IBU

f. Pt generated sick call, so he will be charged for OV.

| **Pain:** | Yes |
|---|---|

**Pain Assessment**

| **Date:** | 01/15/2020 13:07 |
|---|---|
| **Location:** | Shoulder-Right |
| **Quality of Pain:** | Aching |
| **Pain Scale:** | 6 |
| **Intervention:** | IBU, PT handout, no weightlifting |
| **Trauma Date/Year:** | |
| **Injury:** | |
| **Mechanism:** | |
| **Onset:** | 1-5 Years |
| **Duration:** | 6-12 Hours |
| **Exacerbating Factors:** | resting on shoulder, physical activity |
| **Relieving Factors:** | rest, IBU |
| **Reason Not Done:** | |
| **Comments:** | |

## OBJECTIVE:

### ROS Comments

per Hx

### Exam Comments

RT Shoulder: No gross abnormal anatomy, no AC ligament tenderness, no bicipital groove pain, no pain with compression of humerus and passive ROM, POS pain with abduction, NEG pain with internal rotation, NEG push-off testing.

## ASSESSMENT:

Impingement syndrome of shoulder, M7540 - Current - *right, work related*

## PLAN:

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Specialty Procedure - In house | 02/14/2020 | 02/14/2020 | Routine | No | |
| Subtype: | | | | | |
| Specialty Procedure On-Site | | | | | |

| Inmate Name: | DONALDSON, RICHARD JULIUS | | | | Reg #: | 16787-040 |
|---|---|---|---|---|---|---|
| Date of Birth: | 07/18/1979 | Sex: | M | Race: BLACK | Facility: | FOM |
| Encounter Date: | 12/20/2019 17:57 | Provider: Tomar, M. MD | | | Unit: | C03 |

**Reason for Request:**

Please see Note 12/20/19: In short, pt has RT shoulder impingement syndrome and is a good candidate for subacromial steroid treatment per Ortho consult 11/2019.

**Provisional Diagnosis:**

RT impingement syndrome

## Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Follow-up | 02/24/2020 00:00 | Physician 03 |

discuss ortho consult after Dr. Ballom responds

## Disposition:

Will Be Placed on Callout

## Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 01/15/2020 | Counseling | Exercise | Tomar, M. | Verbalizes Understanding |

- discontinue shoulder weightlifting
- only use shoulder for light activities and PT
- IBU BID as needed

**Copay Required:** Yes         **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Tomar, M. MD on 01/15/2020 16:00

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | DONALDSON, RICHARD JULIUS | | | | Reg #: | 16787-040 |
| Date of Birth: | 07/18/1979 | Sex: | M | Race:BLACK | Facility: | FOM |
| Note Date: | 12/20/2019 13:31 | Provider: | Hickerson, M. DNP, | | Unit: | C03 |

Admin Note - General Administrative Note encounter performed at Health Services.
**Administrative Notes:**

### ADMINISTRATIVE NOTE   1          Provider: Hickerson, M. DNP, ACNP-BC

IM reported to HSU for his scheduled call out at 1300.
He had placed request to speak with a provider stating "I went to ortho and I want a 2nd opinion because I was supposed to get surgery before I transferred here".
This APP then reviewed the informal Ortho consult from 11/13/19:
"reviewed MRI, tear does not need surgery in my opinion, REFUSES exercise, NSAIDS, injections, F/U PRN, repeat MRI PRN location of pain not c/w ....".
This APP then decided to request onsite MD to meet with IM and see patient for further discussion and plan of care. Onsite MD then began OV with IM at that time. Please see onsite MD notes for further evaluation/tx plan.

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 12/20/2019 | 13:33 FOX | 98.1 | 36.7 | | Hickerson, M. DNP, ACNP-BC |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 12/20/2019 | 13:33 FOX | 97 | | | Hickerson, M. DNP, ACNP-BC |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 12/20/2019 | 13:33 FOX | 16 | Hickerson, M. DNP, ACNP-BC |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 12/20/2019 | 13:33 FOX | 131/83 | | | | Hickerson, M. DNP, ACNP-BC |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 12/20/2019 | 13:33 FOX | 100 | Room Air | Hickerson, M. DNP, ACNP-BC |

**Height:**

| Date | Time | Inches | Cm | Provider |
|---|---|---|---|---|
| 12/20/2019 | 13:33 FOX | 69.0 | 175.3 | Hickerson, M. DNP, ACNP-BC |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 12/20/2019 | 13:33 FOX | 159.0 | 72.1 | | Hickerson, M. DNP, ACNP-BC |

**Copay Required:**No          **Cosign Required:** No
**Telephone/Verbal Order:**  No

Completed by Hickerson, M. DNP, ACNP-BC on 12/20/2019 13:34

Requested to be reviewed by  Tomar, M. MD.

Review documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | DONALDSON, RICHARD JULIUS | | | | Reg #: | 16787-040 |
| Date of Birth: | 07/18/1979 | Sex: | M. | Race:BLACK | Facility: | FOM |
| Note Date: | 01/21/2022 09:44 | Provider: | Tomar, M. (MAT) MD | | Unit: | C03 |

Admin Note - Orders encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   1          Provider:   Tomar, M. (MAT) MD

1. A/P: RT impingement syndrome- Pt was scheduled for Orthopedics assessment but outside consultant cancelled on 1/6/22. Re-written order is below.

2. A/P: FH- Pt still has not signed refusal for Crestor despite being told to do so by email per NP. Will schedule follow-up to obtain refusal due to extreme litigation risk.

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Orthopedist | 02/04/2022 | 02/04/2022 | Routine | No | |

Subtype:

Offsite Appt, non-surgical

Reason for Request:

Pt suffered a second degree right supraspinatus tendon tear in 2018 in BOP custody documented with MRI. First Ortho f/u in 2018 recommended surgical repair, but patient refused to undergo surgery (refusal form documented in chart) for unclear reasons. Pt then transferred to Forrest City FCI in late 2019 when Dr. Sokolow (second Orthopedics opinion) opted for conservative management with PT, NSAIDS and subacromial steroid injection which was contrary to pt's desire for surgery (pt refused joint injection and refusal form in chart). I obtained permission from Regional Medical Director for a rare 3rd Orthopedics consultation which was approved in early 2020 but specialists could not accept his non-emergent case stemming from pandemic. I then scheduled him for an on-site subacromial steroid injection in 1/2021, but later I learned that Forrest City staff is not authorized to provide these procedures on-site per Regional Medical Director. Pt maintains that he no longer has employed strenuous upper body exercise since early 2020, but in all of my exams since 11/2019, pt has had demonstrated impressive shoulder, biceps and triceps muscle bulk which suggests persistent strenuous use of shoulder muscles despite his periodic reports of chronic, debilitating pain. Pt sued the previous BOP facility in 2018 and lost and now has sued my colleague and I for delay of care, so please exercise caution in all of your clinical decision-making with this highly litigious inmate. With the history above, it remains unclear if patient has a sincere desire to seek a surgery to relieve pain or if his motivation is by secondary gain. Please call if you have questions: MA Tomar, MD, Clinical Director (870) 494-4200 ext 3093 M-F 0730-1600.
A/P: RT Shoulder impingement- Next and final Orthopedics consultation should be with a new Orthopedist. **********Please send MRI report and CD from 2019 and schedule with Ortho group other than Dr. Sokolow*********

Provisional Diagnosis:

RT Shoulder impingement

**Discontinued Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Orthopedist | 08/23/2021 | 01/07/2022 | Routine | No | |

Subtype:

Offsite Appt, non-surgical

Reason for Request:

| | | | | |
|---|---|---|---|---|
| Inmate Name: | DONALDSON, RICHARD JULIUS | | Reg #: | 16787-040 |
| Date of Birth: | 07/18/1979 | Sex:  M    Race:BLACK | Facility: | FOM |
| Note Date: | 01/21/2022 09:44 | Provider:  Tomar, M. (MAT) MD | Unit: | C03 |

As discussed in detailed notes from 12/20/2019 and 1/2021, pt suffered a second degree LT supraspinatus tendon tear in 2018 in BOP custody. First Ortho f/u in 2018 after injury recommended surgical repair, but procedure was not done. Pt then transferred to FOM in 2019 when Dr. Sokolow opted for conservative management with PT which was contrary to pt's desire for surgery. I obtained permission from RMD for 3rd Orthopedics consultation which was approved. However, this non-urgent consultation could not be completed in 2020 due to specialists not accepting non-emergent cases stemming from pandemic. I then scheduled him for an on-site subacromial steroid injection in 1/2021, but later I learned that FOM staff is not authorized to provide these procedures on-site per RMD. Shoulder pain has been stable despite pt no longer employing strenuous exercise.

A/P: RT Shoulder impingement- The next step is to schedule pt for off-site Orthopedics. Therefore, next and final Orthopedics consultation should be with a new Orthopedist.

**********Please send MRI report and CD from 2019 and schedule with Ortho group other than Dr. Sokolow*********

Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Follow-up | 01/28/2022 00:00 | Physician 03 |

Pt has refused to take Crestor, so please obtain a signed refusal form. Pt is extremely litigious. Once obtained, please cancel Crestor.

Refusal form sent to I/m via I/M's mail.

**Disposition:**

Follow-up in 1 Week


**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Tomar, M. (MAT) MD on 01/21/2022 10:13

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | DONALDSON, RICHARD JULIUS | | | Reg #: | 16787-040 |
| Date of Birth: | 07/18/1979 | Sex: M   Race:BLACK | | Facility: | FOM |
| Note Date: | 01/31/2022 12:36 | Provider: Tomar, M. (MAT) MD | | Unit: | C03 |

Admin Note - Orders encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   1          Provider:  Tomar, M. (MAT) MD

Sunday night I informed LTs to hold on today's Ortho consultation trip because pt was scheduled to go to Dr. Sokolow, but plan was to go to another Ortho group as discussed in consultation request. I resubmitted consultation below and contacted the trip coordinator to have him scheduled at ROH Ortho or another group that can bill NaphCare.

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Orthopedist | 02/28/2022 | 02/28/2022 | Routine | No | |

Subtype:

Offsite Appt, non-surgical

Reason for Request:

Pt suffered a second degree right supraspinatus tendon tear in 2018 in BOP custody documented with MRI. First Ortho f/u in 2018 recommended surgical repair, but patient refused to undergo surgery (refusal form documented in chart) for unclear reasons. Pt then transferred to Forrest City FCI in late 2019 when Dr. Sokolow (second Orthopedics opinion) opted for conservative management with PT, NSAIDS and subacromial steroid injection which was contrary to pt's desire for surgery (pt refused joint injection and refusal form in chart). I obtained permission from Regional Medical Director for a rare 3rd Orthopedics consultation which was approved in early 2020 but specialists could not accept his non-emergent case stemming from pandemic. I then scheduled him for an on-site subacromial steroid injection in 1/2021, but later I learned that Forrest City staff is not authorized to provide these procedures on-site per Regional Medical Director. Pt maintains that he no longer has employed strenuous upper body exercise since early 2020, but in all of my exams since 11/2019, pt has had demonstrated impressive shoulder, biceps and triceps muscle bulk. Please call if you have questions: MA Tomar, MD, Clinical Director (870) 494-4200 ext 3093 M-F 0730-1600.

A/P: RT Shoulder impingement- Next and final Orthopedics consultation should be with a new Orthopedist. **********Please send MRI report and CD from 2019 and schedule with Ortho group other than Dr. Sokolow*********

**Discontinued Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|
| Orthopedist | 02/04/2022 | 02/04/2022 | Routine | No | |

Subtype:

Offsite Appt, non-surgical

Reason for Request:

Pt suffered a second degree right supraspinatus tendon tear in 2018 in BOP custody documented with MRI. First Ortho f/u in 2018 recommended surgical repair, but patient refused to undergo surgery (refusal form documented in chart) for unclear reasons. Pt then transferred to Forrest City FCI in late 2019 when Dr. Sokolow (second Orthopedics opinion) opted for conservative management with PT, NSAIDS and subacromial steroid injection which was contrary to pt's desire for surgery (pt refused joint injection and refusal form in chart). I obtained permission from Regional Medical Director for a rare 3rd Orthopedics consultation which was approved in early 2020 but specialists could not accept his non-emergent case

| Inmate Name: | DONALDSON, RICHARD JULIUS | | | Reg #: | 16787-040 |
|---|---|---|---|---|---|
| Date of Birth: | 07/18/1979 | Sex: M  Race:BLACK | | Facility: | FOM |
| Note Date: | 01/31/2022 12:36 | Provider: Tomar, M. (MAT) MD | | Unit: | C03 |

stemming from pandemic. I then scheduled him for an on-site subacromial steroid injection in 1/2021, but later I learned that Forrest City staff is not authorized to provide these procedures on-site per Regional Medical Director. Pt maintains that he no longer has employed strenuous upper body exercise since early 2020, but in all of my exams since 11/2019, pt has had demonstrated impressive shoulder, biceps and triceps muscle bulk which suggests persistent strenuous use of shoulder muscles despite his periodic reports of chronic, debilitating pain. Pt sued the previous BOP facility in 2018 and lost and now has sued my colleague and I for delay of care, so please exercise caution in all of your clinical decision-making with this highly litigious inmate. With the history above, it remains unclear if patient has a sincere desire to seek a surgery to relieve pain or if his motivation is by secondary gain. Please call if you have questions: MA Tomar, MD, Clinical Director (870) 494-4200 ext 3093 M-F 0730-1600.
A/P: RT Shoulder impingement- Next and final Orthopedics consultation should be with a new Orthopedist. **********Please send MRI report and CD from 2019 and schedule with Ortho group other than Dr. Sokolow*********

Provisional Diagnosis:

RT Shoulder impingement

**Copay Required:** No          **Cosign Required:** No

**Telephone/Verbal Order:** No

Completed by Tomar, M. (MAT) MD on 01/31/2022 12:41

## FOM/InmateToHealthSvcs - 29d8b675-d287-4cce-a26a-0acd7603f6d7

**From:**    FOM/InmateToHealthSvcs

**To:**    ~^!DONALDSON, ~^!RICHARD JULIUS

**Date:**    10/7/2020 9:03 AM

**Subject:**    29d8b675-d287-4cce-a26a-0acd7603f6d7

Mr. Donaldson,

Gauging your response to a steroid injection during the time that Ortho clinics are closed for non-emergent cases is a wise use of lost time and also will help the Orthopedic Surgeon to plan care. I thought that since we have another 2-3 months before I could send you out, you could try a shoulder injection. Dr. Woodard has an opening on Friday 10/30; would you like me to schedule you for the injection?

Regards,

Dr. Tomar

>>> ~^!"DONALDSON, ~^!RICHARD JULIUS" <16787040@inmatemessage.com> 10/5/2020 10:57 AM >>>

To: Dr. Tomar

Inmate Work Assignment: Education

_Maharaj Alejandro Tomar, MD_    10/07/20

Maharaj Alejandro Tomar, MD    FCC Forrest City, AR-MED.

***ATTENTION***

Please cut and paste the message indicator below into the subject line; only this indicator can be in the subject line.

29d8b675-d287-4cce-a26a-0acd7603f6d7

Your response must come from the departmental mail box. Responses from personal mailboxes WILL NOT be delivered to the inmate.

***Inmate Message Below***

Dr. Tomar, I've literally been waiting 11 months now for a follow-up, from the time you initially spoke with me in regards to steroid injections and my request for Ortho Consultation. I was waiting on this process to proceed long before the pandemic began; and now you're telling me the process is going to be prolonged 'even further' because of the "non-emergency status" of the appointment.

Why are steroid injections "required" before I can be submitted for another consultation for a surgery that has already been recommended? The injections weren't a requirement prior to the scheduling of my first consultation and surgery... so why is it a requirement this time? It seems to me that it's a pointless obstacle being put in place in order to deliberately interfere with the process of me receiving the required surgery.

My shoulder has now been injured for 43 months... The pain does not go away and has in fact gotten a lot worse. My range of motion for using my shoulder has also gotten more restricted. How are steroid injections going to help a 43 month old injury that's gradually getting worse?

(-----Medium Health Services on 9/15/2020 9:27 AM wrote:)

> _Exhibit B:_

Mr. Donaldson,

_September 15, 2020 Email..._

✳ <u>I forgot to ask if you want the steroid injection.</u> I read in my previous note that you wanted to discuss risks and benefits of the injection and then try the injection. If that approach did not work, orthopedic consultation would be next. Overall it would be very beneficial for the Orthopedic surgeon to assess your clinical course after receiving the steroid injection. Please let me know soon so that I could place the appropriate orders.
Regards,
Dr. Tomar

>>> ~^!"DONALDSON, ~^!RICHARD JULIUS" <16787040@inmatemessage.com> 9/10/2020 11:19 AM >>>
To: Dr. Tomar
Inmate Work Assignment: Education

I'm emailing to follow-up on the status of my shoulder injury and moving forward with being scheduled for another surgery consultation. I've been waiting several months to receive a follow-up appointment and I haven't heard anything from anyone in regards to the status of things!

ATTACHMENT: STATEMENT OF INCIDENT WITH DEFENDANT TOMAR

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

------------------------------------------------------------------------

FROM: 16787040
TO:
SUBJECT: Statement of Incident:
DATE: 05/19/2022 08:13:09 PM


I, Richard Julius Donaldson, Register #:16787-040; an inmate currently being housed at Federal Correctional Institution Forrest City-Medium; located in Forrest City, Arkansas... Do hereby swear under the penalties of perjury, to the truth of the following statement:

On Wednesday May 11, 2022, at approximately 7:35am, I reported to the lieutenant's office to speak with a lieutenant regarding my scheduled appointment with Dr. Tomar. Upon my arrival, I spoke with Lt. McCallister to request a staff witness to sit in during my appointment with Dr. Tomar which was scheduled for 8:00am that morning. Lt. McCallister first told me to "ask a nurse to do it." I informed the Lt. that on a previous occasion, the nurses informed me that they "did not want to be involved in whatever it was that required me to need a staff witness."

Lt. McCallister then asked me "why do you need a staff witness?" I informed her that I have pending litigation (a civil lawsuit) pending in court against Dr. Tomar and he tends to show indifference towards me whenever I see him. Lt. McCallister then told me to "ask the head of medical, Poynter or Ray to sit in for my appointment with Dr. Tomar. I told her "I have no authority to get them to sit in on anything and probably won't even be able to speak with them." Lt. McCallister told me that she would call medical to speak with one of the administrators to let them know that I need a staff witness during my appointment with Tomar.

At approximately 8:10am, I reported to medical for my appointment. I immediately informed HIT Wallis that Lt. McCallister said she was going to call to inform someone that I need a staff witness during my appointment with Dr. Tomar. HIT Wallis said that she would check on it.

At approximately 8:27am, Dr. Tomar came out and called my name for my appointment; there was no staff witness present. Once in his office, Tomar began looking at his computer screen to see what was the reason I was scheduled for an appointment with him. he said that it was a "chronic care follow-up regarding my high cholesterol and my medication." Tomar then said "I want to do my due diligence with you because we know you're highly litigious."

Tomar then began looking at my commissary receipts to see if the items I buy were the cause of my elevated cholesterol. Tomar then said "I see that Nurse Lamarre noted that you missed an appointment with her and that you refused to sign a Medical Treatment Refusal form." I informed Tomar "I didn't refuse to sign anything and the reason I missed the appointment with Nurse Lamarre was because there was a fog count during the time the appointment was scheduled for." Tomar then said "You also didn't show up for an appointment with me"... You people are always making excuses why you can't show up for something." When I began to explain that the door to medical was locked because of a medical emergency, the day of the appointment with him, Tomar then said "Shut up, I didn't tell you to talk." I immediately said "I need a witness in here, I'm no longer comfortable in this appointment with you." I stood up and opened the door... Tomar yelled at me and said "Sit your ass down." I continued walking out with my hands up in the air and yelled loudly "I need a staff witness, I need a staff witness." Tomar was following closely behind me as we approached the end of the hallway... When he was right there next to me, he threatened me and said "I should punch your head through that brick wall."

[THERE WAS ANOTHER INMATE SITTING THERE IN THE BACK WAITING AREA WHO SAW ME WALKING AWAY FROM DR. TOMAR WITH MY HANDS IN THE AIR AND HEARD TOMAR THREATEN TO PUNCH MY HEAD THROUGH THE WALL.]

As we approached the front office area, Dr. Tomar burst into the office where the nurses were and said "This guy needs a staff witness for his bullshit he has going." I spoke up and said "Ms. Wallis, this is why I said I need a staff witness, Tomar just threatened to punch my head through the brick wall... I need to see the lieutenant."

HIT Wallis picked up the phone to call the lieutenant's office; She was put on hold... Tomar attempted to close me out in the hallway where he was still standing but I asked the nurses to leave the door open so they could see if anything happened. While I was standing there waiting for Ms. Wallis to call the lieutenant, Tomar noticed that I was breathing heavily while. Tomar asked me "Why are you breathing so hard, are you scared?" I said no, I'm breathing hard because you just threatened me and I don't like to be threatened." Tomar then said "No, you're breathing hard because you're not a man"... "you're a punk kid who writes bullshit on people; even after I tried to help you with your shoulder." I said "You didn't try to help me with anything."

Tomar told the nurses that they needed to speed up whatever they were going to do because he had to go to the SHU. He then turned and walked out of the office. Tomar returned a couple minutes later and presented me with a document to sign; I told him

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

"I'm not signing anything." He then slapped the document on the desk and told Ms. Thomas to sign as a witness that I was refusing to sign the document. After she was done signing, I asked Tomar if I could have a copy of the document... Tomar said "You can go to hell."

[HIT MS. THOMAS WAS WITHIN 2 FEET AWAY... HIT MS. WALLIS & XRAY TECH MRS. GIBSON WERE BOTH WITHIN 6 T( 8 FEET AWAY AND THEREFORE ABLE TO HEAR THE VERBAL EXCHANGE BETWEEN MYSELF AND TOMAR.]

Ms. Wallis asked me if I still needed the lieutenant to come... I told her "No, I'm done here with Tomar but you can send me to the lieutenant's office so I can speak to Lt. McCallister about what just happened." Tomar walked away and Ms. Wallis escorted me to the lieutenant's office a few minutes later.

When I arrived at the Lt's office I waited outside while Ms. Wallis went in (took my ID card with her) to brief the lieutenant on what had just transpired. A few minutes later, Lt. McCallister came out to speak with me with Ms. Wallis standing there, to listen to my account of what happened with Tomar. I explained to her what happened and that Dr. Tomar threatened to "punch my head through the brick wall." After explaining to the lieutenant what happened, she informed me that, because the incident involved a threat from a staff member, she would have to get the SIS Lieutenant to come down to speak with me. A few minutes later, Lieutenant McCallister came back and informed me that the Lt. was busy in a meeting but would call me out later.

At approximately 1:15pm, the C-3 unit officer told me that I needed to report to the lieutenant's office. I spoke with Lt. Andrews and informed him of what transpired that morning between myself and Dr. Tomar. Lt. Andrews informed me that he would speak to the Associate Warden regarding the matter!

The actions of Dr. Maharaj Alejandro Tomar were a violation of my rights; specifically my Eighth Amendment Constitutional Right to be free from cruel and unusual punishment, threats to my health, safety & well-being, and retaliation for defending my rights in accordance with the laws pursuant to the United States Constitution.

Requested Relief:

I AM SEEKING TO HOLD DR. MAHARAJ ALEJANDRO TOMAR [AND THOSE WHO GOVERN HIM], FULLY RESPONSIBLE AND ACCOUNTABLE FOR THE UNPROFESSIONAL MISCONDUCT AND THE THREAT MADE AGAINST ME. I WILL PURSUE THIS MATTER TO THE FULLEST EXTENT OF THE FEDERAL BUREAU OF PRISONS' ADMINISTRATIVE REMEDY PROCESS, AS WELL AS THE FULL EXTENT OF THE FEDERAL COURT OF LAW, AS THIS MATTER IS NOW RELEVANT TO THE CIVIL CASE WHICH IS CURRENTLY PENDING IN COURT.

Respectfully submitted this 24 day of May, 2022.

Richard Julius Donaldson
Register #: 16787-040

ADDITIONAL RELIEF: IN ADDITION TO THE ABOVE REQUESTED RELIEF, I AM ALSO REQ-
UESTING TO BE PERMENANTLY REMOVED FROM THE CARE OF DR. MAHARAJ ALEJANDRO
TOMAR, PREVENTING HIM FROM SEEING ME FOR ANY REASON, SCHEDULING FOR APPOINT-
MENTS, OR ANY FURTHER COMMUNICATION, AS IT IS A CLEAR CONFLICT OF INTEREST
AND I DO NOT WANT TO BE SUBJECTED TO HIS THREAT, VIOLENT OUTBURSTS, OR
RETALIATION EFFORTS.

UNICOR FEDERAL PRISON INDUSTRIES, INC.
LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

**From:** DONALDSON, RICHARD J. _____ 16787-040 ____ CHARLIE-3 ____ FORREST CITY
           **LAST NAME, FIRST, MIDDLE INITIAL** ____ **REG. NO.** ____ **UNIT** ____ **INSTITUTION**

**Part A– INMATE REQUEST** THIS BP-9 ADMINISTRATIVE REMEDY IS BEING SUBMITTED·IN REGARDS TO THE ATTACHED STATEMENT.

I RICHARD JULIUS DONALDSON, SWEAR TO THE TRUTH OF THE ATTACHED STATEMENT, IN ACCORDANCE WITH THE PENALTIES OF PERJURY PURSUANT TO 28 U.S.C. § 1746...

                              **\*\*\*SEE ATTACHED STATEMENT\*\*\*>>>

JUNE 9, 2022 _____                 RICHARD J. DONALDSON
     **DATE**                          **SIGNATURE OF REQUESTER**

**Part B– RESPONSE**

                              JUN 2 2 2022
                              RECEIVED

_____                    _____
     **DATE**                          **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: 11-24217-F1
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                        CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____    _____    _____    _____
              **LAST NAME, FIRST, MIDDLE INITIAL**      **REG. NO.**     **UNIT**    **INSTITUTION**

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

---

FROM: 16787040
TO:
SUBJECT: Statement of Incident:
DATE: 05/19/2022 08:13:09 PM

I, Richard Julius Donaldson, Register #:16787-040; an inmate currently being housed at Federal Correctional Institution Forrest City-Medium; located in Forrest City, Arkansas... Do hereby swear under the penalties of perjury, to the truth of the following statement:

On Wednesday May 11, 2022, at approximately 7:35am, I reported to the lieutenant's office to speak with a lieutenant regarding my scheduled appointment with Dr. Tomar. Upon my arrival, I spoke with Lt. McCallister to request a staff witness to sit in during my appointment with Dr. Tomar which was scheduled for 8:00am that morning. Lt. McCallister first told me to "ask a nurse to do it." I informed the Lt. that on a previous occasion, the nurses informed me that they "did not want to be involved in whatever it was that required me to need a staff witness."

Lt. McCallister then asked me "why do you need a staff witness?" I informed her that I have pending litigation (a civil lawsuit) pending in court against Dr. Tomar and he tends to show indifference towards me whenever I see him. Lt. McCallister then told me to "ask the head of medical, Poynter or Ray to sit in for my appointment with Dr. Tomar. I told her "I have no authority to get them to sit in on anything and probably won't even be able to speak with them." Lt. McCallister told me that she would call medical to speak with one of the administrators to let them know that I need a staff witness during my appointment with Tomar.

At approximately 8:10am, I reported to medical for my appointment. I immediately informed HIT Wallis that Lt. McCallister said she was going to call to inform someone that I need a staff witness during my appointment with Dr. Tomar. HIT Wallis said that she would check on it.

At approximately 8:27am, Dr. Tomar came out and called my name for my appointment; there was no staff witness present. Once in his office, Tomar began looking at his computer screen to see what was the reason I was scheduled for an appointment with him. he said that it was a "chronic care follow-up regarding my high cholesterol and my medication." Tomar then said "I want to do my due diligence with you because we know you're highly litigious."

Tomar then began looking at my commissary receipts to see if the items I buy were the cause of my elevated cholesterol. Tomar then said "I see that Nurse Lamarre noted that you missed an appointment with her and that you refused to sign a Medical Treatment Refusal form." I informed Tomar "I didn't refuse to sign anything and the reason I missed the appointment with Nurse Lamarre was because there was a fog count during the time the appointment was scheduled for." Tomar then said "You also didn't show up for an appointment with me"... You people are always making excuses why you can't show up for something." When I began to explain that the door to medical was locked because of a medical emergency, the day of the appointment with him, Tomar then said "Shut up, I didn't tell you to talk." I immediately said "I need a witness in here, I'm no longer comfortable in this appointment with you." I stood up and opened the door... Tomar yelled at me and said "Sit your ass down." I continued walking out with my hands up in the air and yelled loudly "I need a staff witness, I need a staff witness." Tomar was following closely behind me as we approached the end of the hallway... When he was right there next to me, he threatened me and said "I should punch your head through that brick wall."

[THERE WAS ANOTHER INMATE SITTING THERE IN THE BACK WAITING AREA WHO SAW ME WALKING AWAY FROM DR. TOMAR WITH MY HANDS IN THE AIR AND HEARD TOMAR THREATEN TO PUNCH MY HEAD THROUGH THE WALL.]

As we approached the front office area, Dr. Tomar burst into the office where the nurses were and said "This guy needs a staff witness for his bullshit he has going." I spoke up and said "Ms. Wallis, this is why I said I need a staff witness, Tomar just threatened to punch my head through the brick wall... I need to see the lieutenant."

HIT Wallis picked up the phone to call the lieutenant's office; She was put on hold... Tomar attempted to close me out in the hallway where he was still standing but I asked the nurses to leave the door open so they could see if anything happened. While I was standing there waiting for Ms. Wallis to call the lieutenant, Tomar noticed that I was breathing heavily while. Tomar asked me "Why are you breathing so hard, are you scared?" I said no, I'm breathing hard because you just threatened me and I don't like to be threatened." Tomar then said "No, you're breathing hard because you're not a man"... "you're a punk kid who writes bullshit on people; even after I tried to help you with your shoulder." I said "You didn't try to help me with anything."

Tomar told the nurses that they needed to speed up whatever they were going to do because he had to go to the SHU. He then turned and walked out of the office. Tomar returned a couple minutes later and presented me with a document to sign; I told him

TRULINCS 16787040 - DONALDSON, RICHARD JULIUS - Unit: FOM-C-C

--------------------------------------------------------------------------------

"I'm not signing anything." He then slapped the document on the desk and told Ms. Thomas to sign as a witness that I was refusing to sign the document. After she was done signing, I asked Tomar if I could have a copy of the document... Tomar said "You can go to hell."

[HIT MS. THOMAS WAS WITHIN 2 FEET AWAY... HIT MS. WALLIS & XRAY TECH MRS. GIBSON WERE BOTH WITHIN 6 T 8 FEET AWAY AND THEREFORE ABLE TO HEAR THE VERBAL EXCHANGE BETWEEN MYSELF AND TOMAR.]

Ms. Wallis asked me if I still needed the lieutenant to come... I told her "No, I'm done here with Tomar but you can send me to the lieutenant's office so I can speak to Lt. McCallister about what just happened." Tomar walked away and Ms. Wallis escorted me to the lieutenant's office a few minutes later.

When I arrived at the Lt's office I waited outside while Ms. Wallis went in (took my ID card with her) to brief the lieutenant on what had just transpired. A few minutes later, Lt. McCallister came out to speak with me with Ms. Wallis standing there, to listen to my account of what happened with Tomar. I explained to her what happened and that Dr. Tomar threatened to "punch my head through the brick wall." After explaining to the lieutenant what happened, she informed me that, because the incident involved a threat from a staff member, she would have to get the SIS Lieutenant to come down to speak with me. A few minutes later, Lieutenant McCallister came back and informed me that the Lt. was busy in a meeting but would call me out later.

At approximately 1:15pm, the C-3 unit officer told me that I needed to report to the lieutenant's office. I spoke with Lt. Andrews and informed him of what transpired that morning between myself and Dr. Tomar. Lt. Andrews informed me that he would speak to the Associate Warden regarding the matter!

The actions of Dr. Maharaj Alejandro Tomar were a violation of my rights; specifically my Eighth Amendment Constitutional Right to be free from cruel and unusual punishment, threats to my health, safety & well-being, and retaliation for defending my rights in accordance with the laws pursuant to the United States Constitution.

Requested Relief:

I AM SEEKING TO HOLD DR. MAHARAJ ALEJANDRO TOMAR [AND THOSE WHO GOVERN HIM], FULLY RESPONSIBLE AND ACCOUNTABLE FOR THE UNPROFESSIONAL MISCONDUCT AND THE THREAT MADE AGAINST ME. I WILL PURSUE THIS MATTER TO THE FULLEST EXTENT OF THE FEDERAL BUREAU OF PRISONS' ADMINISTRATIVE REMEDY PROCESS, AS WELL AS THE FULL EXTENT OF THE FEDERAL COURT OF LAW, AS THIS MATTER IS NOW RELEVANT TO THE CIVIL CASE WHICH IS CURRENTLY PENDING IN COURT.

Respectfully submitted this 24 day of May, 2022.

Richard Julius Donaldson
Register #: 16787-040

ADDITIONAL RELIEF: IN ADDITION TO THE ABOVE REQUESTED RELIEF, I AM ALSO REQUESTING TO BE PERMENANTLY REMOVED FROM THE CARE OF DR. MAHARAJ ALEJANDRO TOMAR, PREVENTING HIM FROM SEEING ME FOR ANY REASON, SCHEDULING FOR APPOINTMENTS, OR ANY FURTHER COMMUNICATION, AS IT IS A CLEAR CONFLICT OF INTEREST AND I DO NOT WANT TO BE SUBJECTED TO HIS THREAT, VIOLENT OUTBURSTS, OR RETALIATION EFFORTS.

RECEIPT - ADMINISTRATIVE REMEDY


DATE: JUNE 28, 2022


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      FORREST CITY MED FCI

TO  : RICHARD JULIUS DONALDSON, 16787-040
      FORREST CITY MED FCI    UNT: UNIT C-3    QTR: C03-118U


THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID      : 1124217-F1
DATE RECEIVED  : JUNE 22, 2022
RESPONSE DUE   : JULY 12, 2022
SUBJECT 1      : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2      :



**FEDERAL CORRECTIONAL COMPLEX, FORREST CITY, AR**
**PART B-RESPONSE TO REQUEST FOR ADMINISTRATIVE REMEDY**
**1124217-F1**

This is in response to your Request for Administrative Remedy received on June 22, 2022. Specifically, you state you were threatened with physical harm by a staff member in Health Services.

For relief, you are requesting the staff member be held accountable for his actions. You also request your treatment while at this facility not be assigned to the staff member.

The Federal Bureau of Prisons as well as the Federal Correctional Complex Forrest City, Arkansas, is tasked with maintaining a safe and secure environment for staff and inmates. All allegations of this nature are taken seriously and will be forwarded to the appropriate office for review.

If you are not satisfied with this decision, you may appeal to the Regional Director at Federal Bureau of Prisons, South Central Regional Office, U.S. Armed Forces Reserve Complex, 344 Marine Forces Drive, Grand Prairie, Texas, 75051. Your appeal must be received in the South Central Regional Office within 20 days of this response.

_____          ___6/23/22_____
John P. Yates, Complex Warden                    Date

ATTACHMENT R "REGIONAL ONE MEDICAL RECORD"

 **Regional One Health**

16787-010

**Orthopedics ROH**
880 Madison Ave
Memphis, TN 38103-

| | |
|---|---|
| Patient: | **Donaldson, Richard J** |
| MRN: | 02232247 |
| FIN: | 103155399 |
| DOB/Age/Gender: 7/18/1979  42 years  Male | |

Date of Service:  4/28/2022
Provider:  Whittle MD, Allison P

## Office Clinic Notes

| | |
|---|---|
| Document Type: | Orthopedic Office Clinic Note |
| Service Date/Time: | 4/28/2022 11:00 CDT |
| Result Status: | Unauth |
| Document Subject: | Office Visit Note |
| Sign Information: | Pattisapu MD, Naveen (4/28/2022 11:02 CDT) |

**Reason for Visit**
right suprespinatus tendon tear

**Chief Complaint**
R SHOULDER F/U

**History of Present Illness**
No past medical
Surgical left wrist
Medications ibuprofen as needed no known allergies denies tobacco or other drugs
currently inmate in for city Arkansas

Chief complaint right shoulder pain
Is present illness very pleasant 40-year-old right-hand-dominant gentleman comes in about
for 5-year history of right shoulder pain he notes popping and pain. He said he had an MRI
in 2018 demonstrating a rotator cuff tear but he was unable to get it fixed. He has been
working out and trying to get a better he feels that he has limitations in range of motion and
popping instability. Denies numbness or tingling or neck pain denies any anterior shoulder
pain.

**Review of Systems**
All Systems Reviewed and are negative except as above

**Physical Exam**

Vitals & Measurements
T: 36.8 °C (Tympanic)  **RR:** 20  **BP:** 139/85  **SpO2:** 100%
HT: 175 cm  WT: 79 kg  WT: 79 kg  **BMI:** 25.796
Peripheral Pulse Rate: 60 (04/28/22 09:14:00)
Gen: NAD, alert and cooperative on exam
Cardiac: Regular rate by palpation
Respiratory: NLB
Psych: Normal affect/mood on exam

Right upper extremity has about 130 degrees for range of motion compared to contralateral
side is 170
He lacks about 30 degrees of abduction the right compared to the left side
He has some pain with passive and active external rotation with his arm at 0 degrees of
abduction compared to the left side.
He has pain with labral shear testing he is nontender across his biceps tendon across his
AC joint
No signs of apprehension or instability.

X-ray 3 views of the right shoulder demonstrate no acute fracture dislocation no significant
degenerative changes

**Problem List/Past Medical History**
Ongoing
No qualifying data
Historical
No qualifying data

**Medications**
meloxicam 7.5 mg oral tablet, 7.5 mg= 1 tab,
Oral, Daily

**Allergies**
No Known Allergies

**Social History**
Alcohol
Never, 04/28/2022
Tobacco
Smoking tobacco use: Never (less than 100
in lifetime)., 04/28/2022

**Wellness**

| Infectious Disease Risk Screening | Travel Outside of the US | Conley Fall Risk | Education Needs | Suicide Risk Assessment |
|---|---|---|---|---|
| Abdominal (Stomach Pain): No | Travel Outside US the Last 30 Days: No | Agitation Fall Risk Conley: - No | Barriers to Learning : None evident | Suicidal Ideation: None |
| Abnormal Bleeding : No | | Dizziness Vertigo Fall Risk Conley: No | Learning Style Pref Family: None | |
| Chills Infectious Disease: No | | Fall Risk Score Conley: 0 | Learning Style Pref Patient: None | |
| Diarrhea : No | | History of Falls in Last 3 | | |

---

## Orthopedics ROH

| | |
|---|---|
| Patient Name: | Donaldson, Richard J |
| MRN: | 02232247 |
| FIN: | 103155399 |
| DOB/Age/Gender: | 7/18/1979   42 years   Male |

Date of Service:   4/28/2022
Provider:   Whittle MD, Allison P

---

### Office Clinic Notes

#### Assessment/Plan
Degenerative superior labral anterior-to-posterior (SLAP) tear of right shoulder
  42-year-old right-hand-dominant gentleman with concerns for a posterior labral tear
  Continue weightbearing right upper extremity gave the patient some more exercises he can perform on present
  The patient is try conservative therapy for this for some time I have given him some meloxicam to try instead naproxen but given his active lifestyle and his young age I think he would benefit from intervention. We will get an MR arthrogram to better characterize his injury. We have sent a consultation to interventional radiology for assistance with this.
✱ We will contact him to schedule surgery after we get this back. We have also set an appointment up in 3 months from now in case we are unable to reach him prior to reason.
Ordered:
IR Request for Service
Return to Clinic

Pain

Orders:
meloxicam, 7.5 mg = 1 tab, Oral, Daily, # 90 tab, 0 Refill(s), 1, 175, cm, 04/28/22 9:14:00 CDT, Height/Length Measured, 79, kg, 04/28/22 9:14:00 CDT, Weight Dosing

#### Referral Orders
Return to Clinic, 3 Months, no xray needed on f/u, 04/28/22 10:30:00 CDT

| | | | | |
|---|---|---|---|---|
| | | Months Conley: No | | |
| Difficulty Breathing: No | | Impaired Gait Fall Risk Conley: No | | |
| Fatigue: No | | Impaired Judgment Fall Risk Conley: No | | |
| Fever Infectious Disease: No | | Incontinence Fall Risk Conley: No | | |
| Headache: No | | | | |
| Illness With Generalized Rash: No | | | | |
| Muscle Pain: No | | | | |
| New or Worsening Cough: No | | | | |
| Recent Exposure to Communicable Disease: No | | | | |
| Runny or Stuffy Nose: No | | | | |
| Shortness of Breath: No | | | | |
| Sore Throat: No | | | | |

---

Report Request ID:   14074163          Page 2 of 3          Print Date/Time:   4/28/2022 11:03 CDT

# Orthopedics ROH

880 Madison Ave      Memphis  TN  38103
Business Phone: (901)545-7259    Business Fax:

**Patient Name: Donaldson, Richard J.**

| | | | |
|---|---|---|---|
| Birthdate: 07/18/1979 | Age: 42 Years | Sex:  Male | MRN:   02232247 |

Allergies:  No Known Allergies

Height:  175 cm

Weight:  79 kg

Pharmacist please note — Allergy list may be incomplete.

Patient Address:  2090 Columbiana Rd Ste 4000

BIRMINGHAM  AL  35216

Home Phone:

Work Phone:

| Prescription Details: | Date Written:    04/28/2022 |
|---|---|

Rx: meloxicam 7.5 mg oral tablet

SIG:    1 tab Oral Daily

Dispense/Supply: <90 (ninety) tab>

Refill: <0>

**DISPENSE AS WRITTEN**                    **SUBSTITUTION PERMITTED**

Prescribed By: Naveen Pattisapu, MD                    NPI #: 1871029892

Entered by:      Naveen Pattisapu

Ordering Physician Name:      Naveen Pattisapu, MD                    Location of Origin:    Orthopedics ROH
Ordering Physician Address:   880 Madison Ave
                              Memphis   TN    38103
Ordering Physician Phone #:   Business #: (901)545-7259    Fax #:

# Regional One Health

**ATTENTION: THIS RX NOT VALID FOR CONTROLLED SUBSTANCES**

WARNING: This document contains the following industry recognized tamper resistant security features.
Copy Void Pantograph          When copying is attempted on many copiers and scanners the message "COPY" appears in the background
TROYmark™                     Diagonal repeating "watermark" consisting of variable data from the document, located on front or back of page
Micro Print                   Area of very small print which must be read under magnification found wherever the MP symbol appears
Security Features Warning Box  Warning Box describing the security features contained within this document

**ATTACHMENT: BEASLEY STATEMENT & EMAIL CORRESPONDANCE**

TRULINCS 03393084 - BEASLEY, GERALD - Unit: FOM-C-A

-------------------------------------------------------------------------------------

FROM: 03393084
TO: Medium Unit C
SUBJECT: ***Request to Staff*** BEASLEY, GERALD, Reg# 03393084, FOM-C-A
DATE: 06/03/2022 09:34:16 AM

To: Beasley Statement
Inmate Work Assignment: N/A

I, Gerald Beasley 03393-084 am an inmate currently housed in FCI Forrest City Medium in Arkansas. Upon my arrival here I was assigned to Dr. Tomar as my provider. During my first appointment he asked about the torn meniscal injury I had and I informed him it still was a problem. He then informed me that he would give me the Hyalgan steroid shots recommended by the outside doctor at Gilmer West Virginia.

On Febryary 28, 2022, I received the first of what I thought would be 3 shots. Two weeks later Dr.Tomar informed me that he could not proceed with the last 2 shots because of restrictions from the Regional Medical Director preventing him from performing the procedures. On a later date, I was informed by NP Morehart that they are not allowed to give shot and he should of not given me the first one.

Three months later I have still not gotten the second shot. On 5-20-2022 I emailed Dr Tomar and asked when I would get the next injection. I was told by Dr. Tomar it would be in June when he have more opening in his schedule.

I, Gerald V. Beasley, inmate number 03393-084 hereby swear under the penalty of perjury that this statement is true. I give this statement on behalf of Richard Donaldson for the purpose of: That I did receive a shot from Dr. Tomar on February 28, 2022 even though he said he was not supposed to be giving the shots.

Gerald V. Beasley _____

TRULINCS  03393084 - BEASLEY, GERALD - Unit: FOM-C-A

--------------------------------------------------------------------------------------------------------

FROM: Medium Health Services
TO: 03393084
SUBJECT: RE:***Inmate to Staff Message***
DATE: 05/20/2022 03:02:02 PM

From: admin@inmatemessage.com <admin@inmatemessage.com>
Sent: Friday, May 20, 2022 2:47 PM
To: FOM-InmateToHealthSvcs (BOP) >
Subject: Undeliverable: Re: ***Request to Staff*** BEASLEY, GERALD, Reg# 03393084, FOM-C-A

Invalid subject or msg code

I will be able to place the next injection in June once i have more openings in my schedule.
-Dr. Tomar

From: ~^! BEASLEY, ~^!GERALD <03393084@inmatemessage.com>
Sent: Friday, May 20, 2022 12:43 PM
To: FOM-InmateToHealthSvcs (BOP) >
Subject: ***Request to Staff*** BEASLEY, GERALD, Reg# 03393084, FOM-C-A

To: Dr. Tomar
Inmate Work Assignment: Rec

Dr Tomar, you gave me an injection for my knee February 28, 2022. You said you was going to give me the second of the three a week later. Two weeks later you said you was not allowed to do that procedure any more. I was told by Ms. Morhart that you should not of done it in the first place. Any way you said you would send me out to have it done. It's been over two months now and nothing. Could you let me know if it will be done or not. Thank You.

Richard L. Donaldson
Reg No: 16787-040
FCI Forrest City - Med
P.O. Box 3000
Forrest City, AR 72336

**CERTIFIED MAIL®**

7020 3160 0001 3893 1424



U.S. POSTAGE PAID
FCM LG ENV
FORREST CITY, AR
72335
SEP 30, 22
AMOUNT

**$0.00**

1000      72201      R2305E125361-04



United States District Court
Clerk's Office
600 West Capitol Ave. Suite A-149
Little Rock, Arkansas 72201